08-CV-00510-EXH  #1

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RICHARD O. BUSE,                                    )
                                                    )    Case No. 08-2-08093-5 SEA
            Plaintiff,                              )
                                                    )    **AMENDED** COMPLAINT FOR
vs.                                                 )    TEMPORARY RESTRAINING ORDER
                                                    )    AND PERMANENT INJUNCTION;
FIRST AMERICAN TITLE INSURANCE                      )    WRONGFUL FORECLOSURE;
COMPANY; FORECLOSURELINK, INC.;                     )    BREACH OF CONTRACT,
GREENPOINT MORTGAGE FUNDING,                        )    INTENTIONAL INFLICTION OF
INC.; MORTGAGE ELECTRONIC                           )    EMOTIONAL DISTRESS; SLANDER
REGISTRATION SYSTEMS, INC.;                         )    OF TITLE; BREACH OF FIDUCIARY
RESCOMM HOLDINGS NO. 2, LLC; UM                     )    DUTY; BREACH OF QUASI-
ACQUISITIONS, LLC; TOM BLOCK; and                   )    FIDUCIARY DUTY; VIOLATION OF
Doe Defendants 1 through 20,                        )    THE CONSUMER PROTECTION ACT,
                                                    )    RCW 19.86, *et seq.*; VIOLATIONS OF
            Defendants.                             )    RESPA, 12 U.S.C. § 2603, *et seq.*
                                                    )
                                                    )

        Comes now Plaintiff, Richard O. Buse, by and through his attorney of record, and for
his Complaint against the Defendants hereby complains and alleges as follows:

## I. PARTIES

        1.1    Richard O. Buse ("Mr. Buse") is a resident of King County, Washington.

        1.2    Defendant FIRST AMERICAN TITLE INSURANCE COMPANY ("First

American") is an unknown type of business operating in the State of Washington presumably

as a title insurance company, but which is not registered with the Washington Secretary of State

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 1

as a corporation, LLC or limited liability partnership.  Defendant First American is engaged in the business of acting as a foreclosure trustee and in noticing and conducting foreclosures in the County of King and in the state of Washington through an illegal and unlicensed agent, Defendant Foreclosure Link.

1.3     Defendant FORECLOSURELINK, INC. ("ForeclosureLink") is a California corporation which is NOT licensed to conduct business in the State of Washington, but which does conduct business in the State of Washington by acting as a foreclosure trustee in the guise of acting as an agent for Defendant First American, the ostensible trustee.

1.4     Defendant GREENPOINT MORTGAGE FUNDING ("GreenPoint") is a New York corporation that is licensed to conduct business in the State of Washington, and which does conduct business by, among other things, engaging in mortgage lending activities and obtaining security interests in real property located King County, Washington.  Defendant Greenpoint was the original lender who provided Mr. Buse with a home equity line of credit loan in 2004 and obtained a security interest in his real property located in Carnation, Washington.

1.5     Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is a Delaware corporation that is not licensed to conduct business in the State of Washington, but it nevertheless purports to obtain security interests in real property located in the State of Washington, and it purports to have acquired an interest in Mr. Buse's real property first as a "nominee" but also as a "beneficiary" under the terms of the GreenPoint Deed of Trust.

1.6     Defendant RESCOMM HOLDINGS No. 2, LLC ("Rescomm") is apparently a limited liability company with an address in Flint, Michigan but Mr. Buse is presently uncertain

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 2

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

as to where the company is registered.  It is NOT registered to conduct business in the State of Washington as it is not licensed through the Washington Secretary of State.  Nevertheless, Defendant Rescomm acquired the purported ownership interest in Mr. Buse's Deed of Trust on September 30, 2005, thereby ostensibly obtaining a security interest in Mr. Buse's real property located in the State of Washington.

1.7   Defendant UM ACQUISITIONS, LLC ("UM Acquisitions") is apparently a limited liability company with an address in Charlotte, North Carolina but Mr. Buse is presently uncertain as to where the company is registered.  It is NOT registered to conduct business in the State of Washington as it is not licensed through the Washington Secretary of State.  Nevertheless, Defendant UM acquired the purported ownership interest in Mr. Buse's Deed of Trust on September 30, 2005 from Defendant Rescomm (who had acquired its interest on the same day), thereby ostensibly obtaining a security interest in Mr. Buse's real property located in the State of Washington.

1.8   Defendant UM CAPITAL, LLC ("UM Capital") is apparently a limited liability company with an address in Charlotte, North Carolina but Mr. Buse is presently uncertain as to where the company is registered.  It is NOT registered to conduct business in the State of Washington as it is not licensed through the Washington Secretary of State.  Nevertheless, Defendant UM Capital acquired the purported ownership interest in Mr. Buse's Deed of Trust on May 24, 2006 from Defendant UM Acquisitions, thereby ostensibly obtaining a security interest in Mr. Buse's real property located in the State of Washington.

1.9   Defendant UNITED MORTGAGE & LOAN INVESTMENT, LLC ("United Mortgage") is apparently a limited liability company with an address in Charlotte, North Carolina but Mr. Buse is presently uncertain as to where the company is registered.  It is NOT

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-81·5

1  registered to conduct business in the State of Washington as it is not licensed through the

2  Washington Secretary of State.  However, Defendant United Mortgage purported to act as a

3  servicer or owner or assignee of Mr. Buse's loan as of August 2005.  However, this statement

4  contradicts the documents recorded in the records of King County, Washington which

5  demonstrate that Defendants Rescomm and then subsequently Defendant UM acquired

6  ownership of the loan on September 30, 2005.

7

8      1.10    Defendant TOM BLOCK ("Block") is an individual who is believed to reside in

9  Los Angeles County, California.  Defendant Block apparently purchased ownership of Mr.

10  Buse's home equity loan made with Defendant Greenpoint on May 24, 2006 from Defendant

11  UM.  According to the records of King County, Washington, Defendant Block is the owner of

12  Mr. Buse's second mortgage loan, and Mr. Buse has been making payments to Defendant

13  Block for the last couple of years based upon that representation.

14

15      1.11    The true names and capacities of Does 1 through 20, inclusive, whether

16  individual, corporate, partnership, associate or otherwise, are presently unknown to Plaintiff,

17  who therefore sues said Defendants by such fictitious names.  Plaintiff alleges on information

18  and belief that each Defendant is responsible in some manner for the events described herein

19  and is liable to Plaintiff for the damages he has incurred.  Plaintiff will amend this Complaint to

20  show the true names and capacities of the Doe Defendants when they have been ascertained.

21

22      1.12    At all times mentioned herein, the Defendants, and each of them, were the

23  agents, servants, representatives and/or employees of each of the remaining Defendants and

24  were acting within the course and scope of such agency or employment.  The exact terms and

25  conditions of the agency, representation or employment relationships are presently unknown to

26  Plaintiff, but when the information is ascertained, leave of court will be sought to insert the

27

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 4

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   appropriate allegations.

## II. FACTUAL ALLEGATIONS

2.1   Mr. Buse has been a victim of the mortgage lending mess created by Wall Street, mortgage lenders and servicers, Defendant MERS and various and assorted other vultures who are engaged in a pattern and business practices intended to deceive and mislead homeowners regarding application of their payments and the amounts owing under notes and deeds of trust, and upon the courts and county recorders offices regarding their ownership interest in the notes and deeds of trust under which they are collecting fees and/or initiating foreclosures.

2.2   Mr. Buse has owned his home for many years. He applied for and obtained a *home equity line of credit loan from Defendant GreenPoint on June 16, 2004.* In connection with the making of that loan, Mr. Buse signed a Deed of Trust for Defendant GreenPoint, which was recorded in the records of King County, Washington on July 29, 2004. A copy of the Deed of Trust is attached hereto and incorporated herein by reference as Exhibit "1". That Deed of Trust ("DOT") contained a false representation on its face when it represented that Defendant MERS was a beneficiary under the DOT. Paragraph (E) states that "MERS is a separate corporation that is acting solely as a Nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." As will be demonstrated below, MERS is NOT the beneficiary under the DOT, it never had ownership or possession of the Promissory Note which is the obligation which is secured by the DOT, and MERS has never been entitled to receive one cent of remuneration from Mr. Buse's loan proceeds. The statement that MERS is the "Nominee" is nonsensical language which means nothing in a real estate transaction and most certainly, MERS has never been nor is it now the beneficiary under

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 5

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   the DOT.  The language is a sham.

2       2.3     After obtaining the loan in 2004, Mr. Buse made payments on the loan to

3   Defendant GreenPoint, which held itself out as the owner and/or servicer of the mortgage loan

4   through 2005.  On or abou August 12, 2005, Mr. Buse received a notice that Defendant United

5   Mortgage was the new owner or servicer or assignee of the mortgage loan and instructing Mr.

6   Buse to thereafter make his payments to Defendant Rescomm as the servicer at an address in

7   Charlotte, North Carolina.  However, the letter also stated that inquiries regarding the loan were

8   

9   to be made to Defendant United Mortgage.  A copy of the letter received by Mr. Buse is

10  attached hereto and incorporated herein by reference as Exhibit "2".

11      2.4     Ostensibly on September 30, 2005, a Torlina Strong, purportedly an Assistant

12  Secretary with Defendant MERS executed an Assignment of Mr. Buse's mortgage loan from

13  Defendant MERS (which was never the beneficiary under the DOT) to Defendant Rescomm.

14  Ms. Strong's signature is not dated, but the notary stamp is dated September 30, 2005 and the

15  notary asserts that Ms. Strong is "personally known" to her to be an Assistant Secretary of

16  

17  Defendant MERS.  A copy of the Assignment of Home Equity Line of Credit Deed of Trust is

18  attached hereto and incorporation herein by reference as Exhibit "3".  On that same day,

19  September 30, 2005, the same notary notarized the signature of Ms. Strong, this time as the

20  Assistant Manager of Defendant Rescomm, purporting to assign Mr. Buse's DOT to Defendant

21  UM.  Again, the notary represents that she has personal knowledge that Ms. Strong is an

22  

23  assistant manager of Defendant Rescomm.  A copy of this Assignment of Home Equity Line of

24  Credit Deed of Trust is attached hereto and incorporated herein by reference as Exhibit "4".

25      2.5     Then, ostensibly on May 24, 2006, Ms. Strong again signed another Assignment

26  document, but this time she held herself out as an Assistant Manager for Defendant UM

27  

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 6

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   Acquisitions. The notary again asserts that she personally knows Ms. Strong as an Assistant

2   Manager for Defendant UM Acquisitions, when it purports to transfer ownership of the security

3   interest in the DOT to Defendant UM Capital. A copy of this Assignment is attached hereto

4   and incorporated herein by reference as Exhibit "5". On the same day, May 24, 2006, Ms.

5   Strong signed another Assignment on behalf of Defendant UM Capital as an Assistant Manager

6   transferring ownership of the loan to Defendant Block, which was witnessed by the same

7   notary. A copy of the fourth Assignment is attached hereto and incorporated herein by

8   reference as Exhibit "6". So to recap – Ms. Strong contends in these documents that she is an

9   officer of four separate corporations or limited liability companies – all of whom may transfer

10  ownership interests in Mr. Buse's loan among themselves upon nothing more than Ms. Strong's

11  signature and when it is apparently convenient for them.

12  2.6     Mr. Buse did not receive formal written notice of the purported change in

13  ownership and/or servicing of the mortgage loan in 2006 from any of the defendants herein,

14  including Defendant Block, prior to the alleged transfer, as required by law. RESPA, 12 U.S.C.

15  § 2601, *et seq.* Instead, Mr. Buse was contacted by Defendant Block by telephone advising that

16  he was the new owner of the loan and that payments were now to be made to him. Defendant

17  Block also advised Mr. Buse that he was delinquent in his mortgage payments and that he

18  (Defendant Block) would be starting a foreclosure action and raising the interest rate unless Mr.

19  Buse signed a loan medication agreement. Mr. Buse maintains that if the loan was in default at

20  the time it was transferred and/or sold to Defendant Block, then it was a violation of federal

21  law, especially since Mr. Buse did not receive notice of the alleged transfer in writing. *Id.*

22  2.7     Because of the alleged default on the loan, Defendant Block insisted that Mr.

23  Buse execute a loan modification agreement and presented it to him for signature almost

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 7

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   immediately after advising him by telephone that he owned the loan. This Modification

2   Agreement is dated May 30, 2006, just six days after the DOT was allegedly assigned to

3   Defendant Block in the first place and Mr. Buse believes within a day or two of his first being

4   advised that Defendant Block allegedly owned the loan by telephone. Believing that he had no

5   choice but to sign the loan modification agreement, Mr. Buse did so. A copy of the Loan

6

7   Modification Agreement is attached hereto and incorporated herein by reference as Exhibit "7".

8   Thereafter, Mr. Buse made the new and increased payments to Defendant Block, but was not

9   receiving proper credit for those payments. Mr. Buse did become delinquent on the loan in late

10   2006 due to financial problems related to the death of his mother.

11       2.8       Defendant Block executed an Appointment of Successor Trustee document on

12   January 4, 2007 appointing Defendant First American as the successor trustee, but the

13   document's return address was to Defendant ForeclosureLink. A copy of that Appointment of

14   Successor Trustee is attached hereto and incorporated herein by reference as Exhibit "8". It

15

16   was not recorded until January 9, 2007, which was the date that it became effective under

17   Washington law. Nevertheless, Defendant First American, by and through its alleged agent,

18   Defendant ForeclosureLink, served Mr. Buse with a Notice of Default document, at a time

19   when neither of those defendants had been properly appointed as the trustee.

20

21       2.9       The Notice of Trustee's Sale initiated by Defendant ForeclosureLink as the

22   ostensible agent of Defendant First American was recorded on February 9, 2007 in the records

23   of King County, Washington. The only address listed for contact with the foreclosing trustee

24   on that document is an address in Fair Oaks, California. There is no Washington address on the

25   document for contacting the alleged trustee, Defendant First American. A copy of the Notice

26   of Trustee's Sale is attached hereto and incorporated herein by reference as Exhibit "9". Mr.

27

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 8

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   Buse paid the alleged deficiencies due and owing to Defendant Block in April 2007 and

2   Defendant ForeclosureLink recorded a Notice of Discontinuance of Trustee's Sale in the

3   records of King County, Washington on April 26, 2007. A copy of the Notice of

4   Discontinuance is attached hereto and incorporated herein by reference as Exhibit "10".

5
6   2.10   Thereafter, Mr. Buse made payments to Defendant Block, but was not properly

7   credited for those payments. Defendant Block then contended again that Mr. Buse was

8   delinquent. A Notice of Default and later a Notice of Trustee's Sale were delivered to Mr.

9   Buse in November and December 2007. The Notice of Trustee's Sale signed by Defendant

10   ForeclosureLink ostensibly as an agent for Defendant First American was recorded in the

11   records of King County, Washington on December 4, 2007. A copy of the Notice of Trustee's

12   Sale is attached hereto and incorporated herein by reference as Exhibit "11". Again, nowhere

13   on this document is there a Washington address for contacting the trustee. Mr. Buse is behind

14   in some of his payments to Defendant Block, but he is uncertain about the correct amount

15   and/or the reasons for the alleged delinquencies since he maintains that Defendant Block is not

16
17   properly crediting payments. Further, Mr. Buse maintains that there have been numerous

18   improprieties in the servicing, sale and transfer and appointment of trustees in the handling of

19   his loan, and that the alleged trustee, Defendants First American and/or ForeclosureLink are not

20   properly appointed as foreclosing trustees nor acting in conformity with Washington law. For

21   these reasons, the defendants are liable for their actions, and the foreclosure sale should be

22   enjoined so that these issues may be addressed.

23
24   2.11   Regarding the issue of Defendant MERS' alleged status as a "beneficiary" under

25   the GreenPoint DOT, its own records demonstrate the falsity of the information on the

26   document. Documents taken from Defendant MERS' own website demonstrate that it is NOT

27

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 9

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 467-0153
FACSIMILE: (206) 467-0153

the beneficiary under any Deeds of Trust or mortgages.  Rather, Defendant MERS was created

to "streamline the mortgage process by using electronic commerce to eliminate paper.  Our

mission is to register every mortgage loan in the United States on the MERS System."  It also

notes that "MERS remains the nominal mortgagee no matter how many times servicing is

traded."  A copy of the documentation taken off of Defendant MERS' website is attached

hereto and incorporated herein by reference as Exhibit "12".  The other documentation attached

from Defendant MERS' website demonstrates that it is nothing more than a computer system

designed by the mortgage industry to protect them from having to pay recording fees so that the

entity that owns any mortgage loan is available.  Defendant MERS' entire business operation is

premised on the wholesale and everchanging sale or transfer of "servicing rights".  The

documentation demonstrates that Defendant MERS does not own the loans, rather they are

acting as a "nominee" for whomever might or might not say that it owns the loan at any given

time.  Further, since Defendant MERS never obtains possession of the Promissory Note which

secures the Deed of Trust, it cannot ever have the right to enforce the terms of the Deed of

Trust, since that right is reserved to the owner and holder of the secured instrument, the

Promissory Note.  The information from Defendant MERS also demonstrates that falsity of the

purported assignments of the DOT from Defendant GreenPoint to Defendant Rescomm, from

Defendant Rescomm to Defendant UM, and from Defendant UM to Defendant Block.  The

same person signed the first three assignments, ostensibly as an officer of all three corporations.

The records of Defendants MERS' explains a portion of the source of the misrepresentations --

it purports to appoint unidentified and unspecified persons as "officers" of Defendant MERS

for the purpose of executing documents to effect transfers.  Mr. Buse maintains that this is a

sham act and that a corporation cannot create corporate officers in blank, without specificity

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 10

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

and without identification. Under this premise, Defendant MERS is contending that anyone who works for some mortgage lender, servicing company, foreclosing trustee, title company, etc. can become an officer of Defendant MERS without providing it with notification, without getting its approval or even identifying the person to assign mortgages to new owners (even if that new MERS officer is also an officer of the alleged new owner of the loan) or take whatever actions the other companies desire! Mr. Buse maintains that this is nothing more than a sham transaction and approval and that therefore the first assignment from Defendant GreenPoint to Defendant Rescomm (all signed off by the alleged employee of Defendant MERS) is invalid, and that all subsequent Assignments and Appointment of Successor Trustees are also therefore invalid.

2.12    Unfortunately the alleged trustee in this foreclosure, Defendants First American and ForeclosureLink are likewise engaged in attempting to perpetrate a fraud upon Mr. Buse and upon the citizens of King County, Washington by purporting to assume the role of foreclosing trustee, in violation of Washington loan. The actual foreclosing trustee is Defendant ForeclosureLink, as evidenced by the fact that its employees are the only signers on any of the foreclosure documents, and its contact information is the only information on any of the foreclosure documents. Defendant ForeclosureLink has attempted to evade the requirements for acting as a trustee in the State of Washington by using Defendant First American as a "front", since it is apparently a title insurance company licensed in the State of Washington and therefore it would be able to act as a trustee. RCW 61.24.010, a portion of the Deed of Trust Act, specifies quite clearly who may act as a foreclosing trustee. It states, in pertinent part:

(1) The trustee of a deed of trust under this chapter shall be:

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 11

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1         (a)    Any domestic corporation authorized to insure title to real property under the laws of this state, or its agents; or

2         (b)    Any title insurance company authorized to ensure title to real property under the laws of this state, or its agents; or . . .

3

4 RCW 61.24.010.

5     Defendant First American might qualify as a trustee under these provisions, but

6 Defendant ForeclosureLink (which is not even licensed to engage in business in this state) is

7 not so authorized. RCW 61.24.010(a)(b) allows the "agent" of a title insurance company to act

8 on its behalf, but "agents" for title insurance companies are defined under that licensing statute.

9

10 RCW 48.17, *et seq.* Under RCW 48.17.010(15) a "title insurance agent" is defined as "a

11 business entity licensed under the laws of this state and appointed by an authorized title

12 insurance company to sell, solicit or negotiate insurance on behalf of the title insurance

13 company." Further, RCW 48.29.160 verifies that, "To be licensed as [an] agent of a title

14 insurer, the applicant must own or lease and maintain a complete set of tract indexes of the

15 county or counties in which such agent will do business." There is no indication whatsoever

16 that Defendant ForeclosureLink has such an index in King County, or even that it has any

17 business address located in the State of Washington. It is clear that Defendant ForeclosureLink

18

19 – the actual foreclosing trustee – is not authorized to act as a trustee in the State of Washington

20 and its "agent" status with Defendant First American does not meet the criteria defined in the

21 statute and is nothing more than a sham. For all of these reasons, this foreclosure must be

22 enjoined since the purported foreclosing trustee does not have the requisite authority under

23 Washington law to act as the trustee.

24

25 ### III. INFLICTION OF EMOTIONAL DISTRESS

26 **3.1    Plaintiff repeats and realleges each and every item and allegation above as if fully**

27

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 12

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   and completely set forth herein.

2   3.2   All of the Defendants' conduct with regard to Plaintiff constitutes the tort of

3   outrage and entitles Plaintiff to damages in an amount to be proven at the time of trial.

4   3.3   In the alternative, all of the corporate Defendants' conduct with regard to Plaintiff

5   constitutes the tort of intentional infliction of emotional distress and/or reckless disregard for

6   the infliction of emotional distress, which entitles Plaintiff to an award of damages in an

7   amount to be proven at the time of trial.

8

9                              IV. SLANDER OF TITLE

10   4.1   Plaintiff repeats and realleges each and every item and allegation above as if

11   fully and completely set forth herein.

12   4.2   All of the Defendants have caused to be recorded numerous false documents in

13   the records of King County, Washington, including the original Deed of Trust containing false

14   statements about MERS' being the beneficiary under the DOT, Assignments, Appointment of

15   Successor Trustee, and Notices of Trustee's Sale, which impaired Plaintiff's title and which

16   constitutes slander of title.

17

18   4.3   Further, the actions of these Defendants regarding the recording of these

19   documents, in contravention of the laws of the State of Washington, and the recording of these

20   false documents, had a negative impact upon and impair the credit scores of Plaintiff such that

21   it will prevent him from obtaining a new mortgage loan or other credit.

22

23          V.  BREACH OF FIDUCIARY DUTY OR QUASI-FIDUCIARY DUTY

24   5.1   Plaintiff repeats and realleges each and every item and allegation above as

25   if fully and completely set forth herein.

26   5.2   All of the Defendants owed a fiduciary duty or quasi-fiduciary duty to Plaintiff,

27

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 13

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

including but not limited to, providing Plaintiff with fair and honest disclosure of all facts that might be presumed to influence him in regard to its actions, including those facts favorable to a creditor and adverse to Plaintiff's interest as it relates to the mortgage loan. These Defendants also had a duty to report truthful information on documents that they recorded in the records of King County, Washington and to act in conformity with the laws of the State of Washington and federal laws relating to mortgage servicing, and they did not do so.

5.3     In addition, Plaintiff alleges that Defendants First American and ForeclosureLink owed him a fiduciary duty or quasi-fiduciary duty as the purported Trustee under the GreenPoint Deed of Trust. Defendants First American and ForeclosureLink breached this fiduciary duty because they are not acting in conformity with Washington law regarding who may be a trustee.

5.4     The Defendants did violate these fiduciary or quasi-fiduciary duties with respect to Plaintiff by the acts described in the Factual Allegations.

### VI. VIOLATION OF THE CONSUMER PROTECTION ACT

**6.1     Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.**

6.2     These Defendants have engaged in a pattern of unfair business practices in violation of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, entitling Plaintiff to damages, treble damages and reasonable attorney fees and costs pursuant to the statute.

6.3     Plaintiff alleges that all of these Defendants' actions and inactions have impaired and damaged him, entitling Plaintiff to damages to be proven at the time of trial.

//

//

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 14

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

## VII.  COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND
## ISSUANCE OF A PRELIMINARY INJUNCTION

7.1    By way of the filing of a separate motion, Plaintiff will move for issuance of a temporary restraining order and a preliminary injunction in order to stop the foreclosure sale.

7.2    In order to obtain an injunction, a plaintiff must show that: (1) he has a clear legal or equitable right; (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him. *Kucera v. State, Dept. of Transportation*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000). Such criteria is evaluated by balancing the relative interests of the parties, and if appropriate, the interests of the public. *Id.* Ultimately, the decision to grant a preliminary injunction is within the sound discretion of the trial court, with such discretion to be exercised according to the circumstances of each particular case. *Washington Fed'n of State Employees v. State*, 99 Wn.2d 878, 887 (1983) (citations omitted).

7.3    Here, Mr. Buse has demonstrated that he has a clear legal or equitable right to enjoin the foreclosure since it will necessarily impact title to his real property which will not be compensable by the payment of money damages. He also has a legal right to seek to enjoin the foreclosure sale under the Deed of Trust Act, RCW 61.24.130. Mr. Buse has a well grounded fear of an invasion of that right in that if the sale is not restrained, he will lose legal title to his real property, in spite of the fact that the purported foreclosing trustee does not have the legal right to act as a trustee and/or conduct the sale. Further, the acts complained of will result in the loss of Mr. Buse's real property to the purported owner of the mortgage loan, Defendant Block, if the sale is not enjoined. For these reasons, Mr. Buse is filing a separate motion for a temporary restraining order and ultimately for a preliminary injunction.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 15

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

### VIII. VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

8.1    **Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.**

8.2    Defendants GreenPoint, MERS, Rescomm, UM Acquisitions, UM Capital, United Mortgage and Block are all required to comply with the requirements of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* in connection with the servicing of Mr. Buse's mortgage loan. Mr. Buse maintains that he was not provided with timely and truthful information regarding the ownership and/or servicing of his mortgage loan by these Defendants once the loan was purportedly transferred for ownership and/or servicing improperly by Defendant MERS to Defendant Rescomm and from Defendant Rescomm to Defendant UM Acquisitions because the transfer was improper as Defendant MERS did not have authority to transfer ownership interest in the loan to begin with. Further, Mr. Buse maintains that the alleged transfers between Defendant Rescomm and Defendant UM Acquisitions were a sham also since those documents were signed by the same person, and based upon the contents of the servicing document which was sent to Mr. Buse by Defendant United Mortgage wherein it contended that the ownership and/or servicing of the loan was being transferred to it but that the servicer of the loan was Defendant Rescomm. *See,* Exhibit 2. As is evidenced from the recorded documents attached as Exhibits hereto, Defendant United Mortgage never acquired any ownership interest in Mr. Buse's loan, Defendant Rescomm allegedly owned the loan for some portion of the date of September 30, 2005, and then promptly transferred that alleged ownership to Defendant UM Acquisitions on September 30, 2005 even as it apparently was going to act as the servicer, according to the notice sent by Defendant United Mortgage.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 16

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

8.3   Based upon the false information provided to Mr. Buse in the notice sent regarding transfer of ownership and/or servicing of the loan in August 2005, Defendants GreenPoint, MERS, Rescomm, UM Acquisitions and United Mortgage all violated the requirements of RESPA, 12 U.S.C. § 2605.

8.4   Further, when Defendant UM Capital purported to transfer ownership and/or servicing rights to Defendant Block on May 24, 2006, neither of these entities provided Mr. Buse with notice of this transfer in writing at least 15 days before the effective date of the transfer or at all. Mr. Buse's only notice was by way of a telephone call from Defendant Block, who then extracted from Mr. Buse a loan modification agreement based upon false representations regarding the delinquency on the loan and his rights as the owner of the loan (if he was the owner of the loan at all). All of these actions violated RESPA, 12 U.S.C. § 2605.

Wherefore, having set forth various causes of action against Defendants, Plaintiff prays for the following relief:

1.   That judgment be entered against all of the Defendants awarding Plaintiff damages in an amount to be proven at the time of trial;

2.   That the actions of all of the Defendants be determined to be unfair and deceptive business practices in violation of RCW 19.86, et seq. and that this Court award all such relief to Plaintiff as he may be entitled to under the Consumer Protection Act, including treble damages and an award of costs and attorney's fees;

3.   That the Plaintiff be awarded consequential damages, including attorney's fees incurred to bring this action and all other attorney's fees incurred in defending against the actions of the Defendants described more particularly above, in an amount to be fully proved at the time of trial;

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 17

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

4. That the Plaintiff be awarded his fees and costs pursuant to the written agreements upon which the Defendants are attempting to rely;

5. That the Plaintiff be awarded statutory damages available under any applicable statutes, including RESPA, 12 U.S.C. § 2605; and

6. That the Court award such other relief as it deems just and proper.

DATED this 6th day of March 2008.

LAW OFFICES OF MELISSA A.
HUELSMAN, P.S.

By _____
Melissa A. Huelsman, WSBA #30935
Attorney for Plaintiff Richard O. Buse

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 18

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

# Exhibit 1

20040729000563.001

After recording please return to:

GreenPoint Mortgage Funding, Inc.
[Company Name]

[Name of Natural Person]

981 Airway Court, Suite E
[Street Address]

Santa Rosa, CA, 95403-2049
[City, State Zip Code]

20040729000563

Assessor's Property Tax Parcel or Account Number. 0429079022
Abbreviated Legal Description
Parcel A, Lot A, Lots 5 + 6 Stillwater Vol 19, Plat 11
See Page 3 for complete legal description.

109244
————————————— [Space Above This Line For Recording Data] —————————————

MIN 100013800841468859
Loan Number: 0084146885

## ACCOMODATION ONLY

# HOME EQUITY LINE OF CREDIT
# DEED OF TRUST AND SECURITY AGREEMENT
## Secondary Lien
### (Securing Future Advances)

Borrower has established a line of credit ("Home Equity Line of Credit") with Lender as evidenced by Borrower's Home Equity Line of Credit Agreement and Promissory Note dated the same date as this Security Instrument, and all renewals, extensions, modifications, replacements and substitutions thereof (collectively, the "Agreement"). Lender has agreed to make advances to Borrower under the terms of the Agreement. Such advances shall be of a revolving nature and may be made, repaid and remade from time to time. Borrower and Lender contemplate a series of advances to be secured by this Security Instrument. The total outstanding principal balance owing at any one time under the Agreement (not including charges and collection costs which may be owing from time to time) shall not exceed Eighty Thousand and 00/100ths (U.S. $ 86,000.00) plus interest thereon (the "Credit Limit"). That sum is referred to in the Agreement as the Credit Limit. The entire indebtedness under the Agreement, if not paid earlier, is due and payable on July 01, 2029 or on such later date as may be permitted by Lender in writing, or at such earlier date in the event such indebtedness is accelerated in accordance with the terms of the Agreement and/or this Security Instrument

**DEFINITIONS**

This Document Filed for Recording by NATIONAL
CLOSING SOLUTIONS as an ACCOMMODATION ONLY
and has not been examined as to its execution
or as to its affect upon the title

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE™ Inc.—                                          Page 1 of 16                                          31180WA 04/01
www.compliancesource.com                                                                                                     ©2001, The Compliance Source, Inc.

20040729000563.002

Words used in multiple sections of this Security Instrument are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20   Certain rules regarding the usage of words used in this Security Instrument are also provided in Section 15

(A)      "**Security Instrument**" means this Home Equity Line of Credit Deed of Trust and Security Agreement, which is dated June 09, 2004, together with all Riders to this document

(B)      "**Borrower**" is  Richard O. Buse, A Single Man
Borrower is the trustor under this Security Instrument

(C)      "**Lender**" is  GreenPoint Mortgage Funding, Inc.
Lender is a Corporation organized and existing under the laws of the State of New York.  Lender's address is 100 Wood Hollow Drive, Novato, CA 94945

(D)      "**Trustee**" is PLACER TITLE COMPANY

(E)      "**MERS**" is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS

(F)      "**Agreement**" means the Home Equity Line of Credit Agreement and Promissory Note signed by Borrower and dated June 09, 2004  The Agreement states Lender has agreed to make advances to Borrower under the terms of the Agreement, such advances to be of a revolving nature  The total outstanding principal balance owing at any one time under the Agreement (not including charges and collection costs which may be owing from time to time under the Agreement) not to exceed the Credit Limit of  Eighty  Thousand  and 00/100ths Dollars (U S  $80,000.00) plus interest  Borrower has promised to pay the total outstanding balance in Periodic Payments and to pay the entire debt in full not later than  July 01, 2029

(G)      "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property "

(H)      "**Account**" means the debt evidenced by the Agreement, plus interest, any other charges due under the Agreement, and all sums due under this Security Instrument, plus interest

(I)      "**Riders**" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower *[check box as applicable]*

☐ Adjustable Rate Rider      ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Home Improvement Rider     ☐ Revocable Trust Rider
☐ Other(s) *[specify]*

---

Washington Home Equity Line of Credit Deed of Trust and Security Agreement– Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC —          Page 2 of 16
www compliancesource com

20040722000563.003

(J)    "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K)    "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L)    "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M)    "**Escrow Items**" means those items that are described in Section 3

(N)    "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for  (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O)    "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Agreement and the Account

(P)    "**Periodic Payment**" means the amount due from Borrower to Lender each month for (i) principal and/or interest under the Agreement, and all late charges and other charges provided herein or authorized by the Agreement, plus (ii) any amounts under Section 3 of this Security Instrument

(Q)    "**RESPA**" means the Real Estate Settlement Procedures Act (12 U S C  § 2601 *et seq* ) and its implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to the escrow account requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Agreement and the Account do not qualify as a "federally related mortgage loan" under RESPA

(R)    "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument

Ex.1 pg-22-

20040729000563.004

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender  (a) the prompt repayment of the Account evidenced by the Agreement, and all renewals, extensions and modifications of the Agreement, with interest thereon at the rate provided in the Agreement, (b) the payment of all other sums due under the Agreement, with interest thereon at the rate provided in the Agreement, (c) advanced to protect the security of this Security Instrument, (d) incurred by Lender in connection with the enforcement of its rights under this Security Instrument and/or the Agreement, and/or (iii) required to be paid as set forth herein or in the Agreement, and (c) the performance of Borrower's covenants and agreements under this Security Instrument, the Agreement and any prior mortgage or deed of trust

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described real property located in the County                              of King
                                                [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
As more particularly described in exhibit "A" attached hereto and made a part hereof.

which currently has the address of 31210 Carnation Duvall RD Northeast
                                                                    [Street]
Carnation                           , Washington 98014                        ("Property Address")
               [City]                                              [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

20040729000563.005

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

1.    **Payment of Principal, Interest and Other Charges.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Agreement and if allowable under Applicable Law, any prepayment charges, late charges and other charges due under the Agreement  Payments due under the Agreement and this Security Instrument shall be made in U S  currency  However, if any check or other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Agreement and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

2.    **Application of Payments or Proceeds.**  Payments are deemed received by Lender when received at the location designated in the Agreement or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14 or in such manner or location as required under Applicable Law  Except as otherwise described in this Section 2, and as permitted under Applicable Law, all payments accepted and applied by Lender shall be applied to the outstanding Account balance in the following order of priority  (i) any prepayment charges due under the Agreement and/or this Security Instrument if permitted by Applicable Law, (ii) amounts due under this Security Instrument to secure the amounts advanced under the Account and to protect Lender's security, (iii) any escrow payments under Section 3 of this Security Instrument, if Lender requires such payments, (iv) any late charges, (v) any other fees and charges other than finance charges, (vi) accrued and unpaid finance charges due under the Agreement, and (vii) any unpaid principal balance due under the Agreement

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  To the extent permitted by Applicable Law, voluntary prepayments shall be applied first to any prepayment charges and then as described in the Agreement

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date, or change the amount of the Periodic Payments

3.    **Funds for Escrow Items.**  Subject to Applicable Law, Borrower shall pay to Lender on the days Periodic Payments are due under the Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums  These items are called "Escrow Items "  At origination or at any time during the term of the Agreement, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender the Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                                           Page 5 of 14
www.compliancesource.com

20040729000553.008

Security Instrument, as the phrase "covenant and agreement" is used in Section 8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, to mean the amount by which a current escrow balance falls short of the target balance at the time of escrow analysis, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA to mean the amount of the negative balance in the escrow account, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender. If under Section 21 the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument

4.   Charges; Liens.  Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument. Borrower shall pay when due, all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien other than a lien disclosed to Lender in Borrower's application or in any title report Lender obtained which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                      Page 6 of 16                      31206WA 08/02

20040728000563.007

proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Agreement, the Account and this Security Instrument, if allowed under Applicable Law

5.   Property Insurance.   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance   This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires   What Lender requires pursuant to the preceding sentences can change during the term of the Agreement   The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably   Lender may require Borrower to pay, in connection with the Agreement, the Account and this Security Instrument, either   (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification   Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense   Lender is under no obligation to purchase any particular type or amount of coverage   Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect   Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained   Any amounts disbursed by Lender under this Section 5, shall be added to the unpaid balance of the Account and interest shall accrue at the rate set forth in the Agreement, from the time it was added to the unpaid balance until it is paid in full

Subject to Applicable Law, all insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower agrees to generally assign rights to insurance proceeds to the holder of the Agreement and the Account up to the amount of the outstanding Account balance   Lender shall have the right to hold the policies and renewal certificates   If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices   If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement and the Account up to the amount of the outstanding Account balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender   Lender may make proof of loss if not made promptly by Borrower   Unless Lender and Borrower otherwise agree in writing, and subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened   During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work

20040729000563.008

is completed   Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds   Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds, and shall be the sole obligation of Borrower   Subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, if the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower   Such insurance proceeds shall be applied in the order provided for in Section 2

If Lender believes that Borrower has abandoned the Property, Lender may file, negotiate and settle any available insurance claim and related matters   If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim   The 30-day period will begin when the notice is given   In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement, the Account or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property   Subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement, the Account or this Security Instrument, whether or not then due.

6.   **Preservation, Maintenance and Protection of the Property; Inspections.**   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.   Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition   If the Property is damaged, unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property to avoid further deterioration or damage   If insurance or condemnation proceeds are paid in connection with damage to, or the taking of the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed   If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property   If it has reasonable cause, Lender may inspect the interior of the improvements on the Property   Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

7.   **Borrower's Home Equity Line of Credit Application.**   Borrower shall be in default if, during the home equity line of credit application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Agreement, the Account or this Security Instrument   Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

8.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which has or may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Lender believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                                Page 5 of 16                                31254WA 08/02

20040729000563.009

appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property   Lender's actions can include, but are not limited to   (a) paying any sums secured by a lien which has or may attain priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding   Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off   Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so   It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument if allowed under Applicable Law   These amounts shall bear interest at the rate set forth in the Agreement from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease   If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

9.   Mortgage Insurance.   Mortgage Insurance reimburses Lender (or any entity that purchases the Agreement and the Account) for certain losses it may incur if Borrower does not repay the Account as agreed   Borrower is not a party to the Mortgage Insurance

If Lender required Mortgage Insurance as a condition of entering into the Agreement and establishing the Account, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect

10.   Assignment of Miscellaneous Proceeds; Forfeiture.   The Miscellaneous Proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or any part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument

If the Property is damaged and if the restoration or repair is economically feasible and Lender's security is not lessened, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property   During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.   Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed   Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds   If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower   Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

If Lender believes the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, then Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due   "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                                    Page 9 of 14                                    22156WA 0842
www.compliancesource.com                                                                              ©2004 , The Compliance Source, Inc

20040729000663.010

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** When Borrower (as that term is defined above) includes more than one person, Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several and shall be binding upon any marital community of which Borrower is a member. However, any Borrower who co-signs this Security Instrument but does not execute the Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Account Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, as allowed under Applicable Law, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender shall have the authority to impose additional fees and charges to perform services requested by or on behalf of Borrower, or to otherwise administer and service the Agreement and the Account. The additional fees and charges may include administrative costs incurred by Lender and/or in reimbursement of payments made by Lender to third parties. Such fees and charges may include, without limitation, any and all costs or fees associated with the origination and/or servicing of such Agreement and the Account, document copy or preparation fees, transmittal, facsimile or delivery fees, reconveyance and release fees, property inspections and returned check or insufficient funds charged in connection with payments made by or on behalf of Borrower under the Agreement and all other such fees for ancillary services performed by Lender for Borrower or at Borrower's request or for services necessitated by or

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—          Page 16 of 34          2110WA 09/02
www.compliancesource.com

20040729000563.011

resulting from Borrower's default or malfeasance relating to this Security Instrument or the Agreement or incurred by Lender or assessed upon Borrower pursuant to the provisions of this Security Instrument or the Agreement Such fees and charges shall be secured by this Security Instrument up to the amount of the Credit Limit and, unless Borrower and Lender agree to other terms of payment, shall bear interest from the date assessed by Lender at the rate stated in the Agreement, and in effect from time to time, and shall be payable, with interest, immediately following written demand from Lender to Borrower requesting payment thereof Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law The absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee

If either the Agreement or the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected or to be collected in connection with the Agreement and the Account exceed the permitted limits, then (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower may have arising out of such overcharge

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Agreement conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision

As used in this Security Instrument   (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**16. Borrower's Copy.** Borrower shall be given one copy of the Agreement and of this Security Instrument

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC — Page 11 of 14                                    31567WA 02/02

20040729000563.012

interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, as allowed under Applicable Law, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 17

**19. Sale of Agreement/Account; Change of Loan Servicer; Notice of Grievance.** The Agreement and the Account, or a partial interest in the Agreement and the Account (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects the Periodic Payments due under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Agreement and the Account If there is a change of the Loan Servicer, if required under Applicable Law, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Agreement and the Account are sold and thereafter the Agreement and the Account are serviced by a Loan Servicer other than the purchaser of the Agreement and the Account, the mortgage loan servicing obligations will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Agreement and the Account unless otherwise provided by the purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period

Ex. 1 pg-31-

20040729000663.043

which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 19  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19

20.  **Hazardous Substances.**  As used in this Section 20  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including, but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law  Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows

21.  **Events of Default; Acceleration; Remedies.**  The occurrence of any one or more of the following events shall, at the election of Lender, constitute an "Event of Default," and shall entitle Lender to terminate the Agreement and the Account and accelerate the indebtedness secured hereby: (a) any Borrower engages in fraud or material misrepresentation, whether by action or omission, in connection with any phase of the Agreement; (b) Borrower fails to meet the repayment terms set forth in the Agreement; or (c) Borrower's action or inaction adversely affects the Property or Lender's security interest, including, but not limited to, Borrower's actions or omissions that constitute "Events of Default" under the Agreement, or Borrower's failure to perform any material covenants or agreements contained in this Security Instrument

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public

Washington Home Equity Line of Credit Deed of Trust and Security Agreement - Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC —   Page 13 of 16

Ex. 1 pg-32-

20040729000683.014

auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

22.  Reconveyance.  Upon request from Borrower and upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes and agreements evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it  Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance

23.  Substitute Trustee.  In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

24.  Use of Property. The Property is not used principally for agricultural purposes

25.  Attorneys' Fees.  Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument  The term "attorneys' fees", whenever used in this Security Instrument, shall include, without limitation, attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal

20040729000663.015

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page two of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action

------------------------- [Signatures on Following Page] -------------------------

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

Printed Name   _S. A. McDonald_
                (Please Complete)

Printed Name
                (Please Complete)

Richard O. Base                                    (Seal)
                                                   -Borrower
                                                   Printed Name

                                                   (Seal)
                                                   -Borrower
                                                   Printed Name

                                                   (Seal)
                                                   -Borrower
                                                   Printed Name

                                                   (Seal)
                                                   -Borrower
                                                   Printed Name

------------------------- [Space Below This Line For Acknowledgment] -------------------------

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC —                        Page 15 of 16                        24186WA  08/03
www.compliancesource.com                                              ©2003 The Compliance Source, Inc.

20040728000563.016

State of  WASHINGTON

County of   KING

I certify that I know or have satisfactory evidence that  RICHARD  O.  RUSE
[name of person]
is the person who appeared before me, and said person(s) acknowledged that (he/she/they) signed this instrument
and acknowledged it to be (his/her/their) free and voluntary act for the uses and purposes mentioned in the
instrument

Dated  6-16-04

(Seal)

(Signature)

                                        S. A. MCDONALD
(Title of Office)  NOTARY PUBLIC                [Printed Name]

My appointment expires    1-9-05

20040729000563.017

Deal No   109264

**EXHIBIT "A"**

The land referred to herein is in the State of Washington, County of King, Unincorporated Area , and is described as follows

Parcel A, Lot A, King County Lot Line Adjustment Number L96L0019, recorded under Recording No  9607159010 being a portion of the Northwest quarter of Section 4 Township 26 North Range 7 East W M  King County, Washington, and Lots 5 and 6 Stillwater according to the Plat thereof recorded in Volume 19 of Plats, Page 11 in King County, Washington Parcel B the West 60 feet of the following described property the Westerly 208 7 feet of the Southerly 208 7 feet of Government Lot 3, Section 4, Township 26 North Range 7 East W M  King County, Washington

Tax ID Number  0425079022

# Exhibit 2

P.O. Box 471827
Charlotte, NC 28247-1827

Address Service Requested

August 12, 2005

United Mortgage & Loan Investment, LLC

RE: Account Number    : 30569530
Previous Acct #    : 008414688.5

Richard O Buse
9424 Carnation Duvall Rd NE
Carnation, WA 98014-6706

*[handwritten: Called 9-7-05 & about change of lender]*

*[handwritten: due 9-15 Pay Oct Nov Dec 1,383.25]*

## NOTICE OF ASSIGNMENT, SALE OR TRANSFER OR SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, has been assigned, sold or transferred from Greenpoint Mortgage Funding, Inc to United Mortgage & Loan Investment, LLC (hereafter referred to as United Mortgage), effective August 1, 2005. While United Mortgage is servicing your debt, the creditor to whom is owed is Rescomm Holdings No 2 Llc.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan

Except in the limited circumstances, the law requires that your previous servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your prior servicer is Greenpoint Mortgage Funding, Inc. If you have any questions relating to the transfer of servicing from your previous servicer call, Customer Service Dept. at 1-800-784-5566 between 9:00 Am - 5:00 Pm Est, Monday-Friday.

The payment address for your new servicer is:    *[handwritten: Pd 9-7-05 ck 1038]*

Rescomm Holdings No 2 Llc
P.O. Box 601012      *[handwritten: to new lender   507.77]*
Charlotte, NC 28260-1012

The toll-free telephone number of your new servicer is (800) 333-5283. If you have any questions relating to the transfer of servicing to your new servicer call Veronica Tucci Monday through Thursday between 8 am and 9 pm, Friday between 8 am and 5 pm, and Saturday between 8 am to 12 noon.

The date that your prior servicer will stop accepting payments from you is July 29, 2005. The date that your new servicer will start accepting payments from you is August 1, 2005. Send all payments due on or after that date to your new servicer.

The transfer of servicing rights may affect the terms of and/or the continued availability of mortgage life, disability insurance, or any other type of optional insurance as United Mortgage does not escrow for optional insurance. To maintain coverage, you should contact your insurance carrier immediately to make alternate payment arrangements.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

> During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

P. O. Box 471827 • Charlotte, North Carolina 28247-1827 • Telephone (800) 333-5283 •
North Carolina Department of Insurance Permit Number 3373

THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION RECEIVED FROM ANY SOURCE, INCLUDING YOURSELF, WILL BE USED FOR THAT PURPOSE.

Ex. 1 pg-38-

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name, account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan it must be sent to this address:

> United Mortgage & Loan Investment, LLC
> P.O. Box 471827
> Charlotte, NC 28247-1827

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where services are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Your prior servicer reported that your current principal balance is $78,799.11. A statement will be forthcoming showing your TOTAL BALANCE after crediting your account for all payments made and adjusting for accrued interest, escrow and/or other charges. WE DO NOT ISSUE COUPON BOOKLETS; YOU WILL RECEIVE MONTHLY STATEMENTS.

Unless you dispute the validity of this debt or any portion thereof within 30 days after receipt of this notice, United Mortgage will assume that the debt is valid. If you notify United Mortgage in writing within the 30 day period that the debt is disputed, United Mortgage will obtain verification of the debt or a copy of a judgment and mail it to you. If you make a written request for the name and address of the original creditor within the 30 day period, United Mortgage will provide it.

As of this date, we are unaware of any bankruptcy proceeding that you or anyone with an interest in the property securing this loan has filed, and we are also unaware of any foreclosure proceeding pending against the property securing this loan.

In the event that you have received a discharge in a chapter 7 bankruptcy proceeding and a reaffirmation agreement or judgment for non dischargeability concerning this debt has been entered, then this communication should not be read to imply that there is a requirement that you make payments on this loan or that you have any ongoing personal liability if you do not make payments on this loan, and in this event, any payments that you decide to make on this loan should be made solely to preserve your rights in the property that secures the loan.

In the event that you are presently a debtor in any bankruptcy chapter proceeding, you should immediately notify us of this fact and provide the bankruptcy case number and the name of your attorney so that we can take appropriate steps to communicate with you in a method allowable under applicable state and federal law, including without limitation the federal Fair Debt Collections Practices Act and the United States Bankruptcy Code.

Sincerely,
United Mortgage & Loan Investment, LLC servicing for
Rescomm Holdings No 2 Llc

HELLOUMS 000267P 2 226 000409 226 079697 S-NOCRE

Ex. 1 pg-39-

# Exhibit 3

**RECORD FIRST**

FILED for Record at Request of
Name United Mortgage & Loan Investment LC
Address P.O. Box 40169
City Charlotte, NC
28247-1827

## Assignment of Home Equity Line of Credit Deed of Trust

FOR VALUE RECEIVED, the undersigned assignor Mortgage Electronic Registration Systems, Inc. ("MERS")
P. O. Box 2026, Flint, MI 48501-2026 as nominee for Rescomm Holdings No. 2 LLC, its successors and assigns,
hereby grants, bargain, sell, assign, transfer and convey to the following (Assignee)

RESCOMM HOLDINGS NO. 2, LLC, having an address of 6701 Carmel Road, #400, Charlotte, NC 28226,

ALL of Assignor's right, title and interest in and to that certain Home Equity Line of Credit Deed of Trust, Note and
any and all judgments related to the Note and Home Equity Line of Credit Deed of Trust described below, which
Home Equity Line of Credit Deed of Trust encumbers the property more particularly described therein, together
with (and solely to the extent such Home Equity Line of Credit Deed of Trust secures) the indebtedness evidenced
by any promissory note or evidence of indebtedness which has been assigned and transferred to Assignee. This
Assignment is made without recourse to Assignor and without representation or warranty by Assignor express or
implied.

Place of Recording:          KING COUNTY, WASHINGTON
Borrowers Name:              RICHARD O. BUSE, A SINGLE MAN
Original Lender:             GREENPOINT MORTGAGE FUNDING, INC.
Mortgage Date:               JUNE 9, 2004
Recording Date:              JULY 29, 2004
Volume:
Page:
Doc #:                       20040729000563
Property Address:            31210 CARNATION DUVALL RD NORTHEAST, CARNATION, WA 98014

LEGAL DESCRIPTION:          SEE ATTACHED EXHIBIT "A"

Mortgage Electronic Registration Systems, Inc. ("MERS")

WITNESSES

_Melanie Fitzgerald_
Melanie Fitzgerald

BY _Torhia Strong_
NAME: Torhia Strong
TITLE: Assistant Secretary

_Lavar Heath_
Lavar Heath

Lenders Loan Number: 30569530
MIN 100013800841468859

**20051230000532**
UN COUNTY   REC NOT         14.00
12/30/2005   16:34
KING COUNTY, WA

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

The undersigned, a notary public in and for the above-said County and State, does hereby acknowledge that on the day and year set forth below, personally appeared, Tonita Strong, Assistant Secretary, for Mortgage Electronic Registration Systems, Inc. ("MERS") is duly sworn by and personally known to the undersigned to be the Assistant Secretary of Mortgage Electronic Registration Systems, Inc., and that said instrument was signed on behalf of said corporation.

WITNESS my hand and official seal, this 30TH day of September 2005.

Notary Public for the State of North Carolina
SAUNDRA T. EVANS
My commission expires: 4/13/2009

PREPARED BY & RETURN TO:
RESCOMM HOLDINGS NO. 2, LLC
P. O. BOX 471827
CHARLOTTE, NC 28247-1827
ATTN: JESSICA PERCELL

Lenders Loan Number: 30569530
MIN: 100013800841468859

MERS Phone 1-888-679-6377

# Exhibit 4



## EXHIBIT A

**Parcel A**

Lot A, King County Lot Line Adjustment Number L96L0018, recorded under Recording No. 9607130202, being a portion of the Northwest quarter of Section 4, Township 23 North, Range 7 East, W.M., in King County, Washington, and Lots 3 and 4, Skitwitch, according to the plat thereof recorded in Volume 19 of Plats, page 11, records of King County, Washington

**Parcel B**

The West off feet of the following described property

The Westerly 208.7 feet of the Southerly 208.7 feet of Government Lot 5, Section 4, Township 23 North, Range 7 East, W.M., in King County, Washington

RECORD SECOND

FILED for Record at Request of
Name United Mortgage + Loan Investment LLC
Address P. O. Box 891827
City Charlotte, NC 28247-1827

## Assignment of Home Equity Line of Credit Deed of Trust

FOR VALUE RECEIVED, the undersigned assignor RESCOMM HOLDINGS NO. 2, LLC ("Assignor") having an address of 6701 Carmel Road, Ste 110, Charlotte, NC 28226 does hereby grant, bargain, sell, assign, transfer and convey to the following assignee, UM ACQUISITIONS, LLC ("Assignee") having an address of 6701 Carmel Road, Ste 110, Charlotte, NC 28226.

ALL of Assignor's right, title and interest in and to that certain Home Equity Line of Credit Deed of Trust, Note and any and all judgments related to the Note and Home Equity Line of Credit Deed of Trust described below, which Home Equity Line of Credit Deed of Trust encumbers the property more particularly described therein, together with (and solely to the extent such Home Equity Line of Credit Deed of Trust secures) the indebtedness evidenced by any promissory note or evidence of indebtedness which has been assigned and transferred to Assignee. This Assignment is made without recourse to Assignor and without representation or warranty by Assignor express or implied.

Place of Recording:       KING COUNTY, WASHINGTON
Borrowers Name:           RICHARD O. BUSE, A SINGLE MAN
Original Lender:          GREENPOINT MORTGAGE FUNDING, INC.
Mortgage Date:            JUNE 9, 2004
Recording Date:           JULY 29, 2004
Volume:
Page:
Doc #:                    20040729000543
Property Address:         31210 CARNATION DUVALL RD NORTHEAST, CARNATION, WA 98014
LEGAL DESCRIPTION:        SEE ATTACHED EXHIBIT "A"

Witnesses:

_Melanie Fitzgerald_
Melanie Fitzgerald

_Lavar Heath_
Lavar Heath

RESCOMM HOLDINGS NO. 2, LLC

BY: _Torlina Strong_
NAME: TORLINA STRONG
TITLE: ASSISTANT MANAGER

20051230000533
14.00
KING COUNTY, WA

Ex. 1 pg-45-

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

The undersigned, a notary public in and for the above-said County and State, does hereby acknowledge that on the day and year set forth below, personally appeared, Torlina Strong, Assistant Manager for Rescomm Holdings No. 2, LLC, duly sworn by and personally known to the undersigned to be the person who executed the foregoing instrument on behalf of said principal, acknowledged to the undersigned that he voluntarily executed the same for the purposes therein stated as the free act and deed of said principal.

WITNESS my hand and official seal, this 30th day, September, 2005.

Notary Public for the State of North Carolina
SAUNDRA T. EVANS
My commission Expires: 4/13/2009

PREPARED BY & RETURN TO:
JESSICA PERCELL
RESCOMM HOLDINGS NO. 2, LLC
P. O. BOX 411827
CHARLOTTE, NC 28241-1827

Account #: 30569530
Name: BUSE, RICHARD O.



**EXHIBIT A**

Parcel A

Lot A, King County Lot Line Adjustment Number L96L0019, recorded under Recording No. 9607280716, being a portion of the Northwest quarter of Section 4, Township 23 North, Range 7 East, W.M., in King County, Washington, and Lots 3 and 6, Peterslane, according to the plat thereof recorded in Volume 13 of Plats, page 11, records of King County, Washington

Parcel B

The West 60 feet of the following described property:

The Westerly 208.7 feet of the Southerly 208.7 feet of Government Lot 3, Section 4, Township 23 North, Range 7 East, W.M., in King County, Washington

# Exhibit 5

**200606190001645**

RETURN TO:

TOM BLOCK
P.O. BOX 1398
AGOURA HILLS, CA 91376

## ASSIGNMENT OF HOME EQUITY LINE OF CREDIT DEED OF TRUST

FOR VALUE RECEIVED, the undersigned assignor UM ACQUISITIONS, LLC, ("Assignor"), having an address of 6701 Carmel Road, Suite 110, Charlotte, NC 28226, does hereby grant, bargain, sell, assign, transfer and convey to the following ("Assignee"), UM CAPITAL, LLC, having an address of 6701 Carmel Road Suite 110, Charlotte, NC 28226.

ALL of Assignor's right, title and interest in and to that certain DEED OF TRUST, Note and any and all judgments related to the Note and DEED OF TRUST described below, which DEED OF TRUST encumbers the property more particularly described therein, together with (and solely to the extent such DEED OF TRUST secures) the indebtedness evidenced by any promissory note or evidence of indebtedness which has been assigned and transferred to Assignee. This Assignment is made without recourse to Assignor and without representation or warranty by Assignor expressed or implied.

| | |
|---|---|
| Assignment Date: | May 24, 2006 |
| Place of Recording: | KING COUNTY, WASHINGTON |
| Borrower's Name: | RICHARD O. BUSE, A SINGLE MAN |
| Original Lender: | GREENPOINT MORTGAGE FUNDING, INC. |
| Mortgage Date: | JUNE 9, 2004 |
| Recording Date: | JULY 29, 2004 |
| Volume: | |
| Page #: | |
| Doc#: | 20040729000563 |
| Property Address: | 31210 CARNATION DUVALL ROAD NORTHEAST, CARNATION, WA 98014 |

*Legal Description:* SEE ATTACHED EXHIBIT "A"

Assessor's Identification Number: 0425079023

UM ACQUISITIONS, LLC

WITNESSES:

_____
TERI MITCHELL

_____
LATEKA TERNEY

BY: _____
NAME: TORLINA STRONG
TITLE: ASSISTANT MANAGER

STATE OF North Carolina
COUNTY OF Mecklenburg

The undersigned, Saundra T. Evans a notary public in and for the above-said County and State, does hereby acknowledge that on the day and year set forth below, personally appeared, Teritaa Strong, Assistant Manager for UM Acquisitions, LLC, duly sworn by and personally known to the undersigned to be the person who executed the foregoing instrument on behalf of said principal, acknowledged to the undersigned that he voluntarily executed the same for the purposes therein stated as the free act and deed of said principal.

WITNESS my hand and official seal this 24TH DAY OF MAY, 2006

_____
Notary Public for the State of North Carolina
Saundra T. Evans
My commission Expires: 4-13-2009

SAUNDRA T EVANS
NOTARY PUBLIC
Mecklenburg County
North Carolina
My Commission Expires April 13, 2009

PREPARED BY & RETURN TO:
Kimberly Pliter
Attn: Collateral Control Agent
UM Acquisitions, LLC
P.O. Box 471827
Charlotte, NC 28247-1827

#30569530-BUSE, RICHARD O.

EXHIBIT "A"

The land referred to herein is in the State of Washington, County of King, Unincorporated Area , and is described as follows:

Parcel A, Lot A, King County Lot Line Adjustment Number L98L0019, recorded under Recording No. 9807159010 being a portion of the Northwest quarter of Section 4 Township 25 North Range 7 East W.M. King County, Washington, and Lots 5 and 6 Stillwater according to the Plat thereof recorded in Volume 18 of Plats, Page 11 in King County, Washington. Parcel B the West 69 feet of the following described property the Westerly 208.7 feet of the Southerly 208.7 feet of Government Lot 3, Section 4, Township 25 North Range 7 East W.M. King County, Washington.

Tax ID Number: 0425079022

# Exhibit 6

TOM BLOCK
P.O. BOX 1398
AGOURA HILLS, CA 91376

**20060619001646**
FIRST AMERICAN MGT          14.00
ASSIGNMENT 16:22
06/19/2006
KING COUNTY, WA

### ASSIGNMENT HOME EQUITY LINE OF CREDIT DEED OF TRUST

FOR VALUE RECEIVED, the undersigned assignor UM CAPITAL, LLC. ("Assignor") does hereby grant, bargain, sell, assign, transfer and convey to the following assignee, TOM BLOCK ("Assignee") having an address of P.O. Box 1398, Agoura Hills, CA 91376-1398.

ALL of Assignor's right, title and interest in and to that certain Deed of Trust, Note and any and all judgments related to the Note and Deed of Trust described below, which Deed of Trust encumbers the property more particularly described therein, together with (and solely to the extend such Deed of Trust secures) the indebtedness evidenced by any promissory note or evidence of indebtedness which has been assigned and transferred to Assignee. This Assignment is made without recourse to Assignor and without representation or warranty by Assignor express or implied.

| | |
|---|---|
| Assignment Date: | May 24, 2006 |
| Place of Recording: | KING COUNTY, WASHINGTON |
| Borrowers Name: | RICHARD O. BUSE, A SINGLE MAN |
| Original Lender: | GREENPOINT MORTGAGE FUNDING, INC. |
| Mortgage Date: | JUNE 9, 2004 |
| Recording Date: | JULY 29, 2004 |
| Volume: | |
| Page # | |
| Doc#: | 20040729000563 |
| Property Address: | 31210 CARNATION DUVALL ROAD NORTHEST, CARNATION, WA 98014 |

*Legal Description:* SEE ATTACHED EXHIBIT "A"

Assessor's Identification Number: 0425079022

Witnesses:

TRACI MITCHELL

JESSICA PERCELL

UM CAPITAL, LLC

BY: Torlina Strong
TITLE: Assistant Manager

STATE OF North Carolina
COUNTY OF Mecklenburg

The undersigned, Saundra T. Evans a notary public in and for the above-said County and State, does hereby acknowledge that on the day and year set forth below, personally appeared, Torlina Strong, Assistant Manager, for UM CAPITAL, LLC, duly sworn by and personally known to the undersigned to be the person who executed the foregoing instrument on behalf of said principal, acknowledged to the undersigned that he voluntarily executed the same for the purposes therein stated as the free act and deed of said principal.

WITNESS my hand and official seal, this 24TH DAY OF MAY, 2006.

Notary Public for the State of North Carolina
Saundra T. Evans
My commission Expires: 4-13-2009

SAUNDRA T EVANS
NOTARY PUBLIC
Mecklenburg County
North Carolina
My Commission Expires April 13, 2009

PREPARED BY & RETURN TO:

#30569533-BUSE, RICHARD O.

Ex.1 pg-54-

EXHIBIT "A"

The land referred to herein is in the State of Washington, County of King, Unincorporated Area , and is described as follows:

Parcel A, Lot A, King County Lot Line Adjustment Number L98L6019, recorded under Recording No. 9607159010 being a portion of the Northwest quarter of Section 4 Township 25 North, Range 7 East W.M., King County, Washington, and Lots 5 and 6 Stillwater according to the Plat thereof recorded in Volume 19 of Plats, Page 11 in King County, Washington.

Parcel B the West 60 feet of the following described property the Westerly 208.7 feet of the Southerly 208.7 feet of Government Lot 3, Section 4, Township 25 North Range 7 East W.M. King County, Washington.

Tax ID Number: 0425079022

Unofficial Document

# Exhibit 7

*133444*

*Tom Block contract 2006*

## COVER SHEET

TO:  MR. RICHARD BUSE

FROM: TOM BLOCK
      POST OFFICE BOX 1398
      AGOURA HILLS, CA. 91376-1398
      818 597-0842
      FAX 818 865-2163

  3 PAGES INCLUSIVE

## THE ENCLOSED MODIFICATION AGREEMENT EXPIRES 2 DAYS FROM THE DATE ON THE AGREEMENT AND MUST BE POSTMARKED OR DELIVERED WITH IN THAT TIME TO BE VALID.

**NOTES: PLEASE SIGN AND HAVE NOTARIZED THE ENCLOSED MODIFICATION AGREEMENT, THEN FAX TO ME. PLEASE MAIL THE ORIGINAL TO THE ABOVE ADDRESS.**

**YOU WILL NOT BE SENT ANY BILLING STATEMENTS OR PAYMENT COUPON BOOKLETS.**

**ALL FUTURE PAYMENTS MUST BE MAILED TO:**

**TOM BLOCK**
**P.O. BOX 67603**
**LOS ANGELES, CA 90067**

**THANK YOU,**

**TOM BLOCK**

# MODIFICATION OF NOTE AGREEMENT

THIS AGREEMENT MADE AND ENTERED INTO THIS 30TH DAY OF MAY 2006, BY AND BETWEEN RICHARD O. BUSE (HEREINAFTER REFERRED TO AS THE "BORROWER/S" OR "TRUSTOR/S) AND TOM BLOCK (HEREINAFTER REFERRED TO AS "LENDER" OR "BENEFICIARY"), ITS SUCCESSORS AND ITS ASSIGNS.

### WITNESSETH:

WHEREAS, BORROWER/S EXECUTED THAT CERTAIN PROMISSORY NOTE AND TRUST DEED DATED JUNE 9, 2004, THE TRUST DEED RECORDED JULY 29, 2004, AS DOCUMENT NUMBER 20040729000563, MADE PAYABLE TO LENDER IN THE ORIGINAL PRINCIPAL AMOUNT OF $80,000.00 EVIDENCING SAID INDEBTEDNESS, AND SECURING THE FOLLOWING DESCRIBED PROPERTY:

9424 CARNATION DUVALL RD. NORTHEAST CARNATION, WA 98014

WHEREAS, THE PARTIES HERETO DESIRE, AND HEREBY AGREE, TO MODIFY THE TERMS AND CONDITIONS OF SAID NOTE.

NOW, THEREFORE, IN CONSIDERATION OF THE PREMISES AND COVENANTS HEREIN CONTAINED, THE PARTIES HERETO DO HEREBY AGREE AS FOLLOWS:

FIRST: THE PRINCIPLE BALANCE WILL BE ONE HUNDRED SIX THOUSAND SEVEN HUNDRED FIFTY FIVE DOLLARS AND TWELVE CENTS ($106,755.12).

SECOND: THAT THE INTEREST ON SAID UNPAID PRINCIPAL BALANCE WILL BE CHARGED AT A FIXED RATE OF 15% PER ANNUM FROM JUNE 1, 2006, UNTIL SUCH TIME AS ALL PRINCIPAL AND INTEREST IS PAID IN FULL.

THIRD: THAT ON THE FIRST DAY OF EACH MONTH COMMENCING ON AUG. 1, 2006, INTEREST ONLY SHALL BE PAYABLE IN INSTALLMENTS OF THIRTEEN HUNDRED THIRTY FOUR DOLLARS AND FORTY FOUR CENTS ($1,334.44). SAID INSTALLMENTS WILL BE PAYABLE UNTIL THE MATURITY DATE OF MAY 1, 2009.

BORROWERS INITIALS

FOURTH: THAT THE MONTHLY INSTALLMENT WILL BE LATE IF NOT RECEIVED BY THE 10TH OF THE MONTH.

FIFTH: THAT THE LATE FEE WILL BE 10% OF THE MONTHLY PAYMENT.

SIXTH: IN THE EVENT (A) BORROWER(S) FAIL(S) TO PAY THE FINAL PAYMENT WHEN DUE, OR (B) BORROWER(S) DEFAULT(S) ON ANY INSTALLMENT DUE LENDER OR DUE ANY SENIOR LIENHOLDER, OR PROPERTY TAXES, OR HOA DUES, THEN THE INTEREST RATE ON THIS LOAN SHALL BE INCREASED BY SIX PERCENT(6%) PER ANNUM ABOVE THE RATE IN EFFECT AT THE TIME OF OCCURRENCE OF EITHER (A) OR (B) ABOVE.  THE INCREASED INTEREST RATE SHALL APPLY TO (A) ABOVE UNTIL THE FINAL PAYMENT IS RECEIVED BY LENDER. THE INCREASED INTEREST RATE SHALL APPLY TO (B) UNTIL THE ACCOUNT IS BROUGHT CURRENT.

SEVENTH: THAT THE PRINCIPAL AND INTEREST WILL BECOME ALL DUE AND PAYABLE IN FULL ON MAY 1, 2009.

EIGHTH: THAT THERE IS NO PENALTY FOR PREPAYMENT OF THIS LOAN.

NINTH: THAT THE BORROWERS AGREE TO PAY SAID NOTE ACCORDING TO THE TERMS THEREOF, AS MODIFIED BY THIS AGREEMENT.

TENTH: ALL OTHER TERM'S IN ORIGINAL NOTE NOT MODIFIED BY THIS AGREEMENT, REMAIN IN FORCE.

ELEVENTH: BORROWERS HAVE CONSULTED WITH THEIR OWN LEGAL COUNCIL PRIOR TO EXECUTING THIS DOCUMENT.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED THIS AGREEMENT ON THE DATE HEREIN SET FORTH.

BENEFICIARY

_____          _____
TOM BLOCK                                  DATED

BORROWER(S)

_____          _____
RICHARD O. BUSE                            DATED

2

# Exhibit 8

Filed for Record at Request of
FORECLOSURELINK, INC.
5006 SUNRISE BLVD.
SUITE 200
FAIR OAKS, CA 95628

**20070109002064**
FIRST AMERICAN MST                    12.00
PAGE 001 OF 013
KING COUNTY, WA

File No. fc16532-5   Loan No. Carnation Duvall   319 5631   1ST AM   ①/12

### APPOINTMENT OF SUCCESSOR TRUSTEE

NOTICE IS HEREBY GIVEN, that First American Title Insurance Company c/o
ForeclosureLink, Inc., whose address is 5006 Sunrise Blvd., Suite 200, Fair Oaks, CA
95628, is hereby appointed successor Trustee under that certain Deed of Trust dated
06/09/2004, executed by Richard O. Buse, as Grantor and Placer Title Company, as
Trustee, and Mortgage Electronic Registration Systems Inc. solely as nominee for Lender,
as the Beneficiary or Successor in Interest, and Recorded on 07/29/2004 as Auditor No.
20040729000563, records of King County, Washington.

Dated: January 4, 2007

Tom Black

STATE OF California
COUNTY OF Los Angeles

On 1/4/07 before me, Vicente Gutierrez, a Notary Public
in and for said state, personally appeared Tom Black, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person
whose name is subscribed to the within instrument and acknowledged to me that he/she
executed the same in his/her authorized capacity, and that by his/her signature on the
instrument the person, or entity upon behalf of which the person acted, executed the
instrument.
WITNESS my hand and official seal.

Signature

VICENTE GUTIERREZ
Commission # 1469977
Notary Public - California
Los Angeles County
My Comm. Expires Jan 2, 2008

1

# Exhibit 9

Foreclosurelink, Inc.
5006 Sunrise Blvd., Suite 200
Fair Oaks, CA 95628

20070209001798

FILED FOR RECORD AT REQUEST OF:
First American Title Insurance Company
c/o Foreclosurelink, Inc.
5006 Sunrise Blvd, Ste 200
Fair Oaks, CA 95628

| Loan #: | Carnation Duvall |
| Title #: | 3195631 |
| TS #: | fo15532-5 |

1ST AM

## NOTICE OF TRUSTEE'S SALE
### PURSUANT TO THE REVISED CODE OF WASHINGTON CHAPTER 61.24 ET.SEQ.

NOTICE IS HEREBY GIVEN that First American Title Insurance Company, Trustee will on 06/11/2007 at the hour of 10:00AM AT THE MAIN ENTRANCE TO THE ADMINISTRATION BUILDING, 500 4TH AVENUE, SEATTLE, WA, State of Washington, sell at public auction to the highest and best bidder, payable at the time of sale, the following described real property, situated in the County of King, State of Washington, to-wit:

Parcel A, Lot A, King County Lot Line Adjustment Number L96E0018, recorded under Recording No. 9607159010 being a portion of the Northwest quarter of Section 4 Township 25 North Range 7 East W M King County, Washington, and Lots 5 and 6 Stillwater according to the Plat thereof recorded in Volume 19 of Plats, Page 11 in King County, Washington. Parcel B, the West 60 feet of the following described property the Westerly 206.7 feet of the Southerly 206.7 feet of Government Lot 3, Section 4, Township 25 North Range 7 East W M King County, Washington.

Tax ID No. 042507/9022-05

Commonly known as: 9424 Carnation Duvall RD Northeast, Carnation, WA 98014

which is subject to that certain Deed of Trust Recorded on 07/29/2004 as Auditor No. 20040729000563, records of King County, Washington, from Richard O. Buse, as Grantor(s), to Placer Title Company, as Trustee, to secure an obligation in favor of Mortgage Electronic Registration Systems Inc., solely as nominee for Lender, as Beneficiary, the beneficial interest of which was assigned to Tom Block, under an Assignment recorded under Auditor's File No. 20060619001646.

II.

No action commenced by the Beneficiary of the Deed of Trust or the Beneficiary's successor is now pending to seek satisfaction of the obligation in any court by reason of the Grantor's default on the obligation secured by the Deed of Trust.

III.

The default(s) for which this foreclosure is made is/are as follows:

Monthly Payment: 5 monthly payments of $1,868.21 each; (October 1, 2006 through February 1, 2007): $9,341.05

Late Charges: Late Charges of $186.82 for each monthly payment not made within 15 days of its due date: $747.28

Account Deficit: $500.00

TOTAL MONTHLY PAYMENTS, LATE CHARGES AND ACCOUNT DEFICIT: $19,586.33

IV.

The sum owing on the obligation secured by the Deed of Trust is: Principal of $106,785.12, together with interest as provided in the note or other instrument secured from 09/01/06, and such other costs and fees as are due under the note or other instrument secured, and as are provided by statute.

V.

The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. The sale will be made without warranty, express or implied, regarding title, possession, or encumbrances on May 11, 2007. The default(s) referred to in paragraph III must be cured by April 30, 2007 (11 days before the sale date), to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time on or before April 30, 2007 (11 days before the sale date), the default(s) as set forth in paragraph III is/are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after April 30, 2007 (11 days before the sale date), and before the sale by the Grantor or the Grantor's successor in interest or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Grantor or the Grantor's successor in interest at the following address(es):

   9424 Carnation Duvall Rd Northeast, Carnation, WA 98014
   32501 NE 80th St., #14, Carnation, WA 98014
   31216 Carnation Duvall Rd Northeast, Carnation, WA 98014

by both first class and certified mail on January 9, 2007, proof of which is in the possession of the Trustee; and the Grantor or the Grantor's successor in interest was personally served on January 9, 2007, with said written notice of default or the written notice of default was posted in a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.

The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor, of all their interest in the above-described property.

IX.

Anyone having any objections to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.

NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants and tenants. After the 20th day following the sale, the purchaser has the right to evict occupants and tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW.

# Exhibit 10

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Dated:  02/08/07

First American Title Insurance Company, as Trustee
By: ForeclosureLink, Inc., as Agent

Name: Lauren Meyer
Title: Senior Trustee Sale Officer

First American Title Insurance Company
c/o ForeclosureLink, Inc.
5006 Sunrise Blvd., Ste 200
Fair Oaks, CA  95628
(916) 962-3453

STATE OF CALIFORNIA

COUNTY OF SACRAMENTO           ) ss.

On 02/08/07, before me, Misty Montgomery, personally appeared Lauren Meyer, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature

MISTY MONTGOMERY
Commission # 1601389
Notary Public - California
Sacramento County
My Comm. Expires Sep 13, 2009

Ex. 1 pg-66-



**20070426001527**

AFTER RECORDING RETURN TO:

FORECLOSURELINK, INC.
5006 SUNRISE BLVD.
SUITE 200
FAIR OAKS, CA 95628

Loan #:  Carnation Duvall
Title #:  3195631
TS #:   fc15532-5

## NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE

Richard O. Buse is the grantor, and Placer Title Company is the trustee, and Mortgage Electronic Registration Systems Inc. solely as nominee for Lender is the beneficiary under that certain deed of trust dated <u>06/09/2004</u>, and <u>Recorded on 07/29/2004 as Auditor No. 20040729000563</u>, records of King, Washington.

Said deed of trust encumbers the following property:
Parcel A, Lot A, King County Lot Line Adjustment Number L96L0019, recorded under Recording No. 9607159010 being a portion of the Northwest quarter of Section 4 Township 25 North Range 7 East W M King County, Washington, and Lots 5 and 6 Stillwater according to the Plat thereof recorded in Volume 19 of Plats, Page 11 in King County, Washington. Parcel B, the West 60 feet of the following described property the Westerly 208.7 feet of the Southerly 208.7 feet of Government Lot 3, Section 4, Township 25 North Range 7 East W M King County, Washington.

The undersigned trustee hereby discontinues the trustee's sale set by the Notice of Trustee's Sale <u>Recorded on 02/09/2007 as Instrument # 20070209001798</u>, records of King, Washington.

This discontinuance shall not be construed as waiving any breach or default under the aforementioned deed of trust or as impairing any right or remedy thereunder, or as modifying or altering in any respect any of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election, without prejudice, not to cause the sale to be made pursuant to the aforementioned Notice of Trustee's Sale.

Dated: April 24, 2007

First American Title Insurance Company, Trustee
By: ForeclosureLink, Inc., Agent

Name: Lauren Meyer
Title: Senior Trustee Sale Officer

STATE OF CALIFORNIA            )
                               ) ss.
COUNTY OF SACRAMENTO           )

On April 24, 2007, before me, Misty Montgomery, a Notary Public in and for said state, personally appeared Lauren Meyer, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature

MISTY MONTGOMERY
Commission # 1601320
Notary Public - California
Sacramento County
My Comm. Expires Sep 13, 2009

# Exhibit 11

TOTAL MONTHLY PAYMENTS, LATE CHARGES AND ACCOUNT DEFICIT: $25,150.39

IV.

The sum owing on the obligation secured by the Deed of Trust is: Principal of $106,755.12, together with interest as provided in the note or other instrument secured from 06/01/07, and such other costs and fees as are due under the note or other instrument secured, and as are provided by statute.

V.

The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. The sale will be made without warranty, express or implied, regarding title, possession, or encumbrances on March 7, 2008. The default(s) referred to in paragraph III must be cured by February 24, 2008 (11 days before the sale date), to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time on or before February 24, 2008 (11 days before the sale date), the default(s) as set forth in paragraph III is/are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after February 24, 2008 (11 days before the sale date), and before the sale by the Grantor or the Grantor's successor in interest or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Grantor or the Grantor's successor in interest at the following address(es):

31210 Carnation Duvall Rd Northeast, Carnation, WA 98014
9424 Carnation Duvall Road NE, Carnation, WA 98014
32501 NE 50th St. #14, Carnation, WA 98014

by both first class and certified mail on October 31, 2007, proof of which is in the possession of the Trustee; and the Grantor or the Grantor's successor in interest was personally served on October 31, 2007, with said written notice of default or the written notice of default was posted in a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.

The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor, of all their interest in the above-described property.

IX.

Anyone having any objections to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.

NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants and tenants. After the 20th day following the sale, the purchaser has the right to evict occupants and tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Foreclosurelink, Inc.
5006 Sunrise Blvd., Suite 200
Fair Oaks, CA  95628

20071204001361

FILED FOR RECORD AT REQUEST OF:
FIRST AMERICAN TITLE INSURANCE
COMPANY
c/o ForeclosureLink, Inc.
5006 Sunrise Blvd, Ste 200
Fair Oaks, CA  95628

| Loan #:  carnation duvall |
| Title #:  3486874 |
| TS #:  fc17644-5 |

1ST AM  ③/42

## NOTICE OF TRUSTEE'S SALE
PURSUANT TO THE REVISED CODE OF WASHINGTON
CHAPTER 61.24 ET.SEQ.

NOTICE IS HEREBY GIVEN that FIRST AMERICAN TITLE INSURANCE COMPANY, Trustee will on 03/07/2008 at the hour of 10:00AM AT THE MAIN ENTRANCE TO THE ADMINISTRATION BUILDING, 500 4TH AVENUE, SEATTLE, WA, State of Washington, sell at public auction to the highest and best bidder, payable at the time of sale, the following described real property, situated in the County of King, State of Washington, to-wit:

PARCEL A, LOT 1, LOTS 5 & 6 STILLWATER VOL. 19, PLAT 11
SEE ATTACHED FOR COMPLETE LEGAL DESCRIPTION

Tax ID No.  042507-9022-05

Commonly known as:  9424 CARNATION DUVALL ROAD NE, CARNATION, WA 98014

which is subject to that certain Deed of Trust Recorded on 07/29/2004 AS AUDITOR NO. 20040729000583, records of King County, Washington, from RICHARD O. BUSE, as Grantor(s), to  PLACER TITLE COMPANY, as Trustee, to secure an obligation in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., SOLELY AS NOMINEE FOR LENDER, as Beneficiary, the beneficial interest of which was assigned to  TOM BLOCK, under an Assignment recorded under Auditor's File No. 20080619001646.

II.

No action commenced by the Beneficiary of the Deed of Trust or the Beneficiary's successor is now pending to seek satisfaction of the obligation in any court by reason of the Grantor's default on the obligation secured by the Deed of Trust.

III.

The default(s) for which this foreclosure is made is/are as follows:

Monthly Payment: 7 monthly payments of $1,868.21 each: (June 1, 2007 through December 1, 2007): $13,077.47

Late Charges: Late Charges for each monthly payment not made within 15 days of its due date: $1,120.92

Account Deficit: $10,578.36

Ex. 1 pg-71-

REFERENCE NO: FC17644-5

## EXHIBIT "A"

THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE STATE OF WASHINGTON, UNINCORPORATED AREA, COUNTY OF KING AND IS DESCRIBED AS FOLLOWS:

PARCEL A LOT A KING COUNTY LOT LINE ADJUSTMENT NUMBER L96L0019, RECORDED UNDER RECORDING NO 9607159016 BEING A PORTION OF THE NORTHWEST QUARTER OF SECTION 4 TOWNSHIP 25 NORTH RANGE 7 EAST W M KING COUNTY, WASHINGTON, AND LOTS 5 AND 6 STILLWATER ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 19 OF PLATS, PAGE 11 IN KING COUNTY, WASHINGTON PARCEL B THE WEST 60 FEET OF THE FOLLOWING DESCRIBED PROPERTY THE WESTERLY 208 7 FEET OF THE SOUTHERLY 208 7 FEET OF GOVERNMENT LOT 3, SECTION 4, TOWNSHIP 25 NORTH RANGE 7 EAST W M KING COUNTY, WASHINGTON.

Dated:   11/30/07

FIRST AMERICAN TITLE INSURANCE COMPANY, as Trustee
By:  ForeclosureLink, Inc., as Agent

Name: Lauren Meyer
Title: Senior Trustee Sale Officer


FIRST AMERICAN TITLE INSURANCE COMPANY
c/o ForeclosureLink, Inc.
5008 Sunrise Blvd., Ste 200
Fair Oaks, CA  95628
(916) 962-3453


STATE OF CALIFORNIA  }
                     } ss.
COUNTY OF SACRAMENTO }


On 11/30/07, before me, Misty Montgomery, personally appeared Lauren Meyer,
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person whose name is subscribed to the within instrument and acknowledged to me
that he/she executed the same in his/her authorized capacity, and that by his/her
signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

WITNESS my hand and official seal.


Signature _____

MISTY MONTGOMERY
Commission # 1601320
Notary Public - California
Sacramento County
My Comm. Expires Sep 13, 2009

Ex. 1 pg-73~

# EXHIBIT 12



Home Page | Contact Us  | Location | Privacy Policy | Site Map

Newsroom  |  About Us  |  Events  |  Why MERS?  |  Knowledge Base  |  Careers

| Tools & Services | _MERS_ Products ▸ | MERS [x] System | MERS [a] Link | MERS [k] 1-2-3 | MERS [7] Commercial |
|---|---|---|---|---|---|
| Downloads | | MERS [a] eRegistry | MERS [j] eDelivery | MERS [ii] ServicerID | MERS iSearch |
| Member Directory | | | | | |

Foreclosures

Enhancements

Forum

Advertising

Payment Options

**MERS for Homeowners**

📞 Contact Us



Home » About Us › Overview

## About MERS

**MERS was created by the mortgage banking industry to streamline the mortgage process by using electronic commerce to eliminate paper. Our mission is to register every mortgage loan in the United States on the MERS® System.**

Beneficiaries of MERS include mortgage originators, servicers, warehouse lenders, wholesale lenders, retail lenders, document custodians, settlement agents, title companies, insurers, investors, county recorders and consumers.

MERS acts as nominee in the county land records for the lender and servicer. Any loan registered on the MERS® System is inoculated against future assignments because MERS remains the nominal mortgagee no matter how many times servicing is traded. MERS as original mortgagee (MOM) is approved by Fannie Mae, Freddie Mac, Ginnie Mae, FHA and VA, California and Utah Housing Finance Agencies, as well as all of the major Wall Street rating agencies.

TOP

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright© 2008 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.

Ex. 1 pg-75-



Home Page | Contact Us | Location | Privacy Policy | Site Map

Newsroom | About Us | Events | Why MERS? | Knowledge Base | Careers

| Tools & Services | *MERS* Products | | | | |
|---|---|---|---|---|---|
| Downloads | | MERS System | MERS Link | MERS 1-2-3 | MERS Commercial |
| Member Directory | | MERS eRegistry | MERS eDelivery | MERS ServicerID | MERS iSearch |
| Foreclosures | | | | | |

Home » Why MERS? › Overview

## Why MERS?

### The Value of Registering Loans with MOM

Tools & Services (sidebar):
- Downloads
- Member Directory
- Foreclosures
- Enhancements
- Forum
- Advertising
- Payment Options
- **MERS for Homeowners**



↳Contact Us

Join Now
Become a Member

## ELIMINATE THE NEED TO PREPARE AND RECORD ASSIGNMENTS – FOREVER

### DUAL ASSIGNMENT TRANSACTION (correspondent registers loan)

| 3RD PARTY LOAN ORIGINATOR | Recorded Assignment without MERS | $30 |
| | with MERS | $0 |
| CORRESPONDENT LENDER | Recorded Assignment without MERS | $30 |
| | with MERS | $0 |
| INVESTOR | Costs without MERS | $60 |
| | MERS Registration Fee | $4.95 |

YOU SAVE $55.05 PER LOAN

### SINGLE ASSIGNMENT TRANSACTION (correspondent registers loan)

| CORRESPONDENT LENDER | Recorded Assignment without MERS | $30 |
| | with MERS | $0 |
| INVESTOR | Costs without MERS | $30 |
| | MERS Registration Fee | $4.95 |

YOU SAVE $25.05 PER LOAN

#### MOM Loans Are the Best Execution

The Chain of Title is simplified because it begins and ends with MERS. Never suffer lost or misrecorded intervening assignments again.

The MERS® System reports the status of all loans-beneficial interests, servicing & sub-servicing arrangements. The Lien Release process simplified.

And dramatic cost savings, including:

- Assignments eliminated forever ($22 saved per loan)
- No correction costs (up to $30 saved per document)
- No tracking costs
- No correspondent or broker document penalties
- One Deed of Trust or Mortgage form for all transactions

TOP

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright© 2008 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.

Ex. 1 pg-77-



Home Page | Contact Us | Location | Privacy Policy | Site Map

Newsroom | About Us | Events | Why MERS? | Knowledge Base | Careers

| Tools & Services | *MERS* Products ▸ | MERS® System | MERS® Link | MERS® 1-3-5 | MERS® Commercial |
|---|---|---|---|---|---|
| Downloads | | MERS® eRegistry | MERS® eDelivery | MERS® ServicerID | MERS® iSearch |
| Member Directory | | | | | |
| Foreclosures | | | | | |
| Enhancements | Home • Why MERS? > MOM | | | | |
| Forum | **MERS as Original Mortgagee (MOM) means:** | | | | |
| Advertising | • Millions in savings for mortgage lenders! | | | | |
| Payment Options | • Eliminating the cost and aggravation of mortgage assignments forever! | | | | |
| **MERS for Homeowners** | **MOM Makes It Work** | | | | |

📞 Contact Us



**April 26, 1999**

The following revised MOM language must be used on the revised security instrument. After July 2000, only the revised security instrument may be used. Please see Fannie/Freddie Bulletins for further details.

    ** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
** Note: This is representative language only. Consult official Fannie Mae and Freddie Mac Announcements for specific language for your state. Other changes also may be required in the body of the Deed of Trust or Mortgage.

**Two Ways To Save**

**MERS AS NOMINEE (MOM)**

To eliminate the need for all assignments and to realize the greatest savings, lenders should close loans using standard security instruments containing language approved by Fannie Mae and Freddie Mac which name MERS as Original Mortgagee (MOM). Sample documents are available from MERS as well as many document vendors.

**MERS AS ASSIGNEE**

Lenders may also assign loans into MERS if the loan has already been closed in the lender's name. Once the loan is assigned to MERS using the same paper assignment process as you use now, tracking servicing and beneficial rights can occur electronically for all future transfers. The need for any additional assignments after this point will be eliminated unless the servicing rights are sold to a non-MERS member.

Click for Sample Assignment to MERS

**Whenever possible, all loans should be closed utilizing security instruments naming MERS as Mortgagee and Nominee for the lender to realize the maximum cost savings.** If any wholesaler or investor should require that the loan be delivered in a name other than MERS, the Certifying Officer on your staff would simply prepare a paper assignment from MERS to them. In this manner, the overwhelming majority of your production should not require assignments.

MERS - Why MERS? - MERS as Original Mortgagee (MOM)                    Page 2 of 2

TOP

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright© 2008 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.

  ⊗ Close Window

**MERS Recommended Foreclosure Procedures for**

# WASHINGTON

*Version 1.1, 11 November 1999*

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are used and are foreclosed non-judicially by conferring a power of sale on the trustee in the event of default by the borrower. MERS local counsel advises that a loan can be foreclosed in the name of MERS.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the substitution of trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

The only change to the foreclosure procedure is to name Mortgage Electronic Registration Systems, Inc. as the foreclosing entity. The Notice of Default and Notice of Trustee's Sale is still required to be sent and published and all requirements related to these Notices must be followed. At the trustee's sale, a bid will be entered on behalf of MERS. The bid is entered the same way it is entered for the servicer when foreclosing in the servicer's name. If the bid is the highest bid, then the trustee's deed can be issued directly to the investor. This is the same procedure that is followed when commencing a foreclosure in the name of the servicer. The Trustee's deed will identify the investor as the grantee under the trustee's deed and will recite that MERS, as nominee, successfully bid for the property at the trustee's sale. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional recording

or transfer taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

Recording Requested By:
*[Company Name]*
And When Recorded Mail To:
*[Company Name]*
*[Name of Natural Person]*
*[Street Address]*
*[City, State Zip Code]*

_____ *[Space Above This Line For Recording data]*

> The MERS 18-digit MIN must
> be visible on the Security
> Instrument. Place the MIN to
> the right of the form title, but
> not within the top recording
> margin or on the right margin.

# DEED OF TRUST  MIN: 1000XXX-XXXXXXXXXX-X

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated  December 29, 2000
together with all Riders to this document.

(B)    "Borrower" is  John and Mary Borrower

. Borrower is the trustor under this Security Instrument.

(C)    "Lender" is  XYZ Mortgage Company
Lender is a Corporation                                                                  organized and existing under the laws of
The State of XXXXXX   . Lender's address is 12345 Lender's Street Address, Lender's City, ST, ZIP

> MERS as the Original Mortgagee/Beneficiary
> language. See page 3 of this document to note further
> reference to MERS as Mortgagee/Beneficiary.

(D)    "Trustee" is ABC Trustee

(E)    "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under
this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address
and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.

(F)    "Note" means the promissory note signed by Borrower and dated December 29, 2000
The Note states that Borrower owes Lender
                         One Hundred Fifty Thousand  Dollars (U.S. $150,000.00 )
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than

(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

Initials: _____

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

(I)       "**Riders**" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower *[check box as applicable]*:

☐ Adjustable Rate Rider        ☐ Condominium Rider                      ☐ Second Home Rider
☐ Balloon Rider                       ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider
☐ 1-4 Family Rider                  ☐ Revocable Trust Rider
☐ Other(s) *[specify]*

(J)       "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)       "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)       "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)       "**Escrow Items**" means those items that are described in Section 3.

(N)       "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)       "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)       "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)       "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)       "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

Initials: _____

*This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)*

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

                                                    of                                                    :
*[Type of Recording Jurisdiction]*          *[Name of Recording Jurisdiction]*

> MERS noted as beneficiary in the transfer/due on sale clause.

Assessor's Identification Number:

which currently has the address of

                                                                        *[Street]*
                          , California                              ("Property Address"):
       *[City]*                              *[Zip Code]*

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                           Page 3 of 14                                    1438ICA 08/00
       www.compliancesource.com                                                         © 2000, The Compliance Source, Inc.

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to

Initials: _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 4 of 14

MERS Modified Form 3005  01/01
14991CA  08/00
© 2000, The Compliance Source, Inc.

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on

Initials: _____

**This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)**

which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

    **5.**   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not

Initials: _____

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.**   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.**   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   *Borrower's Loan Application.*   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain

Initials: _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 7 of 14

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000 The Compliance Source, Inc.

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: _____  _____  _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                      Page 8 of 14
www.compliancesource.com

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

(b)  Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

Initials: _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                   Page 9 of 14
www.compliancesource.com

MERS Modified Form 3005 01/01
1430TCA 08/00
© 2000, The Compliance Source, Inc.

Ex. 1 pg-90-

*This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)*

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing

Initials: _____

California Deed of Trust–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                      Page 10 of 14
www.compliancesource.com

MERS Modified Form 3005  01/01
14301CA  08/00
© 2000, The Compliance Source, Inc.

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Initials: _____

California Deed of Trust-Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                     Page 11 of 14
www.compliancesource.com

MERS Modified Form 3005  01/01
1430ICA  08/00
© 2000, The Compliance Source, Inc.

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 12 of 14

MERS Modified Form 3005 01/01
1430ICA 08/00
© 2000, The Compliance Source, Inc.

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order:  (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23.  Reconveyance.  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it.  Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.  If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24.  Substitute Trustee.  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located.  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.  Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25.  Statement of Obligation Fee.  Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—The Compliance Source, Inc.—
www.compliancesource.com
Page 13 of 14

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc

Ex. 1 pg-94-

**This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                                                                         -Borrower

Printed Name: _____
                        *[Please Complete]*

_____    _____ (Seal)
                                                                                         -Borrower

Printed Name: _____
                        *[Please Complete]*

_____ (Seal)
                                                                                         -Borrower

_____ (Seal)
                                                                                         -Borrower

_____ *[Acknowledgment on Following Page]* _____

State of _____          §
                                                   §
County of _____          §


On _____, _____ , before me, _____
*[name and title of officer]* personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.


                                                          Signature_____(Seal)


## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____, page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.


_____          Date:_____
                  (Trustee)

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                             Page 14 of 14                            1-001CA 08/00
www.compliancesource.com                                                                © 2000, The Compliance Source, Inc.



# MERS
## Tips and Hints

**In This Issue**

Save the Date!

Need Help With Transfers?

Has Your Company Info Changed?

Quick Links
- MERS Corporate Website
- MERS ServiceID
- About MERS

Save the Date!

Mark your calendars! The MERS 2008 User Conference will be held on June 19-21, 2008 at the Hyatt Regency Hotel in Reston, Virginia. Online registration will occur on April 1, 2008. Please click for more information.

[Join Our Mailing List!]

Issue 3, February 2008

## Need Help With Transfers?

Completing the transactions necessary to reflect transfers of servicing rights on the MERS® System can be confusing. The Transfer of Servicing Rights Quick Reference Guide (QRG) can help you understand the necessary transactions, and the Transfer Confirmation QRG can help you make sure they process correctly.  The Reports QRG shows you how to order the Portfolio Analysis Report to reconcile the MERS loans on your servicing system with those showing your organization as servicer on the MERS® System. And Training Bulletin 2008-01 can help you respond if you receive the Lite Member Aged MIN Servicing Report and notification because your transfers failed to go through.

## Has Your Company's Information Changed?

With all the name changes, mergers and acquisitions happening in the industry, be sure to include MERS in your transition plan. It is YOUR responsibility to notify MERS if your organization merges with, or is acquired by another company. You must also ensure that when your company information changes, it is updated on the MERS® System and with the MERS member records. Use the Company Information Change Request form to notify MERS. For help updating your company information in MERS® OnLine, see the Member Information Quick Reference Guide.

We hope you found this issue of MERS Tips & Hints useful.  For questions or clarification on any of the above items, please send us an email here.  Thank you for doing business with MERS.

**Sincerely,**

Editors
MERS Tips & Hints

**F I L E D**
KING COUNTY, WASHINTON

MAR 05 2008

SEA
SUPERIOR COURT CLERK

CHRISTOPHER A. WASHINGTON

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

**08-2-08093-5 SEA**

| | |
|---|---|
| RICHARD O. BUSE, | Case No. |
| Plaintiff, | COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND |
| vs. | PERMANENT INJUNCTION; WRONGFUL FORECLOSURE; |
| FIRST AMERICAN TITLE INSURANCE COMPANY; FORECLOSURELINK, INC.; GREENPOINT MORTGAGE FUNDING, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; RESCOMM HOLDINGS NO. 2, LLC; UM ACQUISITIONS, LLC; TOM BLOCK; and Doe Defendants 1 through 20, | BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; SLANDER OF TITLE; BREACH OF FIDUCIARY DUTY; BREACH OF QUASI-FIDUCIARY DUTY;  VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, *et seq.* |
| Defendants. | |

Comes now Plaintiff, Richard O. Buse, by and through his attorney of record, and for his Complaint against the Defendants hereby complains and alleges as follows:

## I. PARTIES

1.1     Richard O. Buse ("Mr. Buse") is a resident of King County, Washington.

1.2     Defendant FIRST AMERICAN TITLE INSURANCE COMPANY ("First American") is an unknown type of business operating in the State of Washington presumably as a title insurance company, but which is not registered with the Washington Secretary of State

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 1

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2 pg-1-

as a corporation, LLC or limited liability partnership. Defendant First American is engaged in the business of acting as a foreclosure trustee and in noticing and conducting foreclosures in the County of King and in the state of Washington through an illegal and unlicensed agent, Defendant Foreclosure Link.

1.3   Defendant FORECLOSURELINK, INC. ("ForeclosureLink") is a California corporation which is NOT licensed to conduct business in the State of Washington, but which does conduct business in the State of Washington by acting as a foreclosure trustee in the guise of acting as an agent for Defendant First American, the ostensible trustee.

1.4   Defendant GREENPOINT MORTGAGE FUNDING ("Funding") is a New York corporation that is licensed to conduct business in the State of Washington, and which does conduct business by, among other things, engaging in mortgage lending activities and obtaining security interests in real property located King County, Washington. Defendant Greenpoint was the original lender who provided Mr. Buse with a home equity line of credit loan in 2004 and obtained a security interest in his real property located in Carnation, Washington.

1.5   Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is a Delaware corporation that is not licensed to conduct business in the State of Washington, but it nevertheless purports to obtain security interests in real property located in the State of Washington, and it purports to have acquired an interest in Mr. Buse's real property first as a "nominee" but also as a "beneficiary" under the terms of the GreenPoint Deed of Trust.

1.6   Defendant RESCOMM HOLDINGS No. 2, LLC ("Rescomm") is apparently a limited liability company with an address in Flint, Michigan but Mr. Buse is presently uncertain

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 2

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2 pg -2-

1   as to where the company is registered.  It is NOT registered to conduct business in the State of

2   Washington as it is not licensed through the Washington Secretary of State.  Nevertheless,

3   Defendant Rescomm acquired the purported ownership interest in Mr. Buse's Deed of Trust on

4   September 30, 2005, thereby ostensibly obtaining a security interest in Mr. Buse's real property

5   located in the State of Washington.

6

7        1.7      Defendant UM ACQUISITIONS, LLC ("UM") is apparently a limited liability

8   company with an address in Charlotte, North Carolina but Mr. Buse is presently uncertain as to

9   where the company is registered.  It is NOT registered to conduct business in the State of

10  Washington as it is not licensed through the Washington Secretary of State.  Nevertheless,

11  Defendant UM acquired the purported ownership interest in Mr. Buse's Deed of Trust on

12  September 30, 2005 from Defendant Rescomm (who had acquired its interest on the same day),

13  thereby ostensibly obtaining a security interest in Mr. Buse's real property located in the State

14  of Washington.

15

16       1.8      Defendant UNITED MORTGAGE & LOAN INVESTMENT, LLC ("United

17  Mortgage") is apparently a limited liability company with an address in Charlotte, North

18  Carolina but Mr. Buse is presently uncertain as to where the company is registered.  It is NOT

19  registered to conduct business in the State of Washington as it is not licensed through the

20  Washington Secretary of State.  However, Defendant United Mortgage purported to act as a

21  servicer or owner or assignee of Mr. Buse's loan as of August 2005.  However, this statement

22  contradicts the documents recorded in the records of King County, Washington which

23

24  demonstrate that Defendants Rescomm and then subsequently Defendant UM acquired

25  ownership of the loan on **September 30, 2005.**

26       1.9      Defendant TOM BLOCK ("Block") is an individual who is believed to reside in

27

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 3

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2 pg-3-

1   Los Angeles County, California.  Defendant Block apparently purchased ownership of Mr.

2   Buse's home equity loan made with Defendant Greenpoint on May 24, 2006 from Defendant

3   UM.  According to the records of King County, Washington, Defendant Block is the owner of

4   Mr. Buse's second mortgage loan, and Mr. Buse has been making payments to Defendant

5
    Block for the last couple of years based upon that representation.
6

7           1.10  The true names and capacities of Does 1 through 20, inclusive, whether

8   individual, corporate, partnership, associate or otherwise, are presently unknown to Plaintiff,

9   who therefore sues said Defendants by such fictitious names.  Plaintiff alleges on information

10  and belief that each Defendant is responsible in some manner for the events described herein

11  and is liable to Plaintiff for the damages he has incurred.  Plaintiff will amend this Complaint to

12
    show the true names and capacities of the Doe Defendants when they have been ascertained.
13

14          1.11    At all times mentioned herein, the Defendants, and each of them, were the

15  agents, servants, representatives and/or employees of each of the remaining Defendants and

16  were acting within the course and scope of such agency or employment.  The exact terms and

17  conditions of the agency, representation or employment relationships are presently unknown to

18  Plaintiff, but when the information is ascertained, leave of court will be sought to insert the

19  appropriate allegations.

20
                           **II.  FACTUAL ALLEGATIONS**
21

22          2.1     Mr. Buse has been a victim of the mortgage lending mess created by Wall

23  Street, mortgage lenders and servicers, Defendant MERS and various and assorted other

24  vultures who are engaged in a pattern and business practices intended to deceive and mislead

25  homeowners regarding application of their payments and the amounts owing under notes and

26  deeds of trust, and upon the courts and county recorders offices regarding their ownership

27
    LAW OFFICES OF
    **MELISSA A. HUELSMAN**
    COMPLAINT FOR VIOLATIONS OF                    705 SECOND AVENUE, SUITE 501
    THE CONSUMER PROTECTION ACT, etc. - 4          SEATTLE, WASHINGTON 98104
                                                   TELEPHONE: (206) 447-0103
                                                   FACSIMILE: (206) 447-0115

Ex. 2 pg 4-

1  interest in the notes and deeds of trust under which they are collecting fees and/or initiating

2  foreclosures.

3      2.2  Mr. Buse has owned his home for many years.  He applied for and obtained a

4  home equity line of credit loan from Defendant GreenPoint on June 16, 2004.  In connection

5  with the making of that loan, Mr. Buse signed a Deed of Trust for Defendant GreenPoint,

6  which was recorded in the records of King County, Washington on July 29, 2004.  A copy of

7  the Deed of Trust is attached hereto and incorporated herein by reference as Exhibit "!".  That

8  Deed of Trust ("DOT") contained a false representation on its face when it represented that

9  Defendant MERS was a beneficiary under the DOT.  Paragraph (E) states that "MERS is a

10  separate corporation that is acting solely as a Nominee for Lender and Lender's successors and

11  assigns.  MERS is the beneficiary under this Security Instrument."  As will be demonstrated

12  below, MERS is NOT the beneficiary under the DOT, it never had ownership or possession of

13  the Promissory Note which is the obligation which is secured by the DOT, and MERS has

14  never been entitled to receive one cent of remuneration from Mr. Buse's loan proceeds.  The

15  statement that MERS is the "Nominee" is nonsensical language which means nothing in a real

16  estate transaction and most certainly, MERS has never been nor is it now the beneficiary under

17  the DOT.  The language is a sham.

18      2.3  After obtaining the loan in 2004, Mr. Buse made payments on the loan to

19  Defendant GreenPoint, which held itself out as the owner and/or servicer of the mortgage loan

20  through 2005.  On or abou August 12, 2005, Mr. Buse received a notice that Defendant United

21  Mortgage was the new owner or servicer or assignee of the mortgage loan and instructing Mr.

22  Buse to thereafter make his payments to Defendant Rescomm as the servicer at an address in

23  Charlotte, North Carolina.  However, the letter also stated that inquiries regarding the loan were

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 5

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   to be made to Defendant United Mortgage.  A copy of the letter received by Mr. Buse is

2   attached hereto and incorporated herein by reference as Exhibit "2".

3           2.4     Ostensibly on September 30, 2005, a Torlina Strong, purportedly an Assistant

4   Secretary with Defendant MERS executed an Assignment of Mr. Buse's mortgage loan from

5
    Defendant MERS (which was never the beneficiary under the DOT) to Defendant Rescomm.
6
7   Ms. Strong's signature is not dated, but the notary stamp is dated September 30, 2005 and the

8   notary asserts that Ms. Strong is "personally known" to her to be an Assistant Secretary of

9   Defendant MERS.  A copy of the Assignment of Home Equity Line of Credit Deed of Trust is

10  attached hereto and incorporation herein by reference as Exhibit "3".  On that same day,

11  September 30, 2005, the same notary notarized the signature of Ms. Strong, this time as the

12
    Assistant Manager of Defendant Rescomm, purporting to assign Mr. Buse's DOT to Defendant
13
14  UM.  Again, the notary represents that she has personal knowledge that Ms. Strong is an

15  assistant manager of Defendant Rescomm.  A copy of this Assignment of Home Equity Line of

16  Credit Deed of Trust is attached hereto and incorporated herein by reference as Exhibit "4".

17          2.5     Then, ostensibly on May 24, 2006, Ms. Strong again signed another Assignment

18  document, but this time she held herself out as an Assistant Manager for Defendant UM.  The

19
    notary again asserts that she personally knows Ms. Strong as an Assistant Manager for
20
21  Defendant UM, when it purports to transfer ownership of the security interest in the DOT to

22  Defendant Block.  A copy of this Assignment is attached hereto and incorporated herein by

23  reference as Exhibit "5".

24          2.6     Mr. Buse did not receive formal written notice of the purported change in

25  ownership of the mortgage loan from any of the defendants herein, including Defendant Block,

26  prior to the alleged transfer, as required by law.  Instead, Mr. Buse was just contacted by

27
LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 6

Ex. 2 pg-6-

1   Defendant Block advising that he was the new owner of the loan and that payments were now

2   to be made to him. Defendant Block also advised Mr. Buse that he was delinquent in his

3   mortgage payments and that he (Defendant Block) would be starting a foreclosure action and

4   raising the interest rate unless Mr. Buse signed a loan medication agreement. Mr. Buse

5   maintains that if the loan was in default at the time it was transferred and/or sold to Defendant

6   Block, then it was a violation of federal law.

7

8       2.7     Because of the alleged default on the loan, Defendant Block insisted that Mr.

9   Buse execute a loan modification agreement and presented it to him for signature almost

10  immediately after advising him by telephone that he owned the loan. This Modification

11  Agreement is dated **May 30, 2006**, just six days after the DOT was allegedly assigned to

12  Defendant Block in the first place and Mr. Buse believes within a day or two of his first being

13
    advised that Defendant Block allegedly owned the loan. Believing that he had no choice but to
14
15  sign the loan modification agreement, Mr. Buse did so. A copy of the Loan Modification

16  Agreement is attached hereto and incorporated herein by reference as Exhibit "6". Thereafter,

17  Mr. Buse made the new and increased payments to Defendant Block, but was not receiving

18  proper credit for those payments. Mr. Buse did become delinquent on the loan in late 2006 due

19  to financial problems related to the death of his mother.

20
        2.8     Defendant Block executed an Appointment of Successor Trustee document on
21
22  January 4, 2007 appointing Defendant First American as the successor trustee, but the

23  document's return address was to Defendant ForeclosureLink. A copy of that Appointment of

24  Successor Trustee is attached hereto and incorporated herein by reference as Exhibit "7". It

25  was not recorded until January 9, 2007, which was the date that it became effective under

26  Washington law. Nevertheless, Defendant First American, by and through its alleged agent,

27

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 7

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2 pg -7-

1   Defendant ForeclosureLink, served Mr. Buse with a Notice of Default document, at a time

2   when neither of those defendants had been properly appointed as the trustee.

3       2.9     The Notice of Trustee's Sale initiated by Defendant ForeclosureLink as the

4   ostensible agent of Defendant First American was recorded on February 9, 2007 in the records

5
    of King County, Washington. The only address listed for contact with the foreclosing trustee
6
7   on that document is an address in Fair Oaks, California. There is no Washington address on the

8   document for contacting the alleged trustee, Defendant First American. A copy of the Notice

9   of Trustee's Sale is attached hereto and incorporated herein by reference as Exhibit "8". Mr.

10  Buse paid the alleged deficiencies due and owing to Defendant Block in April 2007 and

11  Defendant ForeclosureLink recorded a Notice of Discontinuance of Trustee's Sale in the

12
    records of King County, Washington on April 26, 2007. A copy of the Notice of
13
14  Discontinuance is attached hereto and incorporated herein by reference as Exhibit "9".

15      2.10    Thereafter, Mr. Buse made payments to Defendant Block, but was not properly

16  credited for those payments. Defendant Block then contended again that Mr. Buse was

17  delinquent. A Notice of Default and later a Notice of Trustee's Sale were delivered to Mr.

18  Buse in November and December 2007. The Notice of Trustee's Sale signed by Defendant

19  ForeclosureLink ostensibly as an agent for Defendant First American was recorded in the
20
    records of King County, Washington on December 4, 2007. A copy of the Notice of Trustee's
21
22  Sale is attached hereto and incorporated herein by reference as Exhibit "10". Again, nowhere

23  on this document is there a Washington address for contacting the trustee. Mr. Buse is behind

24  in some of his payments to Defendant Block, but he is uncertain about the correct amount

25  and/or the reasons for the alleged delinquencies since he maintains that Defendant Block is not

26  properly crediting payments. Further, Mr. Buse maintains that there have been numerous

27
LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 8

Ex. 2 pg -8-

1    improprieties in the servicing, sale and transfer and appointment of trustees in the handling of

2    his loan, and that the alleged trustee, Defendants First American and/or ForeclosureLink are not

3    properly appointed as foreclosing trustees nor acting in conformity with Washington law.  For

4    these reasons, the defendants are liable for their actions, and the foreclosure sale should be

5    enjoined so that these issues may be addressed.

6

7        2.11    Regarding the issue of Defendant MERS' alleged status as a "beneficiary" under

8    the GreenPoint DOT, its own records demonstrate the falsity of the information on the

9    document.  Documents taken from Defendant MERS' own website demonstrate that it is NOT

10   the beneficiary under any Deeds of Trust or mortgages.  Rather, Defendant MERS was created

11   to "streamline the mortgage process by using electronic commerce to eliminate paper.  Our

12   mission is to register every mortgage loan in the United States on the MERS System."  It also

13   notes that "MERS remains the nominal mortgagee no matter how many times servicing is

14   traded."  A copy of the documentation taken off of Defendant MERS' website is attached

15   hereto and incorporated herein by reference as Exhibit "11".  The other documentation attached

16   from Defendant MERS' website demonstrates that it is nothing more than a computer system

17   designed by the mortgage industry to protect them from having to pay recording fees so that the

18   entity that owns any mortgage loan is available.  Defendant MERS' entire business operation is

19   premised on the wholesale and everchanging sale or transfer of "servicing rights".  The

20   documentation demonstrates that Defendant MERS does not own the loans, rather they are

21   acting as a "nominee" for whomever might or might not say that it owns the loan at any given

22   time.  Further, since Defendant MERS never obtains possession of the Promissory Note which

23   secures the Deed of Trust, it cannot ever have the right to enforce the terms of the Deed of

24

25

26   Trust, since that right is reserved to the owner and holder of the secured instrument, the

27

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501 ·
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc.' - 9

1    Promissory Note. The information from Defendant MERS also demonstrates that falsity of the

2    purported assignments of the DOT from Defendant GreenPoint to Defendant Rescomm, from

3    Defendant Rescomm to Defendant UM, and from Defendant UM to Defendant Block. The

4    same person signed the first three assignments, ostensibly as an officer of all three corporations.

5    
6    The records of Defendants MERS' explains a portion of the source of the misrepresentations --

7    it purports to appoint unidentified and unspecified persons as "officers" of Defendant MERS

8    for the purpose of executing documents to effect transfers. Mr. Buse maintains that this is a

9    sham act and that a corporation cannot create corporate officers in blank, without specificity

10   and without identification. Under this premise, Defendant MERS is contending that anyone

11   who works for some mortgage lender, servicing company, foreclosing trustee, title company,

12   
13   etc. can become an officer of Defendant MERS without providing it with notification, without

14   getting its approval or even identifying the person to assign mortgages to new owners (even if

15   that new MERS officer is also an officer of the alleged new owner of the loan) or take whatever

16   actions the other companies desire! Mr. Buse maintains that this is nothing more than a sham

17   transaction and approval and that therefore the first assignment from Defendant GreenPoint to

18   Defendant Rescomm (all signed off by the alleged employee of Defendant MERS) is invalid,

19   and that all subsequent Assignments and Appointment of Successor Trustees are also therefore

20   invalid.

21   
22       2.12    Unfortunately the alleged trustee in this foreclosure, Defendants First American

23   and ForeclosureLink are likewise engaged in attempting to perpetrate a fraud upon Mr. Buse

24   and upon the citizens of King County, Washington by purporting to assume the role of

25   foreclosing trustee, in violation of Washington loan. The actual foreclosing trustee is

26   Defendant ForeclosureLink, as evidenced by the fact that its employees are the only signers on

27

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 10

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   any of the foreclosure documents, and its contact information is the only information on any of

2   the foreclosure documents.  Defendant ForeclosureLink has attempted to evade the

3   requirements for acting as a trustee in the State of Washington by using Defendant First

4   American as a "front", since it is apparently a title insurance company licensed in the State of

5   Washington and therefore it would be able to act as a trustee.  RCW 61.24.010, a portion of the

6   Deed of Trust Act, specifies quite clearly who may act as a foreclosing trustee.  It states, in

7   pertinent part:

8

9       (1) The trustee of a deed of trust under this chapter shall be:
            (a)     Any domestic corporation authorized to insure title to real
10   property under the laws of this state, or its agents; or
            (b)     Any title insurance company authorized to ensure title to real
11   property under the laws of this state, or its agents; or . . .

12   Defendant First American might qualify as a trustee under these provisions, but

13   Defendant ForeclosureLink (which is not even licensed to engage in business in this state) is

14   not so authorized.  RCW 61.24.010(a)(b) allows the "agent" of a title insurance company to act

15   on its behalf, but "agents" for title insurance companies are defined under that licensing statute.

16

17   Under RCW 48.17.010(15) a "title insurance agent" is defined as "a business entity licensed

18   under the laws of this state and appointed by an authorized title insurance company to sell,

19   solicit or negotiate insurance on behalf of the title insurance company."  Further, RCW

20   48.29.160 verifies that, "To be licensed as [an] agent of a title insurer, the applicant must own

21   or lease and maintain a complete set of tract indexes of the county or counties in which such

22

23   agent will do business."  There is no indication whatsoever that Defendant ForeclosureLink has

24   such an index in King County, or even that it has any business address located in the State of

25   Washington.  It is clear that Defendant ForeclosureLink – the actual foreclosing trustee – is not

26   authorized to act as a trustee in the State of Washington and therefore this foreclosure must be

27

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 11

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2  pg. 11-

1  enjoined.

2  ### III. INFLICTION OF EMOTIONAL DISTRESS

3

4  **3.1   Plaintiff repeats and realleges each and every item and allegation above as if fully**

5  **and completely set forth herein.**

6  3.2   All of the Defendants' conduct with regard to Plaintiff constitutes the tort of

7  outrage and entitles Plaintiff to damages in an amount to be proven at the time of trial.

8  3.3   In the alternative, all of the corporate Defendants' conduct with regard to Plaintiff

9  constitutes the tort of intentional infliction of emotional distress and/or reckless disregard for

10

11  the infliction of emotional distress, which entitles Plaintiff to an award of damages in an

12  amount to be proven at the time of trial.

13  ### IV. SLANDER OF TITLE

14  **4.1   Plaintiff repeats and realleges each and every item and allegation above as if**

15  **fully and completely set forth herein.**

16

17  4.2   All of the Defendants have caused to be recorded numerous false documents in

18  the records of King County, Washington, including the original Deed of Trust containing false

19  statements about MERS' being the beneficiary under the DOT, Assignments, Appointment of

20  Successor Trustee, and Notices of Trustee's Sale, which impaired Plaintiff's title and which

21  constitutes slander of title.

22  4.3   Further, the actions of these Defendants regarding the recording of these

23  documents, in contravention of the laws of the State of Washington, and the recording of these

24  false documents, had a negative impact upon and impair the credit scores of Plaintiff such that

25  it will prevent him from obtaining a new mortgage loan or other credit.

26

27

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 12

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

## V.  BREACH OF FIDUCIARY DUTY OR QUASI-FIDUCIARY DUTY

5.1     **Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.**

5.2     All of the Defendants owed a fiduciary duty or quasi-fiduciary duty to Plaintiff, including but not limited to, providing Plaintiff with fair and honest disclosure of all facts that might be presumed to influence him in regard to its actions, including those facts favorable to a creditor and adverse to Plaintiff's interest as it relates to the mortgage loan.  These Defendants also had a duty to report truthful information on documents that they recorded in the records of King County, Washington and to act in conformity with the laws of the State of Washington and federal laws relating to mortgage servicing, and they did not do so.

5.3     In addition, Plaintiff alleges that Defendants First American and ForeclosureLink owed him a fiduciary duty or quasi-fiduciary duty as the purported Trustee under the GreenPoint Deed of Trust.   Defendants First American and ForeclosureLink breached this fiduciary duty because they are not acting in conformity with Washington law regarding who may be a trustee.

5.4     The Defendants did violate these fiduciary or quasi-fiduciary duties with respect to Plaintiff by the acts described in the Factual Allegations.

## VI. VIOLATION OF THE CONSUMER PROTECTION ACT

6.1     **Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.**

6.2     These Defendants have engaged in a pattern of unfair business practices in violation of the Washington Consumer Protection Act, RCW 19.86 *et seq.*, entitling Plaintiff to damages, treble damages and reasonable attorney fees and costs pursuant to the statute.

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 13

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2 pg -13-

6.3     Plaintiff alleges that all of these Defendants' actions and inactions have impaired and damaged him, entitling Plaintiff to damages to be proven at the time of trial.

### VII.  COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND ISSUANCE OF A PRELIMINARY INJUNCTION

7.1     By way of a separate motion, Plaintiff will move for issuance of a temporary restraining order and a preliminary injunction in order to stop the foreclosure sale.

Wherefore, having set forth various causes of action against Defendants, Plaintiff prays for the following relief:

1.     That judgment be entered against all of the Defendants awarding Plaintiff damages in an amount to be proven at the time of trial ;

2.     That the actions of all of the Defendants be determined to be unfair and deceptive business practices in violation of RCW 19.86, *et seq.* and that this Court award all such relief to Plaintiff as he may be entitled to under the Consumer Protection Act, including treble damages and an award of costs and attorney's fees;

3.     That the Plaintiff be awarded consequential damages, including attorney's fees incurred to bring this action and all other attorney's fees incurred in defending against the actions of the Defendants described more particularly above, in an amount to be fully proved at the time of trial;

4.     That the Plaintiff be awarded his fees and costs pursuant to the written agreements upon which the Defendants are attempting to rely;

5.     That the Plaintiff be awarded statutory damages available under any applicable statutes;

6.     That the Court award such other relief as it deems just and proper.

COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 14

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2 pg 14-

1    DATED this 4th day of March 2008.

2                                    LAW OFFICES OF MELISSA A.
                                     HUELSMAN, P.S.
3
4
     By Melissa A. Huelsman
5        Melissa A. Huelsman, WSBA #30935
         Attorney for Plaintiff Richard O. Buse
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                          LAW OFFICES OF
     COMPLAINT FOR VIOLATIONS OF        MELISSA A. HUELSMAN
     THE CONSUMER PROTECTION ACT, etc. - 15   705 SECOND AVENUE, SUITE 501
                                          SEATTLE, WASHINGTON 98104
                                          TELEPHONE: (206) 447-0103
Ex. 2 pg -15-                             FACSIMILE: (206) 447-0115