# Exhibit 1



08-CV-00510-EXH #1A

20040729000563.001

After recording please return to:

GreenPoint Mortgage Funding, Inc.
*[Company Name]*

*[Name of Natural Person]*

**20040729000563**
PLACER
PAGE001 OF 017 DT
07/29/2004 09:03
KING COUNTY, WA

981 Airway Court, Suite E
*[Street Address]*

Santa Rosa, CA, 95403-2049
*[City, State Zip Code]*

Assessor's Property Tax Parcel or Account Number. 0425079022
Abbreviated Legal Description
Parcel A, Lot A (Lots 5+6 Stillwater Vol 19, Plat 11
See Page 3 for complete legal description.

*109264* ─────────── *[Space Above This Line For Recording Data]* ───────

MIN 100013800841468859
Loan Number: 0084146885

## ACCOMODATION ONLY

# HOME EQUITY LINE OF CREDIT
## DEED OF TRUST AND SECURITY AGREEMENT
### Secondary Lien
#### (Securing Future Advances)

Borrower has established a line of credit ("Home Equity Line of Credit") with Lender as evidenced by Borrower's Home Equity Line of Credit Agreement and Promissory Note dated the same date as this Security Instrument, and all renewals, extensions, modifications, replacements and substitutions thereof (collectively, the "Agreement") Lender has agreed to make advances to Borrower under the terms of the Agreement Such advances shall be of a revolving nature and may be made, repaid and remade from time to time Borrower and Lender contemplate a series of advances to be secured by this Security Instrument. The total outstanding principal balance owing at any one time under the Agreement (not including charges and collection costs which may be owing from time to time) shall not exceed **Eighty Thousand and 00/100ths** (U S $ 80,000.00) plus interest thereon (the "Credit Limit") That sum is referred to in the Agreement as the Credit Limit The entire indebtedness under the Agreement, if not paid earlier, is due and payable on July 01, 2029 or on such later date as may be permitted by Lender in writing, or at such earlier date in the event such indebtedness is accelerated in accordance with the terms of the Agreement and/or this Security Instrument

**DEFINITIONS**

This Document Filed for Recording by NATIONAL
CLOSING SOLUTIONS as an ACCOMMODATION ONLY
and has not been examined as to its execution
or as to its affect upon the title

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC—
www.com.
Page 1 of 16
21154WA 08/03

G P M W D U U 8 4 1 4 6 8 8 5 1 1 7

20040729000563.002

Words used in multiple sections of this Security Instrument are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20   Certain rules regarding the usage of words used in this Security Instrument are also provided in Section 15

(A)   "Security Instrument" means this Home Equity Line of Credit Deed of Trust and Security Agreement, which is dated June 09, 2004, together with all Riders to this document

(B)   "Borrower" is **Richard O. Buse, A Single Man**
Borrower is the trustor under this Security Instrument

(C)   "Lender" is **GreenPoint Mortgage Funding, Inc.**
Lender is a Corporation organized and existing under the laws of the State of New York.  Lender's address is 100 Wood Hollow Drive, Novato, CA 94945

(D)   "Trustee" is **PLACER TITLE COMPANY**

(E)   "MERS" is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O  Box 2026, Flint, MI 48501-2026, tel  (888) 679-MERS

(F)   "Agreement" means the Home Equity Line of Credit Agreement and Promissory Note signed by Borrower and dated June 09, 2004  The Agreement states Lender has agreed to make advances to Borrower under the terms of the Agreement, such advances to be of a revolving nature   The total outstanding principal balance owing at any one time under the Agreement (not including charges and collection costs which may be owing from time to time under the Agreement) not to exceed the Credit Limit of **Eighty  Thousand  and 00/100ths Dollars (U S  $80,000.00)** plus interest  Borrower has promised to pay the total outstanding balance in Periodic Payments and to pay the entire debt in full not later than  **July 01, 2029**

(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property "

(H)   "Account" means the debt evidenced by the Agreement, plus interest, any other charges due under the Agreement, and all sums due under this Security Instrument, plus interest

(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower *[check box as applicable]*

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Home Improvement Rider | ☐ Revocable Trust Rider | |
| ☐ Other(s) *[specify]* | | |

G  P  M  W  D  0  0  8  4  7  4  6  8  8  5  7  7  7

20040729000563.003

(J)     "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K)     "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L)     "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M)     "**Escrow Items**" means those items that are described in Section 3

(N)     "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O)     "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Agreement and the Account

(P)     "**Periodic Payment**" means the amount due from Borrower to Lender each month for (i) principal and/or interest under the Agreement, and all late charges and other charges provided herein or authorized by the Agreement, plus (ii) any amounts under Section 3 of this Security Instrument

(Q)     "**RESPA**" means the Real Estate Settlement Procedures Act (12 U S C § 2601 *et seq*) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to the escrow account requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Agreement and the Account do not qualify as a "federally related mortgage loan" under RESPA

(R)     "**Successor In Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                                           Page 3 of 16                                                                             31151WA 03/02
www complan                                                                                                                                                          -srce Inc

G  P  M  W  D  0  0  8  4  1  4  6  8  8  5  1  1  7

Ex. 2 pg-19-

20040729000563.004

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender  (a) the prompt repayment of the Account evidenced by the Agreement, and all renewals, extensions and modifications of the Agreement, with interest thereon at the rate provided in the Agreement, (b) the payment of all other sums due under the Agreement, with interest thereon at the rate provided in the Agreement, (i) advanced to protect the security of this Security Instrument, (ii) incurred by Lender in connection with the enforcement of its rights under this Security Instrument and/or the Agreement, and/or (iii) required to be paid as set forth herein or in the Agreement, and (c) the performance of Borrower's covenants and agreements under this Security Instrument, the Agreement and any prior mortgage or deed of trust

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described real property located in the County                                        of King
                                          *[Type of Recording Jurisdiction]*          *[Name of Recording Jurisdiction]*
As more particularly described in exhibit "A"attached hereto and made a part hereof.

which currently has the address of 31210 Carnation Duvall RD Northeast
                                                                            *[Street]*
Carnation                                  , Washington 98014                        ("Property Address")
               *[City]*                                      *[Zip Code]*

       TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property" Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

       BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

       THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

---

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                                        Page 4 of 16                                        21151WA  02/03
       www.complacesource                                                                                                  Source, Inc

G  P  M  W  D  O  U  8  4  1  4  0  6  8  5  1  1  7

20040729000563.005

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

1.    **Payment of Principal, Interest and Other Charges.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Agreement and if allowable under Applicable Law, any prepayment charges, late charges and other charges due under the Agreement   Payments due under the Agreement and this Security Instrument shall be made in U S  currency  However, if any check or other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Agreement and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

2.    **Application of Payments or Proceeds.**  Payments are deemed received by Lender when received at the location designated in the Agreement or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14 or in such manner or location as required under Applicable Law  Except as otherwise described in this Section 2, and as permitted under Applicable Law, all payments accepted and applied by Lender shall be applied to the outstanding Account balance in the following order of priority  (i) any prepayment charges due under the Agreement and/or this Security Instrument if permitted by Applicable Law, (ii) amounts due under this Security Instrument to secure the amounts advanced under the Account and to protect Lender's security, (iii) any escrow payments under Section 3 of this Security Instrument, if Lender requires such payments, (iv) any late charges, (v) any other fees and charges other than finance charges, (vi) accrued and unpaid finance charges due under the Agreement, and (vii) any unpaid principal balance due under the Agreement

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  To the extent permitted by Applicable Law, voluntary prepayments shall be applied first to any prepayment charges and then as described in the Agreement

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date, or change the amount of the Periodic Payments

3.    **Funds for Escrow Items.**  Subject to Applicable Law, Borrower shall pay to Lender on the days Periodic Payments are due under the Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for. (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums  These items are called "Escrow Items "  At origination or at any time during the term of the Agreement, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3   Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender the Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC—                                   Page 5 of 16                                                    21154WA 08/01
www.compliance                                                                                                                  —— rce Inc

G  P  M  W  D  0  0  8  4  1  4  6  8  8  5  1  1  7

Ex. 2 pg-21-

20040729000563.006

Security Instrument, as the phrase "covenant and agreement" is used in Section 8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA to mean the amount by which a current escrow balance falls short of the target balance at the time of escrow analysis, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA to mean the amount of the negative balance in the escrow account, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender. If under Section 21 the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

4. **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument. Borrower shall pay when due, all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien other than a lien disclosed to Lender in Borrower's application or in any title report Lender obtained which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                    Page 6 of 16                                        21154WA 02/02
www.complianc...                                                                                          ...nce Inc

G  P  M  W  D  U  U  8  4  1  4  6  8  8  5  1  1  7

20040729000563.007

proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Agreement, the Account and this Security Instrument, if allowed under Applicable Law

5.   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Agreement  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably   Lender may require Borrower to pay, in connection with the Agreement, the Account and this Security Instrument, either   (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5, shall be added to the unpaid balance of the Account and interest shall accrue at the rate set forth in the Agreement, from the time it was added to the unpaid balance until it is paid in full

Subject to Applicable Law, all insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement and the Account up to the amount of the outstanding Account balance  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement and the Account up to the amount of the outstanding Account balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, and subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                                      Page 7 of 16                                             2154WA 08/02
www.compliancesource.com

G  P  M  W  D  0  0  8  4  1  4  6  8  8  5  1  1  7

20040729000563.008

is completed   Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds   Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds, and shall be the sole obligation of Borrower   Subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, if the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower   Such insurance proceeds shall be applied in the order provided for in Section 2

If Lender believes that Borrower has abandoned the Property, Lender may file, negotiate and settle any available insurance claim and related matters   If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim   The 30-day period will begin when the notice is given   In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement, the Account or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property   Subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement, the Account or this Security Instrument, whether or not then due.

6.   **Preservation, Maintenance and Protection of the Property; Inspections.**   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition   If the Property is damaged, unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property to avoid further deterioration or damage   If insurance or condemnation proceeds are paid in connection with damage to, or the taking of the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed   If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property   If it has reasonable cause, Lender may inspect the interior of the improvements on the Property   Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

7.   **Borrower's Home Equity Line of Credit Application.**   Borrower shall be in default if, during the home equity line of credit application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Agreement, the Account or this Security Instrument   Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

8.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which has or may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Lender believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or

G P M W D U U 8 4 I 4 o 8 8 5 1 1 7

Ex. 2 pg-24-

20040729000563.009

appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has or may attain priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument if allowed under Applicable Law  These amounts shall bear interest at the rate set forth in the Agreement from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

9.  **Mortgage Insurance.**  Mortgage Insurance reimburses Lender (or any entity that purchases the Agreement and the Account) for certain losses it may incur if Borrower does not repay the Account as agreed  Borrower is not a party to the Mortgage Insurance

If Lender required Mortgage Insurance as a condition of entering into the Agreement and establishing the Account, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect

10.  **Assignment of Miscellaneous Proceeds; Forfeiture.**  The Miscellaneous Proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or any part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument

If the Property is damaged and if the restoration or repair is economically feasible and Lender's security is not lessened, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

If Lender believes the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, then Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due   "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

G  P  M  W  D  0  U  8  4  1  4  0  0  0  1  1  1

2004072900563.01(

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** When Borrower (as that term is defined above) includes more than one person, Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several and shall be binding upon any marital community of which Borrower is a member. However, any Borrower who co-signs this Security Instrument but does not execute the Agreement (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender

**13. Account Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, as allowed under Applicable Law, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender shall have the authority to impose additional fees and charges to perform services requested by or on behalf of Borrower, or to otherwise administer and service the Agreement and the Account. The additional fees and charges may include administrative costs incurred by Lender and/or in reimbursement of payments made by Lender to third parties. Such fees and charges may include, without limitation, any and all costs or fees associated with the origination and/or servicing of such Agreement and the Account, document copy or preparation fees, transmittal, facsimile or delivery fees, reconveyance and release fees, property inspections and returned check or insufficient funds charged in connection with payments made by or on behalf of Borrower under the Agreement and all other such fees for ancillary services performed by Lender for Borrower or at Borrower's request or for services necessitated by or

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                                                                              21164WA 08/02
www.compliance                                                                                                  Inc

G  P  M  W  D  0  0  8  4  1  4  6  8  8  5  1  1  7

20040729000563.011

resulting from Borrower's default or malfeasance relating to this Security Instrument or the Agreement or incurred by Lender or assessed upon Borrower pursuant to the provisions of this Security Instrument or the Agreement Such fees and charges shall be secured by this Security Instrument up to the amount of the Credit Limit and, unless Borrower and Lender agree to other terms of payment, shall bear interest from the date assessed by Lender at the rate stated in the Agreement, and in effect from time to time, and shall be payable, with interest, immediately following written demand from Lender to Borrower requesting payment thereof Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law The absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee

If either the Agreement or the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected or to be collected in connection with the Agreement and the Account exceed the permitted limits, then (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower may have arising out of such overcharge

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Agreement conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**16. Borrower's Copy.** Borrower shall be given one copy of the Agreement and of this Security Instrument

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC —                                    Page 11 of 16                                    >1143WA 01/02
www.compliancesource com                                                                                           Source, Inc

G  P  M  W  D  O  O  8  4  1  4  6  8  8  5  1  1  7

Ex. 2  pg–27–

20040729000563.012

interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, as allowed under Applicable Law, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred  However, this right to reinstate shall not apply in the case of acceleration under Section 17

19. **Sale of Agreement/Account; Change of Loan Servicer; Notice of Grievance.** The Agreement and the Account, or a partial interest in the Agreement and the Account (together with this Security Instrument) can be sold one or more times without prior notice to Borrower  A sale might result in a change in the entity (known as the "Loan Servicer") that collects the Periodic Payments due under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and Applicable Law  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Agreement and the Account.  If there is a change of the Loan Servicer, if required under Applicable Law, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing  If the Agreement and the Account are sold and thereafter the Agreement and the Account are serviced by a Loan Servicer other than the purchaser of the Agreement and the Account, the mortgage loan servicing obligations will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Agreement and the Account unless otherwise provided by the purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action  If Applicable Law provides a time period

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                                    Page 12 of 16                                    21154WA  04/07
www.compliancesource.com

G  P  M  W  D  0  0  8  4  1  4  6  8  8  5  1  1  1

20040729000563.013

which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 19. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Hazardous Substances.** As used in this Section 20 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including, but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows

21. **Events of Default; Acceleration; Remedies.** The occurrence of any one or more of the following events shall, at the election of Lender, constitute an "Event of Default," and shall entitle Lender to terminate the Agreement and the Account and accelerate the indebtedness secured hereby: (a) any Borrower engages in fraud or material misrepresentation, whether by action or omission, in connection with any phase of the Agreement; (b) Borrower fails to meet the repayment terms set forth in the Agreement; or (c) Borrower's action or inaction adversely affects the Property or Lender's security interest, including, but not limited to, Borrower's actions or omissions that constitute "Events of Default" under the Agreement, or Borrower's failure to perform any material covenants or agreements contained in this Security Instrument.

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public

G P M W D 0 0 8 4 1 4 6 8 8 5 1 1 7

Ex. 2 pg-29-

20040729000563.014

auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

22. Reconveyance. Upon request from Borrower and upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes and agreements evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

23. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

24. Use of Property. The Property is not used principally for agricultural purposes.

25. Attorneys' Fees. Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees", whenever used in this Security Instrument, shall include, without limitation, attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

G P M W D 0 0 8 4 1 4 6 8 8 5 1 1 7

20040729000563.015

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page two of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action

[Signatures on Following Page]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____

Printed Name    S.A. MᶜDONALD
                *(Please Complete)*

_____

Printed Name
                *(Please Complete)*

_____ (Seal)
Richard O. Buse                   -Borrower
                                  Printed Name

_____ (Seal)
                                  -Borrower
                                  Printed Name

_____ (Seal)
                                  -Borrower
                                  Printed Name

_____ (Seal)
                                  -Borrower
                                  Printed Name

[Space Below This Line For Acknowledgment]

Washington Home Equity Line of Credit Deed of Trust and Security Agreement – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC —                    Page 15 of 16                    21154WA 08/03
www.compliancesource.com

G P M W D 0 0 8 4 1 4 6 8 8 5 1 1 7

Ex. 2 pg-31-

20040729000563.016

State of  WASHINGTON                                    §
                                                       §
County of    KING                                      §

I certify that I know or have satisfactory evidence that  RICHARD  O. BUSE

*[name of person]*

is the person who appeared before me, and said person(s) acknowledged that (he/she/they) signed this instrument
and acknowledged it to be (his/her/their) free and voluntary act for the uses and purposes mentioned in the
instrument

Dated  6-16-04

                                            _____
                                            (Signature)

        (Seal)

                                            S. A. MCDONALD
                                            (Title of Office) NOTARY PUBLIC    *[Printed Name]*

                                            My appointment expires    1-9-05

G P M W D 0 0 8 4 1 4 6 8 8 5 1 1 7

Ex. 2 pg-32-

20040729000563.017

Deal No   109264

## EXHIBIT "A"

The land referred to herein is in the State of Washington, County of King, Unincorporated Area, and is described as follows

Parcel A, Lot A, King County Lot Line Adjustment Number L96L0019, recorded under Recording No 9607159010 being a portion of the Northwest quarter of Section 4 Township 25 North Range 7 East W M  King County, Washington, and Lots 5 and 6 Stillwater according to the Plat thereof recorded in Volume 19 of Plats, Page 11 in King County, Washington Parcel B the West 60 feet of the following described property the Westerly 208 7 feet of the Southerly 208 7 feet of Government Lot 3, Section 4, Township 25 North Range 7 East W M  King County, Washington

Tax ID Number  0425079022

# Exhibit 2

P.O. Box 471827
Charlotte, NC 28247-1827

**BEST AVAILABLE IMAGE POSSIBLE**

Address Service Requested

United Mortgage & Loan Investment, LLC

August 12, 2005

RE: Account Number   : 30569530
Previous Acct #   : 0084146885

Richard O Buse
9424 Carnation Duvall Rd NE
Carnation, WA 98014-6706

## NOTICE OF ASSIGNMENT, SALE OR TRANSFER OR SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, has been assigned, sold or transferred from Greenpoint Mortgage Funding, Inc to United Mortgage & Loan Investment, LLC (hereafter referred to as United Mortgage), effective August 1, 2005. While United Mortgage is servicing your debt, the creditor to whom is owed is Rescomm Holdings No 2 Llc.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in the limited circumstances, the law requires that your previous servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your prior servicer is Greenpoint Mortgage Funding, Inc. If you have any questions relating to the transfer of servicing from your previous servicer call, Customer Service Dept at 1-800-784-5566 between 9:00 Am - 5:00 Pm Est, Monday-Friday.

The payment address for your new servicer is:

Rescomm Holdings No 2 Llc
P.O. Box 601012
Charlotte, N C 28260-1012

The toll-free telephone number of your new servicer is (800) 333-5283. If you have any questions relating to the transfer of servicing to your new servicer call Veronica Tucci Monday through Thursday between 8 am and 9 pm, Friday between 8 am and 5 pm, and Saturday between 8 am to 12 noon.

The date that your prior servicer will stop accepting payments from you is July 29, 2005. The date that your new servicer will start accepting payments from you is August 1, 2005. Send all payments due on or after that date to your new servicer.

The transfer of servicing rights may affect the terms of and/or the continued availability of mortgage life, disability insurance, or any other type of optional insurance as United Mortgage does not escrow for optional insurance. To maintain coverage, you should contact your insurance carrier immediately to make alternate payment arrangements.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

> During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**P. O. Box 471827 • Charlotte, North Carolina 28247-1827 • Telephone (800) 333-5283 •**
North Carolina Department of Insurance Permit Number 3373

THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION
RECEIVED FROM ANY SOURCE, INCLUDING YOURSELF, WILL BE USED FOR THAT PURPOSE.

Ex. 2 pg-35-

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name, account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan it must be sent to this address:

United Mortgage & Loan Investment, LLC
P.O. Box 471827
Charlotte, NC 28247-1827

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where services are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Your prior servicer reported that your current principal balance is $78,799.11. A statement will be forthcoming showing your TOTAL BALANCE after crediting your account for all payments made and adjusting for accrued interest, escrow and/or other charges. WE DO NOT ISSUE COUPON BOOKLETS; YOU WILL RECEIVE MONTHLY STATEMENTS.

Unless you dispute the validity of this debt or any portion thereof within 30 days after receipt of this notice, United Mortgage will assume that the debt is valid. If you notify United Mortgage in writing within the 30 day period that the debt is disputed, United Mortgage will obtain verification of the debt or a copy of a judgment and mail it to you. If you make a written request for the name and address of the original creditor within the 30 day period, United Mortgage will provide it.

As of this date, we are unaware of any bankruptcy proceeding that you or anyone with an interest in the property securing this loan has filed, and we are also unaware of any foreclosure proceeding pending against the property securing this loan.

In the event that you have received a discharge in a chapter 7 bankruptcy proceeding and a reaffirmation agreement or judgment for non dischargeability concerning this debt has been entered, then this communication should not be read to imply that there is a requirement that you make payments on this loan or that you have any ongoing personal liability if you do not make payments on this loan, and in this event, any payments that you decide to make on this loan should be made solely to preserve your rights in the property that secures the loan.

In the event that you are presently a debtor in any bankruptcy chapter proceeding, you should immediately notify us of this fact and provide the bankruptcy case number and the name of your attorney so that we can take appropriate steps to communicate with you in a method allowable under applicable state and federal law, including without limitation the federal Fair Debt Collections Practices Act and the United States Bankruptcy Code.

Sincerely.
United Mortgage & Loan Investment, LLC servicing for
Rescomm Holdings No 2 Llc

# Exhibit 3

**RECORD FIRST**

FILED for Record at Request of
Name _United Mortgage & Loan Investment LLC_
Address _P.O. Box 9075_
City _Charlotte, NC_
28247-1827

## Assignment of Home Equity Line of Credit Deed of Trust

FOR VALUE RECEIVED, the undersigned assignor Mortgage Electronic Registration Systems, Inc. ("MERS") P. O. Box 2026, Flint, MI 48501-2026 as nominee for Rescomm Holdings No. 2 LLC, its successors and assigns, hereby grants, bargain, sell, assign, transfer and convey to the following (Assignee)

RESCOMM HOLDINGS NO. 2, LLC, having an address of 6701 Carmel Road, #400, Charlotte, NC 28226,

ALL of Assignor's right, title and interest in and to that certain Home Equity Line of Credit Deed of Trust, Note and any and all judgments related to the Note and Home Equity Line of Credit Deed of Trust described below, which Home Equity Line of Credit Deed of Trust encumbers the property more particularly described therein, together with (and solely to the extent such Home Equity Line of Credit Deed of Trust secures) the indebtedness evidenced by any promissory note or evidence of indebtedness which has been assigned and transferred to Assignee. This Assignment is made without recourse to Assignor and without representation or warranty by Assignor express or implied.

Place of Recording:       KING COUNTY, WASHINGTON
Borrowers Name:           RICHARD O. BUSE, A SINGLE MAN
Original Lender:          GREENPOINT MORTGAGE FUNDING, INC.
Mortgage Date:            JUNE 9, 2004
Recording Date:           JULY 29, 2004
Volume:
Page:
Doc #:                    20040729000563
Property Address:         31210 CARNATION DUVALL RD NORTHEAST, CARNATION, WA 98014

LEGAL DESCRIPTION:        SEE ATTACHED EXHIBIT "A"

Mortgage Electronic Registration Systems, Inc. ("MERS")

WITNESSES

_Melanie Fitzgerald_
Melanie Fitzgerald

BY _Torlina Strong_
NAME: Torlina Strong
TITLE: Assistant Secretary

_Lavar Heath_
Lavar Heath

Lenders Loan Number: 30569530
MIN 100013800841468859

**20051230000532**
UN CAPITAL OPE ADT          14.00
PAGE001 OF 003
12/30/2005 09:38
KING COUNTY, WA

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

The undersigned, a notary public in and for the above-said County and State, does hereby acknowledge that on the day and year set forth below, personally appeared, Torlina Strong, Assistant Secretary, for Mortgage Electronic Registration Systems, Inc. ("MERS") is duly sworn by and personally known to the undersigned to be the Assistant Secretary of Mortgage Electronic Registration Systems, Inc., and that said instrument was signed on behalf of said corporation.

WITNESS my hand and official seal, this 30TH day of September 2005.

Notary Public for the State of North Carolina
SAUNDRA T. EVANS
My commission expires: 4/13/2009

PREPARED BY & RETURN TO:
RESCOMM HOLDINGS NO. 2, LLC
P. O. BOX 471827
CHARLOTTE, NC 28247-1827
ATTN: JESSICA PERCELL

Lenders Loan Number: 30569530
MIN: 100013800841468859

MERS Phone 1-888-679-6377

## EXHIBIT A

Parcel A

Lot A, King County Lot Line Adjustment Number LSGL0619, recorded under Recording No. 9607150010, being a portion of the Northwest quarter of Section 4, Township 25 North, Range 7 East, W.M., in King County, Washington, and Lots 5 and 6, Stillwater, according to the plat thereof recorded in Volume 19 of Plats, page 11, records of King County, Washington

Parcel B

The West 60 feet of the following described property

The Westerly 208 7 feet of the Southerly 208.7 feet of Government Lot 3, Section 4, Township 25 North, Range 7 East, W M , in King County, Washington

# Exhibit 4

**RECORD SECOND**

FILED for Record at Request of
Name _United Mortgage + Loan Investment LLC_
Address _P. O. Box 41827_
City _Charlotte NC 28247-1827_

## Assignment of Home Equity Line of Credit Deed of Trust

FOR VALUE RECEIVED, the undersigned assignor RESCOMM HOLDINGS NO. 2, LLC ("Assignor") having an address of 6701 Carmel Road, Ste 110, Charlotte, NC 28226 does hereby grant, bargain, sell, assign, transfer and convey to the following assignee, UM ACQUISITIONS, LLC ("Assignee") having an address of 6701 Carmel Road, Ste 110, Charlotte, NC 28226.

ALL of Assignor's right, title and interest in and to that certain Home Equity Line of Credit Deed of Trust, Note and any and all judgments related to the Note and Home Equity Line of Credit Deed of Trust described below, which Home Equity Line of Credit Deed of Trust encumbers the property more particularly described therein, together with (and solely to the extent such Home Equity Line of Credit Deed of Trust secures) the indebtedness evidenced by any promissory note or evidence of indebtedness which has been assigned and transferred to Assignee. This Assignment is made without recourse to Assignor and without representation or warranty by Assignor express or implied.

Place of Recording:        KING COUNTY, WASHINGTON
Borrowers Name:            RICHARD O. BUSE, A SINGLE MAN
Original Lender:           GREENPOINT MORTGAGE FUNDING, INC.
Mortgage Date:             JUNE 9, 2004
Recording Date:            JULY 29, 2004
Volume:
Page:
Doc #:                     20040729000563
Property Address:          31210 CARNATION DUVALL RD NORTHEAST, CARNATION, WA 98014
LEGAL DESCRIPTION:         SEE ATTACHED EXHIBIT "A"

Witnesses:

_Melanie Fitzgerald_
Melanie Fitzgerald

_Lavar Heath_
Lavar Heath

RESCOMM HOLDINGS NO. 2, LLC

BY: _Torlina Strong_
NAME: TORLINA STRONG
TITLE: ASSISTANT MANAGER

**200512300000533**
UN CAPITAL OPE ADT        14.00
PAGE001 OF 003
12/30/2005 09:38
KING COUNTY, WA

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

The undersigned, a notary public in and for the above-said County and State, does hereby acknowledge that on the day and year set forth below, personally appeared, Torlina Stroug, Assistant Manager for Rescomm Holdings No. 2, LLC, duly sworn by and personally known to the undersigned to be the person who executed the foregoing instrument on behalf of said principal, acknowledged to the undersigned that he voluntarily executed the same for the purposes therein stated as the free act and deed of said principal.

WITNESS my hand and official seal, this 30th day September, 2005.

_Saundra T Evans_
Notary Public for the State of North Carolina
SAUNDRA T. EVANS
My commission Expires: 4/13/2009

PREPARED BY & RETURN TO:
JESSICA PERCELL
RESCOMM HOLDINGS NO. 2, LLC
P. O. BOX 471827
CHARLOTTE, NC 28247-1827

Account #: 30569530
Name: BUSE, RICHARD O.

EXHIBIT A

Parcel A

Lot A, King County Lot Line Adjustment Number L96L0019, recorded under Recording No. 9607159010, being a portion of the Northwest quarter of Section 4, Township 25 North, Range 7 East, W.M., in King County, Washington; and Lots 5 and 6, Stillwater, according to the plat thereof recorded in Volume 19 of Plats, page 11, records of King County, Washington

*Parcel B*

The West 60 feet of the following described property

The Westerly 208.7 feet of the Southerly 208.7 feet of Government Lot 3, Section 4, Township 25 North, Range 7 East, W.M., in King County, Washington

# Exhibit 5

TOM BLOCK
P.O. BOX 1398
AGOURA HILLS, CA 91376

**200606190001646**
14.00
FIRST AMERICAN ADT
PAGE001 OF 003
06/19/2006 14:02
KING COUNTY, WA

## ASSIGNMENT HOME EQUITY LINE OF CREDIT DEED OF TRUST

FOR VALUE RECEIVED, the undersigned assignor UM CAPITAL, LLC, ("Assignor") does hereby grant, bargain, sell, assign, transfer and convey to the following assignee, TOM BLOCK ("Assignee") having an address of **P.O. Box 1398, Agoura Hills, CA 91376-1398.**
ALL of Assignor's right, title and interest in and to that certain Deed of Trust, Note and any and all judgments related to the Note and Deed of Trust described below, which Deed of Trust encumbers the property more particularly described therein, together with (and solely to the extend such Deed of Trust secures) the indebtedness evidenced by any promissory note or evidence of indebtedness which has been assigned and transferred to Assignee. This Assignment is made without recourse to Assignor and without representation or warranty by Assignor express or implied.

| | |
|---|---|
| Assignment Date: | May 24, 2006 |
| Place of Recording: | KING COUNTY, WASHINGTON |
| Borrowers Name: | RICHARD O. BUSE, A SINGLE MAN |
| Original Lender: | GREENPOINT MORTGAGE FUNDING, INC. |
| Mortgage Date: | JUNE 9, 2004 |
| Recording Date: | JULY 29, 2004 |
| Volume: | |
| Page #: | |
| Doc#: | 20040729000563 |
| Property Address: | 31210 CARNATION DUVALL ROAD NORTHEST, CARNATION, WA 98014 |

300979
IST AM ③/14

*Legal Description:* SEE ATTACHED EXHIBIT "A"

Assessor's Identification Number: 0425079022

Witnesses:

TRACI MITCHELL

JESSICA PERCELL

UM CAPITAL, LLC

BY: Torlina Strong
TITLE: Assistant Manager

STATE OF North Carolina
COUNTY OF Mecklenburg

The undersigned, Saundra T. Evans a notary public in and for the above-said County and State, does hereby acknowledge that on the day and year set forth below, personally appeared, Torlina Strong, Assistant Manager, for UM CAPITAL, LLC, duly sworn by and personally known to the undersigned to be the person who executed the foregoing instrument on behalf of said principal, acknowledged to the undersigned that he voluntarily executed the same for the purposes therein stated as the free act and deed of said principal.

WITNESS my hand and official seal, this 24TH DAY OF MAY, 2006

_Saundra T Evans_
Notary Public for the State of North Carolina
Saundra T. Evans
My commission Expires:  4-13-2009

SAUNDRA T EVANS
NOTARY PUBLIC
Mecklenburg County
North Carolina
My Commission Expires April 13, 2009

PREPARED BY & RETURN TO:

#30569530-BUSE, RICHARD O.

EXHIBIT "A"

The land referred to herein is in the State of Washington, County of King, Unincorporated Area , and is described as follows:

*Parcel A, Lot A, King County Lot Line Adjustment Number L96L0019, recorded under Recording No. 9607159010 being a portion of the Northwest quarter of Section 4 Township 25 North Range 7 East W.M., King County, Washington, and Lots 5 and 6 Stillwater according to the Plat thereof recorded in Volume 19 of Plats, Page 11 in King County, Washington. Parcel B the West 60 feet of the following described property the Westerly 208.7 feet of the Southerly 208.7 feet of Government Lot 3, Section 4, Township 25 North Range 7 East W.M. King County, Washington.*

Tax ID Number: 0425079022

# Exhibit 6

COVER SHEET

TO:  MR. RICHARD BUSE

FROM: TOM BLOCK
      POST OFFICE BOX 1398
      AGOURA HILLS, CA. 91376-1398
      818 597-0842
      FAX 818 865-2163

3 PAGES INCLUSIVE

## THE ENCLOSED MODIFICATION AGREEMENT EXPIRES 2 DAYS FROM THE DATE ON THE AGREEMENT AND MUST BE POSTMARKED OR DELIVERED WITH IN THAT TIME TO BE VALID.

NOTES: PLEASE SIGN AND HAVE NOTARIZED THE ENCLOSED MODIFICATION AGREEMENT, THEN FAX TO ME. PLEASE MAIL THE ORIGINAL TO THE ABOVE ADDRESS.

YOU WILL NOT BE SENT ANY BILLING STATEMENTS OR PAYMENT COUPON BOOKLETS.

ALL FUTURE PAYMENTS MUST BE MAILED TO:

TOM BLOCK
P.O. BOX 67603
LOS ANGELES, CA 90067

THANK YOU,

TOM BLOCK

Ex. 2 pg-50-

# MODIFICATION OF NOTE AGREEMENT

THIS AGREEMENT MADE AND ENTERED INTO THIS 30TH DAY OF MAY 2006, BY AND BETWEEN RICHARD O. BUSE (HEREINAFTER REFERRED TO AS THE "BORROWER/S" OR "TRUSTOR/S) AND TOM BLOCK (HEREINAFTER REFERRED TO AS "LENDER" OR "BENEFICIARY"), ITS SUCCESSORS AND ITS ASSIGNS.

### WITNESSETH:

WHEREAS, BORROWER/S EXECUTED THAT CERTAIN PROMISSORY NOTE AND TRUST DEED DATED JUNE 9, 2004, THE TRUST DEED RECORDED JULY 29, 2004, AS DOCUMENT NUMBER 20040729000563, MADE PAYABLE TO LENDER IN THE ORIGINAL PRINCIPAL AMOUNT OF $80,000.00 EVIDENCING SAID INDEBTEDNESS, AND SECURING THE FOLLOWING DESCRIBED PROPERTY:

9424 CARNATION DUVALL RD. NORTHEAST CARNATION, WA 98014

WHEREAS, THE PARTIES HERETO DESIRE, AND HEREBY AGREE, TO MODIFY THE TERMS AND CONDITIONS OF SAID NOTE.

NOW, THEREFORE, IN CONSIDERATION OF THE PREMISES AND COVENANTS HEREIN CONTAINED, THE PARTIES HERETO DO HEREBY AGREE AS FOLLOWS:

FIRST: THE PRINCIPLE BALANCE WILL BE ONE HUNDRED SIX THOUSAND SEVEN HUNDRED FIFTY FIVE DOLLARS AND TWELVE CENTS ($106,755.12).

SECOND: THAT THE INTEREST ON SAID UNPAID PRINCIPAL BALANCE WILL BE CHARGED AT A FIXED RATE OF 15% PER ANNUM FROM JUNE 1, 2006, UNTIL SUCH TIME AS ALL PRINCIPAL AND INTEREST IS PAID IN FULL.

THIRD: THAT ON THE FIRST DAY OF EACH MONTH COMMENCING ON AUG. 1, 2006, INTEREST ONLY SHALL BE PAYABLE IN INSTALLMENTS OF THIRTEEN HUNDRED THIRTY FOUR DOLLARS AND FORTY FOUR CENTS ($1,334.44). SAID INSTALLMENTS WILL BE PAYABLE UNTIL THE MATURITY DATE OF MAY 1, 2009.

_____
BORROWERS INITIALS

FOURTH: THAT THE MONTHLY INSTALLMENT WILL BE LATE IF NOT RECEIVED BY THE 10TH OF THE MONTH.

FIFTH: THAT THE LATE FEE WILL BE 10% OF THE MONTHLY PAYMENT.

SIXTH: IN THE EVENT (A) BORROWER(S) FAIL(S) TO PAY THE FINAL PAYMENT WHEN DUE, OR (B) BORROWER(S) DEFAULT(S) ON ANY INSTALLMENT DUE LENDER OR DUE ANY SENIOR LIENHOLDER, OR PROPERTY TAXES, OR HOA DUES, THEN THE INTEREST RATE ON THIS LOAN SHALL BE INCREASED BY SIX PERCENT(6%) PER ANNUM ABOVE THE RATE IN EFFECT AT THE TIME OF OCCURRENCE OF EITHER (A) OR (B) ABOVE. THE INCREASED INTEREST RATE SHALL APPLY TO (A) ABOVE UNTIL THE FINAL PAYMENT IS RECEIVED BY LENDER. THE INCREASED INTEREST RATE SHALL APPLY TO (B) UNTIL THE ACCOUNT IS BROUGHT CURRENT.

SEVENTH: THAT THE PRINCIPAL AND INTEREST WILL BECOME ALL DUE AND PAYABLE IN FULL ON MAY 1, 2009.

EIGHTH: THAT THERE IS NO PENALTY FOR PREPAYMENT OF THIS LOAN.

NINTH: THAT THE BORROWERS AGREE TO PAY SAID NOTE ACCORDING TO THE TERMS THEREOF, AS MODIFIED BY THIS AGREEMENT.

TENTH: ALL OTHER TERM'S IN ORIGINAL NOTE NOT MODIFIED BY THIS AGREEMENT, REMAIN IN FORCE.

ELEVENTH: BORROWERS HAVE CONSULTED WITH THEIR OWN LEGAL COUNCIL PRIOR TO EXECUTING THIS DOCUMENT.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED THIS AGREEMENT ON THE DATE HEREIN SET FORTH.

BENEFICIARY

---

TOM BLOCK                                    DATED

BORROWER(S)

---

RICHARD O. BUSE                              DATED

2

# Exhibit 7

Filed for Record at Request of
FORECLOSURELINK, INC.
5006 SUNRISE BLVD.
SUITE 200
FAIR OAKS, CA 95628

**20070109002064**
FIRST AMERICAN RST          12.00
PAGE001 OF 001
01/09/2007 15:13
KING COUNTY, WA

File No. fc15532-5   Loan No. Carnation Duvall   319563|   1ST AM   01/12

## APPOINTMENT OF SUCCESSOR TRUSTEE

NOTICE IS HEREBY GIVEN, that First American Title Insurance Company c/o
ForeclosureLink, Inc., whose address is 5006 Sunrise Blvd., Suite 200, Fair Oaks, CA
95628, is hereby appointed successor Trustee under that certain Deed of Trust dated
06/09/2004, executed by Richard Q. Buse, as Grantor and Placer Title Company, as
Trustee, and Mortgage Electronic Registration Systems Inc. solely as nominee for Lender,
as the Beneficiary or Successor in Interest, and Recorded on 07/29/2004 as Auditor No.
20040729000563, records of King County, Washington.

Dated: January 4, 2007

Tom Block

STATE OF California
COUNTY OF Los Angeles

On 1 4 07 before me, Vicente Gutierrez, a Notary Public
in and for said state, personally appeared Tom Block, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person
whose name is subscribed to the within instrument and acknowledged to me that he/she
executed the same in his/her authorized capacity, and that by his/her signature on the
instrument the person, or entity upon behalf of which the person acted, executed the
instrument.
WITNESS my hand and official seal.

Signature

VICENTE GUTIERREZ
Commission # 1459977
Notary Public - California
Los Angeles County
My Comm. Expires Jan 2, 2008

1

Ex. 2 pg-54-

# Exhibit 8

Foreclosurelink, Inc.
5006 Sunrise Blvd., Suite 200
Fair Oaks, CA 95628

**20070209001798**
FIRST AMERICAN NTS          34.00
PAGE001 OF 003
02/09/2007 14:44
KING COUNTY, WA

FILED FOR RECORD AT REQUEST OF:
First American Title Insurance Company
c/o ForeclosureLink, Inc.
5006 Sunrise Blvd, Ste 200
Fair Oaks, CA 95628

| Loan #: Carnation Duvall |
| Title #: 3195631 |
| TS #: fc15532-5 |

1ST AM (2)/24

## NOTICE OF TRUSTEE'S SALE
PURSUANT TO THE REVISED CODE OF WASHINGTON
CHAPTER 61.24 ET.SEQ.

I.

NOTICE IS HEREBY GIVEN that First American Title Insurance Company, Trustee will on 05/11/2007 at the hour of 10:00AM AT THE MAIN ENTRANCE TO THE ADMINISTRATION BUILDING, 500 4TH AVENUE, SEATTLE, WA, State of Washington, sell at public auction to the highest and best bidder, payable at the time of sale, the following described real property, situated in the County of King, State of Washington, to-wit:

Parcel A, Lot A, King County Lot Line Adjustment Number L96L0019, recorded under Recording No. 9607159010 being a portion of the Northwest quarter of Section 4 Township 25 North Range 7 East W M King County, Washington, and Lots 5 and 6 Stillwater according to the Plat thereof recorded in Volume 19 of Plats, Page 11 in King County, Washington. Parcel B, the West 60 feet of the following described property the Westerly 208.7 feet of the Southerly 208.7 feet of Government Lot 3, Section 4, Township 25 North Range 7 East W M King County, Washington.

Tax ID No. 042507-9022-05

Commonly known as: 9424 Carnation Duvall RD Northeast, Carnation, WA 98014

which is subject to that certain Deed of Trust Recorded on 07/29/2004 as Auditor No. 20040729000563, records of King County, Washington, from Richard O. Buse, as Grantor(s), to Placer Title Company, as Trustee, to secure an obligation in favor of Mortgage Electronic Registration Systems Inc. solely as nominee for Lender, as Beneficiary, the beneficial interest of which was assigned to Tom Block, under an Assignment recorded under Auditor's File No. 20060619001646.

II.

No action commenced by the Beneficiary of the Deed of Trust or the Beneficiary's successor is now pending to seek satisfaction of the obligation in any court by reason of the Grantor's default on the obligation secured by the Deed of Trust.

III.

The default(s) for which this foreclosure is made is/are as follows:

Monthly Payment: 5 monthly payments of $1,868.21 each; (October 1, 2006 through February 1, 2007): $9,341.05

Late Charges: Late Charges of $186.82 for each monthly payment not made within 15 days of its due date: $747.28

Account Deficit: $500.00

TOTAL MONTHLY PAYMENTS, LATE CHARGES AND ACCOUNT DEFICIT: $10,588.33

IV.

The sum owing on the obligation secured by the Deed of Trust is: Principal of $106,755.12, together with interest as provided in the note or other instrument secured from 09/01/06, and such other costs and fees as are due under the note or other instrument secured, and as are provided by statute.

V.

The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. The sale will be made without warranty, express or implied, regarding title, possession, or encumbrances on May 11, 2007. The default(s) referred to in paragraph III must be cured by April 30, 2007 (11 days before the sale date), to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time on or before April 30, 2007 (11 days before the sale date), the default(s) as set forth in paragraph III is/are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after April 30, 2007 (11 days before the sale date), and before the sale by the Grantor or the Grantor's successor in interest or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Grantor or the Grantor's successor in interest at the following address(es):

   9424 Carnatin Duvall Rd Northeast, Carnation, WA 98014
   32501 NE 50th St., #14, Carnation, WA 98014
   31210 Carnation Duvall Rd Northeast, Carnation, WA 98014

by both first class and certified mail on January 9, 2007, proof of which is in the possession of the Trustee; and the Grantor or the Grantor's successor in interest was personally served on January 9, 2007, with said written notice of default or the written notice of default was posted in a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.

The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor, of all their interest in the above-described property.

IX.

Anyone having any objections to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.

NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants and tenants. After the 20th day following the sale, the purchaser has the right to evict occupants and tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.

Dated:  02/08/07

First American Title Insurance Company, as Trustee
By:  ForeclosureLink, Inc., as Agent

Name: Lauren Meyer
Title: Senior Trustee Sale Officer


First American Title Insurance Company
c/o ForeclosureLink, Inc.
5006 Sunrise Blvd., Ste 200
Fair Oaks, CA  95628
(916) 962-3453


STATE OF CALIFORNIA                )
                                   ):ss.
COUNTY OF SACRAMENTO               )


On 02/08/07, before me, Misty Montgomery, personally appeared Lauren Meyer,
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person whose name is subscribed to the within instrument and acknowledged to me
that he/she executed the same in his/her authorized capacity, and that by his/her
signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

WITNESS my hand and official seal.


Signature _____

MISTY MONTGOMERY
Commission # 1691320
Notary Public - California
Sacramento County
My Comm. Expires Sep 13, 2009

# Exhibit 9

**20070426001527**
FIRST AMERICAN DTS          33.00
PAGE001 OF 002
04/26/2007 12:17
KING COUNTY, WA

AFTER RECORDING, RETURN TO:

FORECLOSURELINK, INC.
5006 SUNRISE BLVD.
SUITE 200
FAIR OAKS, CA  95628

Loan #:  Carnation Duvall
Title #:   3195631
TS #:      fc15532-5

3195631                          APN 42507-9022-05
1ST AM        2  # 33
NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE

Richard O. Buse is the grantor, and Placer Title Company is the trustee, and Mortgage
Electronic Registration Systems Inc. solely as nominee for Lender is the beneficiary
under that certain deed of trust dated 06/09/2004, and Recorded on 07/29/2004 as
Auditor No. 20040729000563, records of King, Washington.

Said deed of trust encumbers the following property:
Parcel A, Lot A, King County Lot Line Adjustment Number L96L0019, recorded under
Recording No. 9607159010 being a portion of the Northwest quarter of Section 4
Township 25 North Range 7 East W M King County, Washington, and Lots 5 and 6
Stillwater according to the Plat thereof recorded in Volume 19 of Plats, Page 11 in King
County, Washington. Parcel B, the West 60 feet of the following described property the
Westerly 208.7 feet of the Southerly 208.7 feet of Government Lot 3, Section 4,
Township 25 North Range 7 East W M King County, Washington.

The undersigned trustee hereby discontinues the trustee's sale set by the Notice of
Trustee's Sale Recorded on 02/09/2007, as Instrument # 20070209001798, records of
King, Washington.

This discontinuance shall not be construed as waiving any breach or default under the
aforementioned deed of trust or as impairing any right or remedy thereunder, or as
modifying or altering in any respect any of the terms, covenants, conditions or
obligations thereof, but is and shall be deemed to be only an election, without prejudice,
not to cause the sale to be made pursuant to the aforementioned Notice of Trustee's
Sale.

Dated: April 24, 2007

First American Title Insurance Company, Trustee
By: ForeclosureLink, Inc., Agent

Name: Lauren Meyer
Title: Senior Trustee Sale Officer

STATE OF CALIFORNIA )
) ss.
COUNTY OF SACRAMENTO )

On April 24, 2007, before me, Misty Montgomery, a Notary Public in and for said state, personally appeared Lauren Meyer, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature

MISTY MONTGOMERY
Commission # 1601320
Notary Public - California
Sacramento County
My Comm. Expires Sep 13, 2009

# Exhibit 10

Foreclosurelink, Inc.
5006 Sunrise Blvd., Suite 200
Fair Oaks, CA 95628

**20071204001361**
FIRST AMERICAN NTS      43.00
PAGE001 OF 004
12/04/2007 14:02
KING COUNTY, WA

FILED FOR RECORD AT REQUEST OF:
FIRST AMERICAN TITLE INSURANCE
COMPANY
c/o ForeclosureLink, Inc.
5006 Sunrise Blvd, Ste 200
Fair Oaks, CA 95628

| Loan #:  carnation duvall |
| Title #:  3496874 |
| TS #:    fc17644-5 |

1ST AM   ③/42

## NOTICE OF TRUSTEE'S SALE
PURSUANT TO THE REVISED CODE OF WASHINGTON
CHAPTER 61.24 ET.SEQ.

I.

NOTICE IS HEREBY GIVEN that FIRST AMERICAN TITLE INSURANCE COMPANY, Trustee will on 03/07/2008 at the hour of 10:00AM AT THE MAIN ENTRANCE TO THE ADMINISTRATION BUILDING, 500 4TH AVENUE, SEATTLE, WA, State of Washington, sell at public auction to the highest and best bidder, payable at the time of sale, the following described real property, situated in the County of King, State of Washington, to-wit:

PARCEL A, LOT 1, LOTS 5 & 6 STILLWATER VOL. 19, PLAT 11
SEE ATTACHED FOR COMPLETE LEGAL DESCRIPTION

Tax ID No. 042507-9022-05

Commonly known as: 9424 CARNATION DUVALL ROAD NE, CARNATION, WA 98014

which is subject to that certain Deed of Trust Recorded on 07/29/2004 AS AUDITOR NO. 20040729000563, records of King County, Washington, from RICHARD O. BUSE, as Grantor(s), to PLACER TITLE COMPANY, as Trustee, to secure an obligation in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., SOLELY AS NOMINEE FOR LENDER, as Beneficiary; the beneficial interest of which was assigned to TOM BLOCK, under an Assignment recorded under Auditor's File No. 20060619001646.

II.

No action commenced by the Beneficiary of the Deed of Trust or the Beneficiary's successor is now pending to seek satisfaction of the obligation in any court by reason of the Grantor's default on the obligation secured by the Deed of Trust.

III.

The default(s) for which this foreclosure is made is/are as follows:

Monthly Payment: 7 monthly payments of $1,868.21 each; (June 1, 2007 through December 1, 2007). $13,077.47

Late Charges. Late Charges for each monthly payment not made within 15 days of its due date: $1,120.92

Account Deficit: $10,578.36

TOTAL MONTHLY PAYMENTS, LATE CHARGES AND ACCOUNT DEFICIT: $25,150.39

IV.

The sum owing on the obligation secured by the Deed of Trust is:  Principal of $106,755.12, together with interest as provided in the note or other instrument secured from 05/01/07, and such other costs and fees as are due under the note or other instrument secured, and as are provided by statute.

V.

The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute.  The sale will be made without warranty, express or implied, regarding title, possession, or encumbrances on March 7, 2008.  The default(s) referred to in paragraph III must be cured by February 24, 2008 (11 days before the sale date), to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time on or before February 24, 2008 (11 days before the sale date), the default(s) as set forth in paragraph III is/are cured and the Trustee's fees and costs are paid.  The sale may be terminated any time after February 24, 2008 (11 days before the sale date), and before the sale by the Grantor or the Grantor's successor in interest or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Grantor or the Grantor's successor in interest at the following address(es):

    31210 Carnation Duvall Rd Northeast, Carnation, WA 98014
    9424 Carnation Duvall Road NE, Carnation, WA 98014
    32501 NE 50th St. #14, Carnation, WA 98014

by both first class and certified mail on October 31, 2007, proof of which is in the possession of the Trustee; and the Grantor or the Grantor's successor in interest was personally served on October 31, 2007, with said written notice of default or the written notice of default was posted in a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.

The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor, of all their interest in the above-described property.

IX.

Anyone having any objections to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130.  Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.

NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants and tenants. After the 20th day following the sale, the purchaser has the right to evict occupants and tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Dated:   11/30/07

FIRST AMERICAN TITLE INSURANCE COMPANY, as Trustee
By  ForeclosureLink, Inc., as Agent

Name: Lauren Meyer
Title: Senior Trustee Sale Officer

FIRST AMERICAN TITLE INSURANCE COMPANY
c/o ForeclosureLink, Inc.
5006 Sunrise Blvd., Ste 200
Fair Oaks, CA  95628
(916) 962-3453

STATE OF CALIFORNIA            )
                               ) ss.
COUNTY OF SACRAMENTO           )

On  11/30/07, before me, Misty Montgomery, personally appeared Lauren Meyer,
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person whose name is subscribed to the within instrument and acknowledged to me
that he/she executed the same in his/her authorized capacity, and that by his/her
signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

WITNESS my hand and official seal.

Signature

MISTY MONTGOMERY
Commission # 1601320
Notary Public - California
Sacramento County
My Comm. Expires Sep 13, 2009

REFERENCE NO: FC17644-5

# EXHIBIT "A"

THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE STATE OF WASHINGTON, UNINCORPORATED AREA, COUNTY OF KING AND IS DESCRIBED AS FOLLOWS:

PARCEL A, LOT A, KING COUNTY LOT LINE ADJUSTMENT NUMBER L96L0019, RECORDED UNDER RECORDING NO 9607159010 BEING A PORTION OF THE NORTHWEST QUARTER OF SECTION 4 TOWNSHIP 25 NORTH RANGE 7 EAST W M KING COUNTY, WASHINGTON, AND LOTS 5 AND 6 STILLWATER ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 19 OF PLATS, PAGE 11 IN KING COUNTY, WASHINGTON PARCEL B THE WEST 60 FEET OF THE FOLLOWING DESCRIBED PROPERTY THE WESTERLY 208 7 FEET OF THE SOUTHERLY 208 7 FEET OF GOVERNMENT LOT 3, SECTION 4, TOWNSHIP 25 NORTH RANGE 7 EAST W M KING COUNTY, WASHINGTON.

# Exhibit 11



Home Page | Contact Us | Location | Privacy Policy | Site Map

Newsroom | About Us | Events | Why MERS? | Knowledge Base | Careers

**Tools & Services**

Downloads

Member Directory

Foreclosures

Enhancements

Forum

Advertising

Payment Options

**MERS for
Homeowners**

📞 **Contact Us**

**Join Now
Become a Member**

*MERS* Products ›

Home » About Us > Overview

## About MERS

**MERS was created by the mortgage banking industry to streamline the mortgage
process by using electronic commerce to eliminate paper. Our mission is to register
every mortgage loan in the United States on the MERS® System.**

Beneficiaries of MERS include mortgage originators, servicers, warehouse lenders, wholesale
lenders, retail lenders, document custodians, settlement agents, title companies, insurers,
investors, county recorders and consumers.

MERS acts as nominee in the county land records for the lender and servicer. Any loan registered
on the MERS® System is inoculated against future assignments because MERS remains the
nominal mortgagee no matter how many times servicing is traded. MERS as original mortgagee
(MOM) is approved by Fannie Mae, Freddie Mac, Ginnie Mae, FHA and VA, California and Utah
Housing Finance Agencies, as well as all of the major Wall Street rating agencies.

TOP

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright© 2008 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.

MERS   Why MERS? - Overview                                                    Page 1 of 2



Home Page | Contact Us | Location | Privacy Policy | Site Map

Newsroom  |  About Us  |  Events  |  Why MERS?  |  Knowledge Base  |  Careers

**Tools & Services**

Downloads

Member Directory

Foreclosures

Enhancements

Forum

Advertising

Payment Options

**MERS for Homeowners**

☎ **Contact Us**

┌─────────────────┐
│  **Join Now**   │
│ **Become a Member** │
└─────────────────┘

*MERS* Products ›

Home » Why MERS? > Overview

## Why MERS?

### The Value of Registering Loans with MOM

#### ELIMINATE THE NEED TO PREPARE AND RECORD ASSIGNMENTS – FOREVER

DUAL ASSIGNMENT TRANSACTION (correspondent registers loan)

3RD PARTY LOAN ORIGINATOR                                     with MERS 50

CORRESPONDENT LENDER                                          with MERS 50

INVESTOR                           MERS Registration Fee  $ $6.95

YOU SAVE $55.05 PER LOAN

SINGLE ASSIGNMENT TRANSACTION (correspondent registers loan)

CORRESPONDENT LENDER                                         with MERS 50

INVESTOR                           MERS Registration Fee  $ $4.95

YOU SAVE $25.05 PER LOAN

#### MOM Loans Are the Best Execution

The Chain of Title is simplified because it begins and ends with MERS. Never suffer lost or misrecorded intervening assignments again.

The MERS® System reports the status of all loans-beneficial interests, servicing & sub-servicing arrangements. The Lien Release process simplified.

And dramatic cost savings, including:

- Assignments eliminated forever ($22 saved per loan)
- No correction costs (up to $30 saved per document)
- No tracking costs
- No correspondent or broker document penalties
- One Deed of Trust or Mortgage form for all transactions

TOP

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright© 2008 by MERSCORP, Inc  1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.



Home Page | Contact Us  | Location | Privacy Policy | Site Map

Newsroom  :  About Us  |  Events  |  Why MERS?  |  Knowledge Base  '  Careers

**Tools & Services**

Downloads

Member Directory

Foreclosures

Enhancements

Forum

Advertising

Payment Options

MERS for Homeowners

📞 Contact Us

**Join Now!**
**Become a Member!**

*MERS* Products ▸

Home » Why MERS? > MOM

# MERS as Original Mortgagee (MOM) means:

- Millions in savings for mortgage lenders!
- Eliminating the cost and aggravation of mortgage assignments forever!

**MOM Makes It Work**

**April 26, 1999**

The following revised MOM language must be used on the revised security instrument. After July 2000, only the revised security instrument may be used. Please see Fannie/Freddie Bulletins for further details.

> ** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

** Note: This is representative language only. Consult official Fannie Mae and Freddie Mac Announcements for specific language for your state. Other changes also may be required in the body of the Deed of Trust or Mortgage.

**Two Ways To Save**

**MERS AS NOMINEE (MOM)**

To eliminate the need for all assignments and to realize the greatest savings, lenders should close loans using standard security instruments containing language approved by Fannie Mae and Freddie Mac which name MERS as Original Mortgagee (MOM). Sample documents are available from MERS as well as many document vendors.

**MERS AS ASSIGNEE**

Lenders may also assign loans into MERS if the loan has already been closed in the lender's name. Once the loan is assigned to MERS using the same paper assignment process as you use now, tracking servicing and beneficial rights can occur electronically for all future transfers. The need for any additional assignments after this point will be eliminated unless the servicing rights are sold to a non-MERS member.

Click for Sample Assignment to MERS

**Whenever possible, all loans should be closed utilizing security instruments naming MERS as Mortgagee and Nominee for the lender to realize the maximum cost savings.** If any wholesaler or investor should require that the loan be delivered in a name other than MERS, the Certifying Officer on your staff would simply prepare a paper assignment from MERS to them. In this manner, the overwhelming majority of your production should not require assignments.

TO

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright© 2008 by MERSCORP, Inc  1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.

 

❌ Close Window

MERS Recommended Foreclosure Procedures for

# WASHINGTON

*Version 1.1, 11 November 1999*

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are used and are foreclosed non-judicially by conferring a power of sale on the trustee in the event of default by the borrower. MERS local counsel advises that a loan can be foreclosed in the name of MERS.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the substitution of trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

The only change to the foreclosure procedure is to name Mortgage Electronic Registration Systems, Inc. as the foreclosing entity. The Notice of Default and Notice of Trustee's Sale is still required to be sent and published and all requirements related to these Notices must be followed. At the trustee's sale, a bid will be entered on behalf of MERS. The bid is entered the same way it is entered for the servicer when foreclosing in the servicer's name. If the bid is the highest bid, then the trustee's deed can be issued directly to the investor. This is the same procedure that is followed when commencing a foreclosure in the name of the servicer. The Trustee's deed will identify the investor as the grantee under the trustee's deed and will recite that MERS, as nominee, successfully bid for the property at the trustee's sale. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional recording

or transfer taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

**This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)**

Recording Requested By:
*[Company Name]*
**And When Recorded Mail To:**
*[Company Name]*
*[Name of Natural Person]*
*[Street Address]*
*[City, State  Zip Code]*

*[Space Above This Line For Recording data]*

> The MERS 18-digit MIN must be visible on the Security Instrument.  Place the MIN to the right of the form title, but not within the top recording margin or on the right margin.

# DEED OF TRUST   MIN: 1000XXX-XXXXXXXXXX-X

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**    "Security Instrument" means this document, which is dated  **December 29, 2000**
together with all Riders to this document.

**(B)**    "Borrower" is  **John and Mary Borrower**

. Borrower is the trustor under this Security Instrument.

**(C)**    "Lender" is  **XYZ Mortgage Company**
Lender is a  **Corporation**                                          organized and existing under the laws of
**The State of XXXXXX**    .  Lender's address is  **12345 Lender's Street Address,  Lender's City, ST, ZIP**

> MERS as the Original Mortgage/Beneficiary language.  See page 3 of this document to note further reference to MERS as Mortgagee/Beneficiary.

**(D)**    "Trustee" is  **ABC Trustee**

**(E)**    "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.

**(F)**    "Note" means the promissory note signed by Borrower and dated **December 29, 2000**
The Note states that Borrower owes Lender
                        **One Hundred Fifty Thousand  Dollars (U.S. $150,000.00 )**
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than

**(G)**    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)**    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

Initials:

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

(I)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider               ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider         ☐ Revocable Trust Rider
☐ Other(s) [specify]

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "Escrow Items" means those items that are described in Section 3.

(N)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

Initials: _____

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

of

*[Type of Recording Jurisdiction]*      *[Name of Recording Jurisdiction]*

> MERS noted as beneficiary in the
> transfer/due on sale clause.

Assessor's Identification Number:

which currently has the address of

                                                                    *[Street]*
                        , California                                                ("Property Address"):

*[City]*                              *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                        Page 3 of 14                            14301CA  08/00
www.compliancesource.com                                                           © 2000, The Compliance Source, Inc.

Ex. 2 pg-77-

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on

Initials: _____

Ex. 2 pg-79-

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not

Initials: _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                    Page 6 of 14
www.compliancesource.com

MERS Modified Form 3005 01/01
1430ICA  00/00
© 2000, The Compliance Source, Inc

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain

Initials: _____

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: _____

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

Initials:

Ex. 2 pg-83-

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing

Initials:

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 10 of 14

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc

Ex. 2 pg-84-

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Initials: _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 11 of 14

MERS Modified Form 3005 01/01
1430ICA 08/00
© 2000, The Compliance Source, Inc

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                                                    Page 13 of 14
www.compliancesource.com

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

Ex. 2 pg-87-

This is an Example of a Deed of Trust naming MERS as the Original Mortgagee (MOM Document)

     BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                                                                   -Borrower

Printed Name: _____
                          *[Please Complete]*

_____     _____ (Seal)
                                                                                    -Borrower

Printed Name: _____
                          *[Please Complete]*

                                                _____ (Seal)
                                                                                  -Borrower

                                                _____ (Seal)
                                                                                  -Borrower

———————————————————————— *[Acknowledgment on Following Page]* ————————————————

State of                                §
                                       §
County of                          §

On _____, _____ , before me, _____
*[name and title of officer]* personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                           Signature_____ (Seal)

### REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:

     The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____, page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

                                         Date:_____

_____
                    (Trustee)

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                        Page 14 of 14                          14301CA 08/00
www.compliancesource.com                                              © 2000, The Compliance Source, Inc.



**MERS**

**Tips and Hints**

Helpful pointers in operating the MERS® Sy...

Issue 3 February 2008

MERS Corporate Website

MERS® ServicerID

About MERS

Difficulty reading this email? Click here to download a PDF version.

**Save the Date!**

Mark your calendars! The MERS 2008 User Conference will be held on June 23-24, 2008 at the Hyatt Regency Hotel in Reston, Virginia. Online registration will begin on April 1, 2008. Please click for more information

Join Our Mailing List!

## Need Help With Transfers?

Completing the transactions necessary to reflect transfers of servicing rights on the MERS® System can be confusing. The Transfer of Servicing Rights Quick Reference Guide (QRG) can help you understand the necessary transactions, and the Transfer Confirmation QRG can help you make sure they process correctly.  The Reports QRG shows you how to order the Portfolio Analysis Report to reconcile the MERS loans on your servicing system with those showing your organization as servicer on the MERS® System. And Training Bulletin 2008-01 can help you respond if you receive the Lite Member Aged MIN Servicing Report and notification because your transfers failed to go through.

## Has Your Company's Information Changed?

With all the name changes, mergers and acquisitions happening in the industry, be sure to include MERS in your transition plan. It is YOUR responsibility to notify MERS if your organization merges with, or is acquired by another company. You must also ensure that when your company information changes, it is updated on the MERS® System and with the MERS member records. Use the Company Information Change Request form to notify MERS. For help updating your company information in MERS® OnLine, see the Member Information Quick Reference Guide.

We hope you found this issue of MERS Tips & Hints useful.  For questions or clarification on any of the above items, please send us an email here   Thank you for doing business with MERS.

**Sincerely,**

Editors
MERS Tips & Hints

1

2

3

4

5

6

7        SUPERIOR COURT OF THE STATE OF WASHINGTON
                IN AND FOR THE COUNTY OF KING

8

9    RICHARD O. BUSE,                        )    Case No. 08-2-08093-5 SEA
                                             )
                         Plaintiff,          )
10                                           )    SUMMONS
     vs.                                     )
11                                           )
     FIRST AMERICAN TITLE INSURANCE          )
12   COMPANY; FORECLOSURELINK, INC.;         )
     GREENPOINT MORTGAGE FUNDING,            )
13   INC.; MORTGAGE ELECTRONIC               )
     REGISTRATION SYSTEMS, INC.;             )
14   RESCOMM HOLDINGS NO. 2, LLC; UM         )
     ACQUISITIONS, LLC; TOM BLOCK; and       )
15   Doe Defendants 1 through 20,            )
                                             )
16                       Defendants.         )

17   _____

     THE  STATE  OF  WASHINGTON,      TO:    FIRST  AMERICAN  TITLE  INSURANCE
18   COMPANY; FORECLOSURELINK, INC.; GREENPOINT MORTGAGE FUNDING, INC.;
     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; RESCOMM HOLDINGS
19   NO. 2, LLC; UM ACQUISITIONS, LLC; TOM BLOCK; and Doe Defendants 1 through 20,

20        TO THE DEFENDANTS: A lawsuit has been started against you in the above-entitled

21   court by Plaintiff RICHARD O. BUSE.  Plaintiff's claim is stated in the written Complaint, a

22   copy of which is served upon you with this Summons.

23        In order to defend against this lawsuit, you must respond to the Complaint by stating

24   your defense in writing, and by serving a copy upon the person signing this summons within 20

25   days after the service of this summons, excluding the day of service, or a default judgment may

26   be entered against you without notice.  A default judgment is one where plaintiff is entitled to

27                                              LAW OFFICES OF
                                        MELISSA A. HUELSMAN, P.S.
     SUMMONS - 1                          705 SECOND AVENUE, SUITE 501
                                            SEATTLE, WASHINGTON 98104
                                           TELEPHONE: (206) 447-0103
                                           FACSIMILE: (206) 447-0115



FILED

08 MAR -5 PM 4: 32

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
# IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RICHARD BUSE | NO.  08-2-08093-5   SEA |
| | Order Setting Civil Case Schedule (*ORSCS) |
| vs                                 Plaintiff(s) | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, ET AL | ASSIGNED JUDGE   Washington          42 |
| | FILE DATE:                        03/05/2008 |
| Defendant(s) | TRIAL DATE:                    08/17/2009 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule** (*Schedule*) on the Defendant(s) along with the *Summons and Complaint/Petition*. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the *Summons and Complaint/Petition* or (2) service of the Defendant's first response to the *Complaint/Petition*, whether that response is a *Notice of Appearance*, a response, or a Civil Rule 12 (CR 12) motion. The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

| | |
|---|---|
| Print Name | Sign Name |

Order Setting Civil Case Schedule (*ORSCS)                                     REV. 8/07        1

Ex. 2 pg-91-

## I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**

All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLR 26*], and for meeting the discovery cutoff date [*See KCLR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**

A filing fee of **$200** must be paid when any answer that includes additional claims is filed in an existing case.

**SHOW CAUSE HEARINGS FOR <u>CIVIL</u> CASES** [King County Local Rule 4(g)]

A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. A review of the case will be undertaken to confirm service of the original complaint. A *Show Cause Hearing* will be set before the Chief Civil or RJC judge if needed. The Order to Show Cause will be mailed to the plaintiff(s) or counsel to attend.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**

When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**

*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**

A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $220 arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**

All parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Rule 41.

**King County Local Rules are available for viewing at www.metrokc.gov/kcscc.**

Order Setting Civil Case Schedule (*ORSCS)        REV: 8/07        2

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Wed 03/05/2008 | * |
| Confirmation of Service [See KCLR 4.1]. | Wed 04/02/2008 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR 2.1(a) and Notices on Page 2]. **$220 arbitration fee must be paid** | Wed 08/13/2008 | * |
| **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration. [See KCLR 4.2(a) and Notices on Page 2]. **Show Cause hearing will be set if Confirmation is not filed or Box 2 is checked.** | Wed 08/13/2008 | * |
| **DEADLINE** for Hearing Motions to Change Case Assignment Area. [See KCLR 82(e)] | Wed 08/27/2008 | |
| **DEADLINE** for Disclosure of Possible Primary Witnesses [See KCLR 26(b)]. | Mon 03/16/2009 | |
| **DEADLINE** for Disclosure of Possible Additional Witnesses [See KCLR 26(b)]. | Mon 04/27/2009 | |
| **DEADLINE** for Jury Demand [See KCLR 38(b)(2)]. | Mon 05/11/2009 | * |
| **DEADLINE** for Setting Motion for a Change in Trial Date [See KCLR 40(e)(2)]. | Mon 05/11/2009 | * |
| **DEADLINE** for Discovery Cutoff [See KCLR 37(g)]. | Mon 06/29/2009 | |
| **DEADLINE** for Engaging in Alternative Dispute Resolution [See KCLR 16(c)]. | Mon 07/20/2009 | |
| **DEADLINE** for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLR 16(a)(4)]. | Mon 07/27/2009 | |
| **DEADLINE** to file Joint Confirmation of Trial Readiness [See KCLR 16(a)(2)]. | Mon 07/27/2009 | * |
| **DEADLINE** for Hearing Dispositive Pretrial Motions [See KCLR 56; CR 56]. | Mon 08/03/2009 | |
| Joint Statement of Evidence [See KCLR 16(a)(5)]. | Mon 08/10/2009 | * |
| Trial Date [See KCLR 40]. | Mon 08/17/2009 | |

### III. ORDER

Pursuant to King County Local Rule 4 [KCLR 4], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this Order Setting Civil Case Schedule and attachment on all other parties.

DATED:   03/05/2008

PRESIDING JUDGE

Order Setting Civil Case Schedule (*ORSCS)

REV. 8/07    3

Ex. 2 pg-93-

IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

READ THIS ORDER PRIOR TO CONTACTING YOUR ASSIGNED JUDGE

**This case is assigned to the Superior Court Judge whose name appears in the caption of this** *Schedule.* **The assigned Superior Court Judge will preside over and manage this case for all pre-trial matters.**

COMPLEX LITIGATION: If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**The following procedures hereafter apply to the processing of this case:**

APPLICABLE RULES:

a. Except as specifically modified below, all the provisions of King County Local Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.

CASE SCHEDULE AND REQUIREMENTS:

A. Show Cause Hearing: A Show Cause Hearing will be held before the Chief Civil/Chief RJC judge if the case does not have confirmation of service on all parties, answers to all claims, crossclaims, or counterclaims as well as the confirmation of joinder or statement of arbitrability filed before the deadline in the attached case schedule. All parties will receive an *Order to Show Cause* that will set a specific date and time for the hearing. Parties and/or counsel who are required to attend will be named in the order.

B. Pretrial Order: An order directing completion of a Joint Confirmation of Trial Readiness Report will be mailed to all parties approximately six (6) weeks before trial. **This order will contain deadline dates for the pretrial events listed in King County Local Rule 16:**

1) Settlement/Mediation/ADR Requirement;

2) Exchange of Exhibit Lists;

3) Date for Exhibits to be available for review;

4) Deadline for disclosure of witnesses;

5) Deadline for filing Joint Statement of Evidence;

6) Trial submissions, such as briefs, Joint Statement of Evidence, jury instructions;

7) voir dire questions, etc;

8) Use of depositions at trial;

9) Deadlines for nondispositive motions;

10) Deadline to submit exhibits and procedures to be followed with respect to exhibits;

11) Witnesses -- identity, number, testimony;

C. Joint Confirmation regarding Trial Readiness Report: No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment), etc. If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff/petitioner's counsel is responsible for contacting the other parties regarding said report.

D. Settlement/Mediation/ADR:

**1) Forty five (45) days before the Trial Date,** counsel for plaintiff shall submit a written settlement demand. Ten (10) days after receiving plaintiff's written demand, counsel for defendant shall respond (with a counteroffer, if appropriate).

**2) Twenty eight (28) days before the Trial Date,** a settlement/mediation/ADR conference shall have been held. **FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.**

E. Trial: Trial is scheduled for 9:00 a.m. on the date on the *Schedule or as soon thereafter as convened by the court.* The Friday before trial, the parties should access the King County Superior Court website at www.metrokc.gov/kcsc to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

MOTIONS PROCEDURES:

A. Noting of Motions

**Dispositive Motions:** All Summary Judgment or other motions that dispose of the case in whole or in part will be heard with oral argument before the assigned judge. The moving party must arrange with the courts a date and time for the hearing, consistent with the court rules.

King County Local Rule 7 and King County Local Rule 56 govern procedures for all summary judgment or other motions that dispose of the case in whole or in part. The local rules can be found at www.metrokc.gov/kcscc.

**Nondispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the *Note for Motion* should state "Without Oral Argument." King County Local Rule 7 governs these motions, which include discovery motions. The local rules can be found at www.metrokc.gov/kcscc.

Motions in Family Law Cases not involving children: Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions Calendar. King County Local Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at www.metrokc.gov/kcscc.

Emergency Motions: Emergency motions will be allowed only upon entry of an *Order Shortening Time*. However, emergency discovery disputes may be addressed by telephone call, and without written motion, if the judge approves.

Filing of Documents All original documents must be filed with the Clerk's Office. *The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.* The assigned judge's working copy must be delivered to his/her courtroom or to the judges' mailroom. Do not file working copies with the Motions Coordinator, except those motions to be heard on the Family Law Motions Calendar, in which case the working copies should be filed with the Family Law Motions Coordinator.

Original Proposed Order: Each of the parties must include in the working copy materials submitted on any motion an original proposed order sustaining his/her side of the argument. Should any party desire a copy of the order as signed and filed by the judge, a preaddressed, stamped envelope shall accompany the proposed order.

Presentation of Orders: All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department. Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. If final orders and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.

C. Form: Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PETITIONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.

**PRESIDING JUDGE**

FILED

08 MAR -5 PM 4: 32

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

KING COUNTY SUPERIOR COURT
BARBARA MINER
DIRECTOR & SUPERIOR CT CLERK
SEATTLE WA

08-2-08093-5

| Rcpt. Date | Acct. Date | Time |
|------------|------------|------|
| 03/05/2008 | 03/05/2008 | 04:31 PM |

Receipt/Item #    Tran-Code    Docket-Co
2008-02-05339/01    1100    $FFR
Cashier: RCF

Paid By: MELSMAN, MELISSA
Transaction Amount:    $200.0

### KING COUNTY SUPERIOR COURT
### CASE ASSIGNMENT DESIGNATION
### and
### CASE INFORMATION COVER SHEET
### (cics)

In accordance with LR82(e), a faulty document fee of $15 will be assessed to new case filings missing this sheet pursuant to King County Code 4.71.100.

CASE NUMBER: **0 8 - 2 - 0 8 0 9 3 - 5** SEA

CASE CAPTION: _ RICHARD O. BUSE,

Plaintiff,

vs.

FIRST AMERICAN TITLE INSURANCE COMPANY; FORECLOSURELINK, INC.;
GREENPOINT MORTGAGE FUNDING, INC.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; RESCOMM HOLDINGS NO. 2, LLC; UM
ACQUISITIONS, LLC; TOM BLOCK; and Doe Defendants 1 through 20,

Defendants.

I certify that this case meets the case assignment criteria, described in King County LR 82(e), for the:

___X___ **Seattle Area**, defined as:

All of King County north of Interstate 90 and including all of the Interstate 90
right-of-way; all the cities of Seattle, Mercer Island, Bellevue, Issaquah and
North Bend; and all of Vashon and Maury Islands.

_____ **Kent Area**, defined as:

All of King County south of Interstate 90 except those areas included in the
Seattle Case Assignment Area.

Signature of Petitioner/Plaintiff                          Date

or

Signature of Attorney for
Petitioner/Plaintiff

___03/05/08____
Date

L: forms/cashiers/cics
Rev 01/08

Ex. 2 pg-96-

1

__30935_____
WSBA Number

# KING COUNTY SUPERIOR COURT
## CASE ASSIGNMENT DESIGNATION
### and
### CASE INFORMATION COVER SHEET

Please check one category that best describes this case for indexing purposes. Accurate case indexing not only saves time but helps in forecasting judicial resources. A faulty document fee of $15 will be assessed to new case filings missing this sheet pursuant to Administrative Rule 2 and King County Code 4.71.100.

**APPEAL/REVIEW**
- Administrative Law Review (ALR 2)*
- DOL Implied Consent—Test Refusal –only RCW 46.20.308 (DOL 2)*

**CONTRACT/COMMERCIAL**
- Breach of Contract (COM 2)*
- Commercial Contract (COM 2)*
- Commercial Non-Contract (COL 2)*
- Meretricious Relationship With No Children (MER 2)* and Not Pregnant
- Third Party Collection (COL 2)*

**DOMESTIC RELATIONS**
- Annulment/Invalidity (INV3)* with dependent children? Y / N; wife pregnant? Y / N
- Nonparental Custody (CUS 3)*
- Dissolution With Children  (DIC 3)*
- Dissolution With No Children (DIN 3)* wife pregnant? Y / N
- Enforcement/Show Cause- Out of County (MSC 3)
- Establish Residential Sched/Parenting Plan(PPS 3)* ££
- Establish Supprt Only (PPS 3)* ££
- Legal Separation (SEP 3)* with dependent children? Y / N; wife pregnant? Y / N
- Mandatory Wage Assignment (MWA 3)
- Modification (MOD 3)*
- Modification - Support Only (MDS 3)*
- Out-of-state Custody Order Registration (FJU 3)
- Out-of-State Support Court Order Registration (FJU 3)
- Reciprocal, Respondent Out of County (ROC 3)
- Reciprocal, Respondent in County (RIC 3)
- Relocation Objection/Modification (MOD 3)*

**ADOPTION/PATERNITY**
- Adoption (ADP 5)
- Challenge to Acknowledgment of Paternity (PAT 5)*
- Challenge to Denial of Paternity (PAT 5)*
- Confidential Intermediary (MSC 5)
- Establish Parenting Plan-Existing King County Paternity (MSC 5)*
- Initial Pre-Placement Report (PPR 5)
- Modification (MOD 5)*
- Modification-Support Only (MDS 5)*
- Paternity, Establish/Disestablish  (PAT 5)*
- Paternity/UIFSA (PUR 5)*
- Out-of-State Custody Order Registration  (FJU 5)
- Out-of-State Support Order Registration (FJU5)
- Relinquishment (REL 5)
- Relocation Objection/Modification (MOD 5)*
- Rescission of Acknowledgment of Paternity (PAT 5)*
- Rescission of Denial of Paternity (PAT 5)*
- Termination of Parent-Child Relationship (TER 5)

**DOMESTIC VIOLENCE/ANTIHARASSMENT**
- Civil Harassment (HAR 2)
- Confidential Name Change (CHN 5)
- Domestic Violence (DVP 2)
- Domestic Violence with Children (DVC 2)
- Foreign Protection Order (FPO 2)
- Sexual Assault Protection Order (SXP 2)
- Vulnerable Adult Protection (VAP 2)

**££** Paternity Affidavit or Existing/Paternity is not an issue and NO other case exists in King County* The filing party will be given an appropriate case schedule.          ** Case schedule will be issued after hearing and findings.

**KING COUNTY SUPERIOR COURT**
**CASE ASSIGNMENT DESIGNATION**
and
**CASE INFORMATION COVER SHEET**

Please check one category that best describes this case for indexing purposes. Accurate case indexing not only saves time but helps in forecasting judicial resources. A faulty document fee of $15 will be assessed to new case filings missing this sheet pursuant to Administrative Rule 2 and King County Code 4.71.100.

**PROPERTY RIGHTS**
- [ ] Condemnation/Eminent Domain (CON 2)*
- [ ] Foreclosure (FOR 2)*
- [ ] Land Use Petition (LUP 2)*
- [ ] Property Fairness (PFA 2)*
- [ ] Quiet Title (QTI 2)*
- [ ] Unlawful Detainer (UND 2)

**JUDGMENT**
- [ ] Confession of Judgment (MSC 2)*
- [ ] Judgment, Another County, Abstract (ABJ 2)
- [ ] Judgment, Another State or Country (FJU 2)
- [ ] Tax Warrant (TAX 2)
- [ ] Transcript of Judgment (TRJ 2)

**OTHER COMPLAINT/PETITION**
- [ ] Action to Compel/Confirm Private Binding Arbitration (MSC 2)
- [ ] Certificate of Rehabilitation (MSC 2)
- [ ] Change of Name (CHN 2)
- [ ] Deposit of Surplus Funds (MSC 2)
- [ ] Emancipation of Minor (EOM 2)
- [ ] Frivolous Claim of Lien (MSC 2)
- [ ] Injunction (INJ 2)*
- [ ] Interpleader (MSC 2)
- [ ] Malicious Harassment (MHA 2)*
- [ ] Non-Judicial Filing (MSC 2)
- [ ] Other Complaint/Petition(MSC 2)*
- [ ] Seizure of Property from the Commission of a Crime (SPC 2)*
- [ ] Seizure of Property Resulting from a Crime (SPR 2)*
- [ ] Structured Settlements (MSC 2)*
- [ ] Subpoena (MSC 2)

**WRIT**
- [ ] Habeas Corpus (WHC 2)
- [ ] Mandamus (WRM 2)**
- [ ] Review (WRV 2)**

**PROBATE/GUARDIANSHIP**
- [ ] Absentee (ABS 4)
- [ ] Disclaimer (DSC4)
- [ ] Estate (EST 4)
- [ ] Foreign Will (FNW 4)
- [ ] Guardian (GDN4)
- [ ] Limited Guardianship (LGD 4)
- [ ] Minor Settlement (MST 4)
- [ ] Notice to Creditors – Only (NNC 4)
- [ ] Trust (TRS 4)
- [ ] Trust Estate Dispute Resolution Act/POA (TDR 4)
- [ ] Will Only—Deceased (WLL4)

**TORT, MEDICAL MALPRACTICE**
- [ ] Hospital (MED 2)*
- [ ] Medical Doctor (MED 2)*
- [ ] Other Health Care Professional (MED 2)*

**TORT, MOTOR VEHICLE**
- [ ] Death (TMV 2)*
- [ ] Non-Death Injuries (TMV 2)*
- [ ] Property Damage Only (TMV 2)*
- [ ] Victims Vehicle Theft (VVT 2)*

**TORT, NON-MOTOR VEHICLE**
- [ ] Asbestos (PIN 2)**
- [ ] Implants (PIN 2)
- [ ] Other Malpractice (MAL 2)*
- [ ] Personal Injury (PIN 2)*
- [ ] Products Liability (TTO 2)*
- [ ] Property Damage (PRP 2)*
- [ ] Wrongful Death (WDE 2)*
- [X] Tort, Other (TTO 2)*

* The filing party will be given an appropriate case schedule. ** Case schedule will be issued after hearing and findings.

L: forms/cashiers/cics
Rev 01/08

Ex. 2 pg-99-

4



RECEIVED
In King County Superior Court Seattle Office

MAR -6 2008

Cashier Section
Superior Court Clerk

RECEIVED

2008 MAR -6 PM 3: 51

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA

FILED

2008 MAR -6 PM 4: 11

SUPERIOR COURT
SEATTLE. WA
SEATTLE. WA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
### FOR THE COUNTY OF KING

Richard Buse

        Plaintiff

v.

First American Title Insurance Company, et al.

        Defendants

NO. 08-2-08093-5 SEA
NOTE FOR MOTION DOCKET
SEATTLE COURTHOUSE ONLY
(Clerk's Action Required )
(NTMTDK)

TO:    THE CLERK OF THE COURT and to all other parties listed on Page 2:
        PLEASE TAKE NOTICE that an issue of law in this case will be heard on the date below and the Clerk is
        directed to note this issue on the calendar checked below.

Calendar Date: _03/06/08_____    _Day of Week:___Thursday_____
Nature of Motion:   Motion for Preliminary Injunction

| EX PARTE MOTIONS [LR 0.13] - Seattle in W325 |
|---|
| The original of this notice must be filed at the Clerk's Office **not less than six court days** prior to requested hearing date. Motions are scheduled 9:00-11:30 a.m. & 1:30-3:45 p.m. (except as indicated): |

[ ]Eviction Hearing Time: 9:00 a.m.        [ X ]Other Ex Parte Motion. Hearing Time:   1:30

The original of this notice must be filed at the Clerk's Office **not less than fourteen calendar days** prior to requested hearing date - *Deliver Working Papers (on accountings, contested or complex cases) to W325. Ex Parte hearings do not require confirmation.*

| [ ]Adoption Final Hrg. | Hearing Time: 9:00:_____ | 1:30:_____ | (LR 93.04) |
|---|---|---|---|
| [ ]Family Law Final Decree | [ ]Atty to Appear Hearing Time: _____ | | [ ]No Attorney Hearing Time: 1:30 p.m. |
| [ ]Probate/Grdnshp | Hearing Time: 10:30 a.m. | (LR 98.04, 98.16, 98.20) | |

| FAMILY LAW MOTIONS [LFLR 6] - Seattle in W291 |
|---|
| The original of this notice must be filed at the Clerk's Office **not less than fourteen calendar days** prior to the requested hearing date, except for Summary Judgment Motions (to be filed with Clerk 28 days in advance). *Must confirm at 296-9340 (LFLR 6).* Deliver Commissioner's copies to same room number 3 lines above. *SEE PAGE 2 FOR IMPORTANT NOTICE!* |

[ ] Domestic Motion (9:30)    [ ] Sealed File Motion (1:30)    [ ] Parenting Plan Modification (threshold 1:30)

| RALJ READINESS CALENDAR – Seattle |
|---|
| The original of this notice must be filed at the Clerk's Office **not less than five court days** prior to the hearing date. You must bring this document and appear as scheduled.  See posted signs for room number and Judge the day of your hearing.    [ ] Fridays only (1:30 p.m.) |

( You may list an address that is not your residential address where you agree to accept legal documents.
Sign_____Print/Type Name: _Melissa A. Huelsman_____
WSBA # _30935_____ (if attorney)  Attorney for: _Plaintiff_____
Address: _705 Second Avenue, Suite 501_____City, State, Zip _Seattle, WA 98104____
Telephone: _206-447-0103_____Date: __03/06/08_____

Party requesting hearing must file motion & affidavits separately along with this notice. List names, addresses and telephone numbers of all parties requiring notice, (including Guardian Ad Litem) on page 2. Serve a copy of this notice of hearing, with motion documents, on all parties.  **DO NOT USE THIS FORM TO SET HEARINGS BEFORE CHIEF CIVIL JUDGE OR THE ASSIGNED JUDGE FOR THE CASE.**

NOTE FOR MOTION DOCKET - SEATTLE COURTHOUSE ONLY                Page 1
Sea 111306
www.metrokc.gov/kcscc/forms.htm
Ex. 2 pg-100

| LIST NAMES AND SERVICE ADDRESSES FOR ALL NECESSARY PARTIES REQUIRING NOTICE |
|---|

Name__First Amereican Title Insurance Company
Service Address:_2101 4th Avenue, Ste 800
City, State, Zip  Seattle, WA 98104_____
WSBA#_____Atty For:_____
Telephone #:_____

Name_Foreclosurelink, Inc._____
Service Address:_5006 Sunrise Blvd., Suite 200
City, State, Zip Fair Oaks, CA 95628_____.
WSBA#_____Atty For:_____
Telephone #:_____

Name_____
Service Address:_____
City, State, Zip_____
WSBA#_____Atty For:_____
Telephone #:_____

Name_____
Service Address:_____
City, State, Zip_____
WSBA#_____Atty For:_____
Telephone #:_____

Name_____
Service Address:_____
City, State, Zip_____
WSBA#_____Atty For:_____
Telephone #:_____

Name_____
Service Address:_____
City, State, Zip_____
WSBA#_____Atty For:_____
Telephone #:_____

# IMPORTANT NOTICE REGARDING FAMILY LAW CASES

**IF YOU ARE THE PERSON SCHEDULING THIS MOTION,** you must confirm this hearing by calling the Family Law Motions Coordinators at 296-9340 between 2:30 p.m. and 4:15 p.m. (3) court days before the hearing and between 8:30 a.m. and 12:00 p.m. (noon) two (2) court days prior to the hearing.

**IF YOU OBJECT TO THIS MOTION,** under King County Superior Court Rule LFLR 5, your response and accompanying paperwork **must be in writing** and must be delivered, not later than by 12:00 p.m. (noon) of four (4) weekdays (not including court holidays) prior to the hearing to:

1) the Superior Court Clerk in Room E609 (the originals go to the Clerk);

2) all parties' attorneys (or directly to any party who does not have an attorney); and,

3)  the Family Law Motions Coordinators in Room W291.

Any statements of a party or witness must be signed, dated and sworn to under penalty of perjury, and must contain the state and city where signed.

The moving party's reply is due by noon two court days prior to the hearing.  Check-in time is **9:00 am** for morning hearings and **1:15 p.m.** for afternoon hearings.

THIS IS ONLY A PARTIAL SUMMARY OF THE LOCAL RULES.  ALL PARTIES ARE ADVISED TO CONSULT WITH AN ATTORNEY.

The **KING COUNTY COURTHOUSE** is in Seattle, Washington at 516 Third Avenue.

Ex. 2 pg-101-

RECEIVED

FILED

*Ex Parte*

2008 MAR -6 PM 3: 51

2008 MAR -6 PM 4: 11

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

SUPERIOR COURT CLERK
SEATTLE, WA.



1
2
3
4
5
6
7          SUPERIOR COURT FOR THE STATE OF WASHINGTON
            IN AND FOR THE COUNTY OF KING
8
    RICHARD O. BUSE,
9                                              Case No.  08-2-08093-5 SEA
                    Plaintiff,
10                                             ORDER ON MOTION FOR
    vs.                                        TEMPORARY RESTRAINING ORDER
11
    FIRST AMERICAN TITLE INSURANCE
12  COMPANY; FORECLOSURELINK, INC.;
    GREENPOINT MORTGAGE FUNDING, INC.;
13  MORTGAGE ELECTRONIC REGISTRATION
    SYSTEMS, INC.; RESCOMM HOLDINGS NO.
14  2, LLC; UM ACQUISITIONS, LLC; TOM
    BLOCK; and Doe Defendants 1 through 20,
15
                    Defendants.
16
17
         THIS MATTER having come before the undersigned Judge by way of the Plaintiff's
18
    Motion for Temporary Restraining Order, and after consideration of the Plaintiff's Motion,
19
    Declaration of Richard Buse, and all of the pleadings on file herein, including the Amended
20
    Complaint, and after hearing thereon, the Court finds that the Plaintiff has met the criteria as
21
    articulated under Washington law to obtain a temporary restraining order, and for cause shown,
22
    the Court hereby makes the following Findings of Fact and Conclusions of Law:
23
24              **FINDINGS OF FACT AND CONCLUSIONS OF LAW**
25
         In order to obtain an injunction or restraining order, a plaintiff must show that: (1) he
26
27
                                                        LAW OFFICES OF
    TEMPORARY RESTRAINING ORDER RESTRAINING THE      **MELISSA A. HUELSMAN, P.S.**
    COMPLETION OF TRUSTEE'S SALE - 1                    705 SECOND AVENUE, SUITE 501
                                                        SEATTLE, WASHINGTON 98104
Ex. 2 pg-102-                                           TELEPHONE: (206) 447-0103
                                                        FACSIMILE: (206) 447-0115

1   has a clear legal or equitable right; (2) that he has a well-grounded fear of immediate invasion

2   of that right, and (3) that the acts complained of are either resulting in or will result in actual

3   and substantial injury to him. *Kucera v. State, Dept. of Transportation*, 140 Wn.2d 200, 209,

4   995 P.2d 63 (2000). Such criteria is evaluated by balancing the relative interests of the parties,

5   and if appropriate, the interests of the public. *Id.*

6   Plaintiff has sufficiently demonstrated to the Court that he is entitled to a ~~preliminary~~ Temporary

7   Restraining order.

8   ~~injunction~~ restraining the completion of the Trustee's Sale which was noticed and commenced

9   by Defendants First American and ForeclosureLink on behalf of the purported owner of the

   restore the hearing set by this order

10  mortgage loan, Defendant Block. Mr. Buse has a clear legal and equitable right to his

11  ownership interest in the real property more particularly identified below and as documented in

12  the Exhibits attached to the Amended Complaint on file herein. Further, Mr. Buse has a well-

13  grounded fear that that right to ownership will be invaded if the foreclosure sale is completed

14  in that completion of the sale will result in the loss of ownership of his home and real property.

15

16  If the trustee's sale is not restrained, Mr. Buse's rights may be terminated and he could be

17  prevented from litigating his valid claims regarding the propriety of the foreclosure process. It

18  would also extinguish Mr. Buse's right to reacquire the property as there are no redemption

19  rights in a non-judicial foreclosure. The loss of his homeownership would necessarily cause

20  Mr. Buse an irreparable injury that could not be sufficiently compensated with money

21  damages. The Defendants herein, Defendants First American and ForeclosureLink, nor the

22

23  actual owner of the mortgage loan (whomever that will turn out to be) will not suffer any

24  substantial harm if the sale is restrained for some period of time in that the sale date may be

25  postponed orally for up to 120 days without impacting the foreclosing entities right to complete

26  the sale. RCW 61.24, *et seq.* In balancing the rights and interests of the parties, it is clear that

27

For purposes of CR 65 100m ox

TEMPORARY RESTRAINING ORDER RESTRAINING THE
COMPLETION OF TRUSTEE'S SALE - 2

Ex. 2 pg-103-

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1  Mr. Buse will suffer greater harm if the sale is temporarily restrained until such time as the

2  motion for preliminary injunction can be heard by the assigned judge, Honorable Chris

3  Washington, on March 14, 2008 at 11:00 a.m.

4

### ORDER

5

6  Based upon the foregoing and because Plaintiff has met the threshold criteria for

7  issuance of a temporary restraining order,

   *upon Posting Bond of $2000 with the*

8  IT IS HEREBY ORDERED that the Trustee's Sale initiated by Defendants First *Court Clerk*

9  American and ForeclosureLink, purportedly on behalf of Defendant Block, which is currently

10  scheduled to take place on March 7, 2008, at 10:00 a.m., regarding the real property located at

11  9424 Carnation-Duvall Road NE, Carnation, Washington 98014; legal description: PARCEL

12  A, LOT 1, LOTS 5 & 6 STILLWATER VOL. 19, PLAT 11; Tax ID No. 042507-9022-05 in

13  the records of King County, Washington, is hereby restrained and shall be continued until

14  further order of the Court; and

15

16  IT IS FURTHER ORDERED that Plaintiff will prepare and note for hearing his Motion

17  for Preliminary Injunction before the Honorable Chris Washington, King County Superior

18  Court, on March 14, 2008 at 11:00 a.m. Counsel for Plaintiff shall provide notice of the hearing

19  and motion pleadings to all defendants herein by close of business on March 10, 2008. This

20  Order will remain in effect until such time as an Order is entered on the Motion for Preliminary

21  Injunction by the King County Superior Court.

22

23  DATED this __6__ day of March, 2008.    3: *ff qq* ERIC WATNESS

24

25  MAR 06 2008

   The Honorable Court Commissioner

26  COURT COMMISSIONER

27

TEMPORARY RESTRAINING ORDER RESTRAINING THE
COMPLETION OF TRUSTEE'S SALE - 3

Ex. 2 pg-104-

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1

2

Presented by:

3

LAW OFFICES OF MELISSA A. HUELSMAN, P.S.

4

5

Melissa A. Huelsman, WSBA 30935
Attorney for Plaintiff Richard Buse

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TEMPORARY RESTRAINING ORDER RESTRAINING THE
COMPLETION OF TRUSTEE'S SALE - 4

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

FILED

2008 MAR -6  AM 9: 33

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RICHARD O. BUSE,

           Plaintiff,

vs.

FIRST AMERICAN TITLE INSURANCE
COMPANY; FORECLOSURELINK, INC.;
GREENPOINT MORTGAGE FUNDING,
INC.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
RESCOMM HOLDINGS NO. 2, LLC; UM
ACQUISITIONS, LLC; TOM BLOCK; and
Doe Defendants 1 through 20,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 08-2-08093-5 SEA

DECLARATION OF RICHARD O.
BUSE IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER
AND PERMANENT INJUNCTION

I,      Richard O. Buse, declare as follows:

1.      I am the plaintiff herein and I have personal knowledge of the facts contained

herein. If called upon to testify to the truth thereof, I could and would do.

2.      I have owned my home for many years. I applied for and obtained a home

equity line of credit loan from Defendant GreenPoint on June 16, 2004. In connection with the

making of that loan, I signed a Deed of Trust for Defendant GreenPoint, which was recorded in

the records of King County, Washington on July 29, 2004. A copy of the Deed of Trust is



LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   attached to the Amended Complaint on file herein as Exhibit "!".

2   3.   After obtaining the loan in 2004, I made payments on the loan to Defendant

3   GreenPoint, which held itself out as the owner and/or servicer of the mortgage loan through

4   2005.  On or about August 12, 2005, I received a notice that Defendant United Mortgage was

5   the new owner or servicer or assignee of the mortgage loan and instructing me to thereafter

6   make my payments to Defendant Rescomm as the servicer at an address in Charlotte, North

7   Carolina.  However, the letter also stated that inquiries regarding the loan were to be made to

8   Defendant United Mortgage.  So, I mailed my payments after August 2005 to the address in

9   North Carolina.

10

11   4.   I did not receive formal written notice of the purported change in ownership

12   and/or servicing of the mortgage loan in 2006 from any of the defendants herein, including

13   Defendant Block, prior to the alleged transfer.  Instead, I was contacted by Defendant Block by

14   telephone advising that he was the new owner of the loan and that payments were now to be

15   made to him.

16

17   5.   Defendant Block also advised me that I was delinquent in my mortgage

18   payments and that he (Defendant Block) would be starting a foreclosure action and raising the

19   interest rate unless I signed a loan medication agreement.

20

21   6.   Because of the alleged default on the loan, Defendant Block insisted that I

22   execute a loan modification agreement and presented it to me for signature almost immediately

23   after advising me by telephone that he owned the loan.  This Modification Agreement is dated

24   **May 30, 2006,** just six days after the DOT was allegedly assigned to Defendant Block in the

25   first place and I believe that I received the notice regarding the modification agreement within a

26   day or two of my first being advised that Defendant Block allegedly owned the loan by

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

DECLARATION OF RICHARD O. BUSE IN SUPPORT OF
Ex. 2   MOTION FOR TRO AND/OR PRELIM. INJ. - 2

1  telephone. Believing that I had no choice but to sign the loan modification agreement or I

2  would lose my house, I did so. Thereafter, I made the new and increased payments to

3  Defendant Block, but was not receiving proper credit for those payments. I did become

4  delinquent on the loan in late 2006 due to financial problems related to the death of my mother.

5

6      7.     In early 2007 I did receive a Notice of Default document and began to try to

7  prevent that foreclosure. Therefore, I paid the alleged deficiencies due and owing to Defendant

8  Block in April 2007, even though I believe that some of charges were greatly inflated.

9  However, I did not want to lose my home. Thereafter, I made payments to Defendant Block,

10 but was not properly credited for those payments. Defendant Block then contended again that I

11 was delinquent and started the instant foreclosure sale. I am behind on some of my payments

12 to Defendant Block, but I am uncertain about the correct amount and/or the reasons for the

13 alleged delinquencies because Defendant Block is not properly crediting payments and he

14 forced me to sign the modification agreement, which I think is inaccurate.

15

16     This Declaration made under penalty of perjury under the laws of the State of

17 Washington this 5th day of March, 2008 at Carnation, Washington.

18

19                          Richard O. Buse – per

20                          telephone authorization & 3/5/08

21

22

23

24

25

26

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2 pg 108

DECLARATION OF RICHARD O. BUSE IN SUPPORT OF
MOTION FOR TRO AND/OR PRELIM. INJ. - 3

EXP01

<u>NON-TRIAL COURT MINUTES</u>

SCOMIS CODE: MTHRG
EXPARTE DEPARTMENT
DATE: March 6, 2008
PAGE 1 OF 1

COURT COMMISSIONER: **Eric B. Watness**
COURTROOM CLERK: **Sung Kim**
DR325-2; START TIME: ___2_:_32_:_12_
AUDIO    STOP TIME: ___2_:_34_:_11_

KING COUNTY CAUSE NO: _08_ - _2_ - _08093_ . _5_  SEA/KNT

CASE CAPTION: IN RE THE ○ ESTATE ○ GUARDIANSHIP ○ MARRIAGE ○ CUSTODY
○PARENTAGE ○ ADOPTION ○ PETITION OF: _Richard Buse & First American Title_

| Appearances: |
| --- |

Petitioner/Plaintiff appearing ◊ pro se ◊ by ◊ with counsel: __Melissa Huelsman__
For _____
Respondent/Defendant appearing ◊ in default ◊ pro se ◊ by ◊ with counsel: _____

Petitioner/Respondent/_____ Sworn and examined.
    ☼ Testimony perpetuated. ☼ Previously perpetuated. ☼ By declaration/interrogatories
            **This cause comes on for hearing this day upon petition for:**
☐ Probate ☐Letters of Administration ☐Codicil(s) ☐Solvency/Non-intervention powers ☐Annexed
☐ Minor settlement ☐ Guardianship
☐ Unlawful detainer (evictions) ☐Default (and judgment) ☐Stay of writ of restitution
☐ Decree of dissolution ☐Legal separation ☐Invalidity (annulment) ☐Non-parental custody
☐ Parentage ☐ Modification of child support/parenting plan ☐ Adoption
☐ Temporary restraining order ☐ Name change ☐ Emancipation
☒ _Preliminary Injunction_____

___ Petition(s)/motion(s) granted. Order(s) signed. ___ Denied. Order(s) signed/to be presented.
___ Plaintiff is granted judgment (and writ of restitution) _____
___Findings of Fact and Conclusions of Law/Decree __Qualified Domestic Relations Order (QDRO)
___Judgment __Parenting Plan/Residential Schedule __Child Support Order are signed.

_____ appointed
☼ Personal Representative/Administrator(ix)        ☼ Guardian(s)        ☼ Trustee(s)
___ Bond set $_____ (or in lieu of bond_____)
OTHER: _____
_____
_____

**SEATTLE COURTHOUSE**                                    **SUB NUMBER:**

Ex. 2 pg-109-

FILED

2008 MAR -6  AM 9: 33

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RICHARD O. BUSE,                          )    Case No. 08-2-08093-5 SEA
                                          )
                    Plaintiff,            )
                                          )    MOTION FOR TEMPORARY
vs.                                       )    RESTRAINING ORDER AND
                                          )    PERMANENT INJUNCTION
FIRST AMERICAN TITLE INSURANCE            )
COMPANY; FORECLOSURELINK, INC.;           )
GREENPOINT MORTGAGE FUNDING,              )
INC.; MORTGAGE ELECTRONIC                 )
REGISTRATION SYSTEMS, INC.;               )
RESCOMM HOLDINGS NO. 2, LLC; UM           )
ACQUISITIONS, LLC; TOM BLOCK; and         )
Doe Defendants 1 through 20,              )
                                          )
                    Defendants.           )
                                          )
                                          )

## I. RELIEF REQUESTED

COME NOW Plaintiff RICHARD O. BUSE and moves this Court for a preliminary

injunction or, in the alternative, order temporarily restraining Defendants First American and

ForeclosureLink from completing the Trustee's Sale scheduled to take place on March 7, 2008

regarding real property located at 9424 Carnation-Duvall Road NE, Carnation, Washington

98014; legal description: PARCEL A, LOT 1, LOTS 5 & 6 STILLWATER VOL. 19, PLAT

11; Tax ID No. 042507-9022-05 in the records of King County, Washington.

ORIGINAL

MOTION FOR TRO AND/OR PRELIMINARY
Ex. 2  INJUNCTION- 1

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

## II. FACTS

Mr. Buse has been a victim of the mortgage lending mess created by Wall Street, mortgage lenders and servicers, Defendant MERS and various and assorted other vultures who are engaged in a pattern and business practices intended to deceive and mislead homeowners regarding application of their payments and the amounts owing under notes and deeds of trust, and upon the courts and county recorders offices regarding their ownership interest in the notes and deeds of trust under which they are collecting fees and/or initiating foreclosures.

Mr. Buse has owned his home for many years. He applied for and obtained a home equity line of credit loan from Defendant GreenPoint on June 16, 2004. In connection with the making of that loan, Mr. Buse signed a Deed of Trust for Defendant GreenPoint, which was recorded in the records of King County, Washington on July 29, 2004. A copy of the Deed of Trust is attached to the Amended Complaint on file herein as Exhibit "!". *See,* Declaration of Richard Buse filed concurrently herewith ("Buse Declaration"), ¶2. That Deed of Trust ("DOT") contained a false representation on its face when it represented that Defendant MERS was a beneficiary under the DOT. Paragraph (E) states that "MERS is a separate corporation that is acting solely as a Nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." As will be demonstrated below, MERS is NOT the beneficiary under the DOT, it never had ownership or possession of the Promissory Note which is the obligation which is secured by the DOT, and MERS has never been entitled to receive one cent of remuneration from Mr. Buse's loan proceeds. The statement that MERS is the "Nominee" is nonsensical language which means nothing in a real estate transaction and most certainly, MERS has never been nor is it now the beneficiary under the DOT. The language is a sham.

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 2

Ex. 2  p9

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    After obtaining the loan in 2004, Mr. Buse made payments on the loan to Defendant

2    GreenPoint, which held itself out as the owner and/or servicer of the mortgage loan through

3    2005. On or about August 12, 2005, Mr. Buse received a notice that Defendant United

4    Mortgage was the new owner or servicer or assignee of the mortgage loan and instructing Mr.

5    Buse to thereafter make his payments to Defendant Rescomm as the servicer at an address in

6    Charlotte, North Carolina. However, the letter also stated that inquiries regarding the loan were

7    to be made to Defendant United Mortgage. Buse Dec., ¶3. A copy of the letter received by Mr.

8    Buse is attached to the Amended Complaint as Exhibit "2".

9

10   Ostensibly on September 30, 2005, a Torlina Strong, purportedly an Assistant Secretary

11   with Defendant MERS executed an Assignment of Mr. Buse's mortgage loan from Defendant

12   MERS (which was never the beneficiary under the DOT) to Defendant Rescomm. Ms.

13   Strong's signature is not dated, but the notary stamp is dated September 30, 2005 and the

14   notary asserts that Ms. Strong is "personally known" to her to be an Assistant Secretary of

15   Defendant MERS. A copy of the Assignment of Home Equity Line of Credit Deed of Trust is

16

17   attached to the Amended Complaint as Exhibit "3". On that same day, September 30, 2005, the

18   same notary notarized the signature of Ms. Strong, this time as the Assistant Manager of

19   Defendant Rescomm, purporting to assign Mr. Buse's DOT to Defendant UM. Again, the

20   notary represents that she has personal knowledge that Ms. Strong is an assistant manager of

21   Defendant Rescomm. A copy of this Assignment of Home Equity Line of Credit Deed of Trust

22   is attached to the Amended Complaint as Exhibit "4".

23

24   Then, ostensibly on May 24, 2006, Ms. Strong again signed another Assignment

25   document, but this time she held herself out as an Assistant Manager for Defendant UM

26   Acquisitions. The notary again asserts that she personally knows Ms. Strong as an Assistant

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 3

Ex. 2 pg 112

1    Manager for Defendant UM Acquisitions, when it purports to transfer ownership of the security

2    interest in the DOT to Defendant UM Capital.  A copy of this Assignment is attached to the

3    Amended Complaint as Exhibit "5".  On the same day, May 24, 2006, Ms. Strong signed

4    another Assignment on behalf of Defendant UM Capital as an Assistant Manager transferring

5    ownership of the loan to Defendant Block, which was witnessed by the same notary.  A copy of

6    the fourth Assignment is attached to the Amended Complaint as Exhibit "6".  So to recap – Ms.

7    Strong contends in these documents that she is an officer of four separate corporations or

8    limited liability companies – all of whom may transfer ownership interests in Mr. Buse's loan

9    among themselves upon nothing more than Ms. Strong's signature and when it is apparently

10   convenient for them.

11

12        Mr. Buse did not receive formal written notice of the purported change in ownership

13   and/or servicing of the mortgage loan in 2006 from any of the defendants herein, including

14   Defendant Block, prior to the alleged transfer, as required by law.  RESPA, 12 U.S.C. § 2601,

15   *et seq.*  Instead, Mr. Buse was contacted by Defendant Block by telephone advising that he was

16   the new owner of the loan and that payments were now to be made to him.  Buse Dec., ¶4.

17   Defendant Block also advised Mr. Buse that he was delinquent in his mortgage payments and

18   that he (Defendant Block) would be starting a foreclosure action and raising the interest rate

19   unless Mr. Buse signed a loan medication agreement.  Buse Dec., ¶5.  Mr. Buse maintains that

20   if the loan was in default at the time it was transferred and/or sold to Defendant Block, then it

21   was a violation of federal law, especially since Mr. Buse did not receive notice of the alleged

22   transfer in writing.  *Id.*

23

24        Because of the alleged default on the loan, Defendant Block insisted that Mr. Buse

25   execute a loan modification agreement and presented it to him for signature almost

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   immediately after advising him by telephone that he owned the loan. This Modification

2   Agreement is dated **May 30, 2006,** just six days after the DOT was allegedly assigned to

3   Defendant Block in the first place and Mr. Buse believes within a day or two of his first being

4   advised that Defendant Block allegedly owned the loan by telephone. Believing that he had no

5   choice but to sign the loan modification agreement, Mr. Buse did so. Buse Dec., ¶6. A copy of

6   the Loan Modification Agreement is attached to the Amended Complaint as Exhibit "7".

7

8   Thereafter, Mr. Buse made the new and increased payments to Defendant Block, but was not

9   receiving proper credit for those payments. Mr. Buse did become delinquent on the loan in late

10   2006 due to financial problems related to the death of his mother. Buse Dec., ¶6.

11        Defendant Block executed an Appointment of Successor Trustee document on January

12   4, 2007 appointing Defendant First American as the successor trustee, but the document's

13   return address was to Defendant ForeclosureLink. A copy of that Appointment of Successor

14

15   Trustee is attached to the Amended Complaint as Exhibit "8". It was not recorded until

16   January 9, 2007, which was the date that it became effective under Washington law.

17   Nevertheless, Defendant First American, by and through its alleged agent, Defendant

18   ForeclosureLink, served Mr. Buse with a Notice of Default document, at a time when neither of

19   those defendants had been properly appointed as the trustee.

20        The Notice of Trustee's Sale initiated by Defendant ForeclosureLink as the ostensible

21   agent of Defendant First American was recorded on February 9, 2007 in the records of King

22

23   County, Washington. The only address listed for contact with the foreclosing trustee on that

24   document is an address in Fair Oaks, California. There is no Washington address on the

25   document for contacting the alleged trustee, Defendant First American. A copy of the Notice

26   of Trustee's Sale is attached to the Amended Complaint by reference as Exhibit "9". Mr. Buse

27

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 5

Ex. 2 Page 114

1  paid the alleged deficiencies due and owing to Defendant Block in April 2007 and Defendant

2  ForeclosureLink recorded a Notice of Discontinuance of Trustee's Sale in the records of King

3  County, Washington on April 26, 2007.  A copy of the Notice of Discontinuance is attached to

4  the Amended Complaint as Exhibit "10".

5

6      Thereafter, Mr. Buse made payments to Defendant Block, but was not properly credited

7  for those payments.  Defendant Block then contended again that Mr. Buse was delinquent.  A

8  Notice of Default and later a Notice of Trustee's Sale were delivered to Mr. Buse in November

9  and December 2007.  The Notice of Trustee's Sale signed by Defendant ForeclosureLink

10  ostensibly as an agent for Defendant First American was recorded in the records of King

11  County, Washington on December 4, 2007.  A copy of the Notice of Trustee's Sale is attached

12  to the Amended Complaint as Exhibit "11".  Again, nowhere on this document is there a

13

14  Washington address for contacting the trustee.  Mr. Buse is behind in some of his payments to

15  Defendant Block, but he is uncertain about the correct amount and/or the reasons for the

16  alleged delinquencies since he maintains that Defendant Block is not properly crediting

17  payments.  Buse Dec., ¶7.  Further, Mr. Buse maintains that there have been numerous

18  improprieties in the servicing, sale and transfer and appointment of trustees in the handling of

19  his loan, and that the alleged trustee, Defendants First American and/or ForeclosureLink are not

20  properly appointed as foreclosing trustees nor acting in conformity with Washington law.  For

21  these reasons, the defendants are liable for their actions, and the foreclosure sale should be

22  enjoined so that these issues may be addressed.

23

24      Regarding the issue of Defendant MERS' alleged status as a "beneficiary" under the

25  GreenPoint DOT, its own records demonstrate the falsity of the information on the document.

26  Documents taken from Defendant MERS' own website demonstrate that it is NOT the

27

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 6

Ex. 2  pg 115

1  beneficiary under any Deeds of Trust or mortgages.  Rather, Defendant MERS was created to

2  "streamline the mortgage process by using electronic commerce to eliminate paper.  Our

3  mission is to register every mortgage loan in the United States on the MERS System."  It also

4  notes that "MERS remains the nominal mortgagee no matter how many times servicing is

5  traded."  A copy of the documentation taken off of Defendant MERS' website is attached to the

6  Amended Complaint as Exhibit "12".  The other documentation attached from Defendant

7  MERS' website demonstrates that it is nothing more than a computer system designed by the

8  mortgage industry to protect them from having to pay recording fees so that the entity that

9  owns any mortgage loan is available.  Defendant MERS' entire business operation is premised

10  on the wholesale and everchanging sale or transfer of "servicing rights".  The documentation

11  demonstrates that Defendant MERS does not own the loans, rather they are acting as a

12  "nominee" for whomever might or might not say that it owns the loan at any given time.

13  Further, since Defendant MERS never obtains possession of the Promissory Note which

14  secures the Deed of Trust, it cannot ever have the right to enforce the terms of the Deed of

15  Trust, since that right is reserved to the owner and holder of the secured instrument, the

16  Promissory Note.  The information from Defendant MERS also demonstrates that falsity of the

17  purported assignments of the DOT from Defendant GreenPoint to Defendant Rescomm, from

18  Defendant Rescomm to Defendant UM, and from Defendant UM to Defendant Block.  The

19  same person signed the first three assignments, ostensibly as an officer of all three corporations.

20  The records of Defendants MERS' explains a portion of the source of the misrepresentations --

21  it purports to appoint unidentified and unspecified persons as "officers" of Defendant MERS

22  for the purpose of executing documents to effect transfers.  Mr. Buse maintains that this is a

23  sham act and that a corporation cannot create corporate officers in blank, without specificity

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 7

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1  and without identification. Under this premise, Defendant MERS is contending that anyone

2  who works for some mortgage lender, servicing company, foreclosing trustee, title company,

3  etc. can become an officer of Defendant MERS without providing it with notification, without

4  getting its approval or even identifying the person to assign mortgages to new owners (even if

5  that new MERS officer is also an officer of the alleged new owner of the loan) or take whatever

6  actions the other companies desire! Mr. Buse maintains that this is nothing more than a sham

7  transaction and approval and that therefore the first assignment from Defendant GreenPoint to

8  Defendant Rescomm (all signed off by the alleged employee of Defendant MERS) is invalid,

9

10  and that all subsequent Assignments and Appointment of Successor Trustees are also therefore

11  invalid.

12       2.12    Unfortunately the alleged trustee in this foreclosure, Defendants First American

13  and ForeclosureLink are likewise engaged in attempting to perpetrate a fraud upon Mr. Buse

14  and upon the citizens of King County, Washington by purporting to assume the role of

15  foreclosing trustee, in violation of Washington loan. The actual foreclosing trustee is

16

17  Defendant ForeclosureLink, as evidenced by the fact that its employees are the only signers on

18  any of the foreclosure documents, and its contact information is the only information on any of

19  the foreclosure documents. Defendant ForeclosureLink has attempted to evade the

20  requirements for acting as a trustee in the State of Washington by using Defendant First

21  American as a "front", since it is apparently a title insurance company licensed in the State of

22

23  Washington and therefore it would be able to act as a trustee. RCW 61.24.010, a portion of the

24  Deed of Trust Act, specifies quite clearly who may act as a foreclosing trustee. It states, in

25  pertinent part:

26       (1) The trustee of a deed of trust under this chapter shall be:

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 8

1     (a)  Any domestic corporation authorized to insure title to real

property under the laws of this state, or its agents; or

2     (b)  Any title insurance company authorized to ensure title to real

3 property under the laws of this state, or its agents; or . . .

4 RCW 61.24.010.

5    Defendant First American might qualify as a trustee under these provisions, but

6 Defendant ForeclosureLink (which is not even licensed to engage in business in this state) is

7 not so authorized.  RCW 61.24.010(a)(b) allows the "agent" of a title insurance company to act

8 on its behalf, but "agents" for title insurance companies are defined under that licensing statute.

9 RCW 48.17, *et seq.*  Under RCW 48.17.010(15) a "title insurance agent" is defined as "a

10 business entity licensed under the laws of this state and appointed by an authorized title

11 insurance company to sell, solicit or negotiate insurance on behalf of the title insurance

12 company."  Further, RCW 48.29.160 verifies that, "To be licensed as [an] agent of a title

13 insurer, the applicant must own or lease and maintain a complete set of tract indexes of the

14 county or counties in which such agent will do business."  There is no indication whatsoever

15 that Defendant ForeclosureLink has such an index in King County, or even that it has any

16 business address located in the State of Washington.  It is clear that Defendant ForeclosureLink

17 – the actual foreclosing trustee – is not authorized to act as a trustee in the State of Washington

18 and its "agent" status with Defendant First American does not meet the criteria defined in the

19 statute and is nothing more than a sham.  For all of these reasons, this foreclosure must be

20 enjoined since the purported foreclosing trustee does not have the requisite authority under

21 Washington law to act as the trustee.   Mr. Buse maintains that given the improprieties in this

22 foreclosure proceeding, he should not be required to make any payment to secure the issuance

23 of the Order, but in the event that the Court requires some payment, Mr. Buse has the ability to

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 9

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   deposit funds representing a legitimate portion of the amounts outstanding to the Court

2   Registry. However, he objects to the disbursal of those funds to any entity until there has been

3   a determination as to what entity owns his Promissory Note and Deed of Trust, and which

4   entity is entitled to payment of those proceeds.

### III. ISSUE PRESENTED

7        Under RCW 7.40.020 and RCW 61.24, *et seq.*, is Mr. Buse entitled to a preliminary

8   injunction or temporary restraining order when: (1) the Deed of Trust was never properly

9   assigned by the rightful owner, Defendant GreenPoint, to another entity; (2) Defendants First

10  American and ForeclosureLink were never propertly appointed as successor trustee by the

11  actual owner of the Promissory Note and Deed of Trust; and (3) Defendant ForeclosureLink is

12  not authorized to act as a foreclosing trustee in the State of Washington and the representations

13  by Defendant First American that Defendant ForeclosureLink is acting as its agent (since it

14  ostensibly would be authorized to be a trustee under Washington law) are entirely false and

15  inconsistent with the statutes, as noted above.

### IV. EVIDENCE RELIED UPON

18       This motion is based on the moving papers, Declaration of Richard O. Buse filed in

19  support of this Motion, as well as the pleadings and documents on file herein.

### V. ARGUMENT

21       Under RCW 7.40.020,

23           "When it appears by the complaint that the plaintiff is entitled to
             the relief demanded and the relief...consists in restraining the
24           commission or continuance of some act, the commission or
             continuance of which during the litigation would produce great
25           injury to the plaintiff...an injunction may be granted to restrain
             such act or proceedings until the further order of the court, which
26           may afterwards be dissolved or modified upon motion."

27

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

RCW 7.40.020. The Washington Supreme Court first addressed issuance of a preliminary injunction in *State ex rel. Miller v. Lichtenberg*, 4 Wn. 407, 411 (1892), and later clarified its position in *Blanchard v. Golden Age Brewing Co.*, 188 Wn. 396, 415 (1936). The *Blanchard* Court held that, "[T]he object and purpose [of a preliminary injunction] is to preserve and keep things in *statu quo* until otherwise ordered and to restrain an act which, if done, would be contrary to equity and good conscience." The Court provided further clarification in *Isthmian Steamship Co. v. National Marine Engineers' Beneficial Assoc.*, 41 Wn.2d 106, 117 (1952), holding that the moving party must show a "clear legal or equitable right and a well grounded fear of immediate invasion of that right." This standard was reaffirmed in *Tyler Pipe Industries, Inc. v. Dept. of Revenue*, 96 Wn.2d 785 (1982) and *Washington Federation of State Emp. v. State*, 99 Wn.2d 878 (1983). Thus, in order to obtain an injunction, a plaintiff must show that: (1) he has a clear legal or equitable right; (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him. *Kucera v. State, Dept. of Transportation*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000). Such criteria is evaluated by balancing the relative interests of the parties, and if appropriate, the interests of the public. *Id.* Ultimately, the decision to grant a preliminary injunction is within the sound discretion of the trial court, with such discretion to be exercised according to the circumstances of each particular case. *Washington Fed'n of State Employees v. State*, 99 Wn.2d 878, 887 (1983) (citations omitted).

Here, Mr. Buse is entitled to a preliminary injunction or an order temporarily restraining the completion of the illegal foreclosure commenced by Defendants First American and ForeclosureLink on behalf of the purported owner of the loan, Defendant Block. Mr. Buse is

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   likely to prevail upon the merits, as outlined more fully below, thereby establishing that these

2   Defendants did not have the proper authority to commence and complete a foreclosure sale as

3   regards this property nor are they authorized to conduct a sale in the State of Washington.  If

4   the trustee's sale is not halted, Mr. Buse's rights may be terminated and he would be preventd

5   from litigating his valid claims regarding the propriety of the foreclosure process.  It would

6   also extinguish Mr. Buse's right to reacquire the property as there are no redemption rights in a

7   non-judicial foreclosure.

8

9   **I.      Plaintiff is likely to prevail on the merits of this case and thus has established a
    clear legal right to the property.**

10

11      In order to determine whether a party has a clear legal or equitable right, the Court must

12   analyze the moving party's likelihood of prevailing on the merits.  *Washington Fed'n of State*

13   *Employees*, 99 Wn.2d at 888 (*citing Tyler Pipe Indus. v. Department of Revenue*, 96 Wn.2d

14   785, 793 (1982)).  For the reasons discussed below, the Plaintiff is likely to prevail on each of

15   her claims in this action, and thus has established a clear legal right.

16

17      **A.      Plaintiff is likely to prevail on his Consumer Protection Act claim.**

18      A plaintiff who alleges a violation of the Washington Consumer Protection Act must

19   prove five elements:  "(1) an unfair or deceptive act or practice; (2) occurring in trade or

20   commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property;

21   (5) causation."  *Hangman Ridge Training Stables v. Safeco Title Ins. Co*, 105 Wn.2d 778, 780,

22   (1986).

23      The Defendants committed unfair and deceptive acts and practices, as described in great

24   detail in the Facts portion of this motion and the Amended Complaint.  They acted improperly

25   to purport to transfer ownership and/or servicing rights in the loan from inception and the

26

27

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 12

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   signing of multiple Assignments by the same person on behalf of four different companies

2   demonstrates the untruthfulness of her representations and those of the companies upon whose

3   behalf she acted.  Further, the purported appointment of Defendant ForeclosureLink as the

4   trustee is in direct violation of the requirements of the Washington Deed of Trust Act and

5   statutes regulating the business of title insurance companies, as described more particularly

6   above.  These Defendants trusted that Mr. Buse would not notice the improprieties in the

7   alleged Assignment process and that he would not know that Defendant ForeclosureLink has

8   no authority to act as a trustee in the State of Washington.  Mr. Buse alleges that their purpose

9   was to intentionally avoid the requirements of Washington law in order to complete an illegal

10  and wrongful foreclosure in order to incur fees and expenses which would inure to their benefit.

**B.    Plaintiff is likely to prevail on his infliction of emotional distress claim.**

"The tort of outrage[1] requires the proof of three elements:  (1) extreme and outrageous

conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to

plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003) (citation

omitted).  "Any claim for intentional infliction of emotional distress must be predicated on

behavior so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Id.* at 196 (citations omitted).

The Defendants in this case knowingly exploited a financially and emotionally distressed man

in the manner described more particularly above, including Defendant Block's forced efforts to

require Mr. Buse to modify his loan terms within days of a sham transfer of the loan to

---

[1] "'Outrage' and 'intentional infliction of emotional distress' are synonyms for the same tort." Kloepfel v. Bokor, 149 Wn.2d 192, 194 n.1, 66 P.3d 630 (2003) (citation omitted)

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    Defendant Block, and without any of the written notices required under RESPA, 12 U.S.C. §

2    2605.

3          C.     **Plaintiff is Likely to Prevail Upon His Slander of Title Claims.**

4          The Defendants have improperly attempted to sell Mr. Buse' home through a

5
     foreclosure sale and they have recorded and/or caused to be recorded documents with the King
6
     County Recorder's Office which contain false statements and representations, as outlined more
7
8    particularly above. Therefore, these Defendants have slandered title to Mr. Buse's real

9    property, making it likely that he will prevail upon this claim.

10         D.     **Plaintiff is likely to prevail upon his wrongful foreclosure and breach of**
11   **fiduciary duty and/or quasi-fiduciary duty claims.**

12         The Defendants herein were required to comply with the terms of the Deed of Trust

13   contract entered into between themselves and/or the persons or entities on whose behalf they

14   were acting. The Defendants were also required not to breach their fiduciary and/or quasi-

15   fiduciary duties to Mr. Buse by wrongfully and illegally attempting to conduct an improper
16
     foreclosure sale. The Defendants did violate the Deed of Trust Act ("DTA"), codified at RCW
17
     61.24, *et al.*, by not complying with that statute in the conduct of the foreclosure sale, as more
18
19   particularly described above. Also as noted above, the Defendants have caused false and

20   misleading Assignment and other documents to be recorded in the records of King County,

21   Washington with the express purpose of misleading Mr. Buse and others regarding ownership

22   of the mortgage loan. Mr. Buse has established that he is likely to prevail on his claims

23   asserting that the trustee's sale was invalid because the Assignments and the Appointment of
24
     Successor Trustee were improperly executed, and that the alleged trustee does not have
25
26   authority to act under Washington law. Washington courts have held that where a trustee has

27

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 14

Ex. 2  pg

1   breached its fiduciary duty to the grantor, the subsequent trustee's sale is void. *See Cox v.*

2   *Helenius*, 103 Wn.2d 383, 388-89 (1985).  Here, Mr. Buse is trying to avoid having to

3   "unwind" a sale and attempt to prevent a miscarriage of justice.

4   **E.    Plaintiff is likely to prevail upon his claim for violations of the Real Estate**

5   **Settlement Procedures Act, 12 U.S.C. § 2605.**

6   As noted above, Mr. Buse did not receive truthful notices from Defendants GreenPoint,

7   MERS and/or United Mortgage regarding the first transfer of ownership and/or servicing rights

8   in August of 2005, which constitutes a violation of RESPA, 12 U.S.C. § 2605.  Further, when

9   Defendant UM Capital and/or whichever entity actually owned Mr. Buse's mortgage loan in

10  May 2006 purported to transfer that ownership and/or servicing rights to Defendant Block, Mr.

11  Buse did not receive any notice of the transfer at all, except for a telephone call from Defendant

12  Block wherein he extracted from Mr. Buse a modification of the mortgage loan.  The statute

13  provides that "Each servicer of any federally related mortgage loan shall notify the borrower in

14  writing of any assignment, sale or transfer of the servicing of the loan to any other person."  12

15  U.S.C. § 2605(b)(1).  Except for certain exceptions that do not apply here, RESPA requires that

16  the servicer which is transferring the servicing to another entity provide the "notice required

17  under paragraph (1) shall be made to the borrower not less than 15 days before the effective

18  date of transfer of the servicing of the mortgage loan (with respect to which such notice is

19  made)."  12 U.S.C. § 2605(b)(2)(B).  The notice is supposed to include the effect date of the

20  transfer; name, address and telephone number of the transferee servicer; toll-free or collect call

21  telephone number to make inquiries; date that the previous servicing company will stop

22  accepting payment; any information concerning the effect that the transfer will have on any

23  insurance in place; and that the transfer does not change the loan terms.  12 U.S.C. §

24

25

26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   2605(b)(3).  Similarly, the new servicer is required to provide notice not more than 15 days

2   after the transfer of the servicing and is required to provide the borrower with the same

3   information noted above.  12 U.S.C. § 2605(c)(1-3).

4           Violations of these provisions of RESPA allow for the borrower to recover his actual

5   damages, additional damages where there is evidence of a pattern and practice of

6   noncompliance in an amount not to exceed $1,000.00, and attorneys fees and costs incurred in

7

8   litigating the claims.  12 U.S.C. § 2605(f)(1)(A)(B) and 2605(f)(C).  Based upon the above, it is

9   clear that Mr. Buse is likely to prevail upon his claims for violations of RESPA.

10                          **VI.  CONCLUSION**

11          Based on the foregoing, Plaintiff Richard O. Buse hereby requests that this Court enter

12  a preliminary injunction or order temporarily restraining Defendants First American and/or

13
    ForeclosureLink from completing the foreclosure of the property located at 9424 Carnation
14
    Duvall Road NE, Carnation, Washington 98014.
15

16

17  DATED this 5th day of March 2008.

18                                              LAW OFFICES OF MELISSA A.
19                                              HUELSMAN, P.S.

20

21                                              By
                                                   Melissa A. Huelsman, WSBA #30935
22                                                 Attorney for Plaintiff Richard O. Buse

23

24

25

26

27
LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
Ex. 2 PENJUNCTION- 16

FILED

2008 MAR -6  AM 9: 33

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
### FOR THE COUNTY OF KING

Richard Buse

        Plaintiff

v.

First American Title Insurance Company, et al.
        Defendants

NO. 08-2-08093-5 SEA
NOTE FOR MOTION DOCKET
SEATTLE COURTHOUSE ONLY
(Clerk's Action Required )
(NTMTDK)

TO:    THE CLERK OF THE COURT and to all other parties listed on Page 2:
        PLEASE TAKE NOTICE that an issue of law in this case will be heard on the date below and the Clerk is
        directed to note this issue on the calendar checked below.
Calendar Date: _03/06/08_____ Day of Week: ___Thursday _____
Nature of Motion: __Motion for Preliminary Injunction__

| EX PARTE MOTIONS [LR 0.13] - Seattle in W325 |
| --- |
| The original of this notice must be filed at the Clerk's Office **not less than six court days** prior to requested hearing date. Motions are scheduled **9:00-11:30 a.m. & 1:30-3:45 p.m.** (except as indicated): |

[ ]Eviction Hearing Time: 9:00 a.m.           [ X]Other Ex Parte Motion. Hearing Time: ___1:30

The original of this notice must be filed at the Clerk's Office **not less than fourteen calendar days** prior to requested hearing date - *Deliver Working Papers (on accountings, contested or complex cases) to W325*. *Ex Parte hearings do not require confirmation.*

| [ ]Adoption Final Hrg. | Hearing Time: 9:00: _____ 1:30: _____ . (LR 93.04) |
| --- | --- |
| [ ]Family Law Final Decree | [ ]Atty to Appear Hearing Time: _____     [ ]No Attorney Hearing Time: 1:30 p.m. |
| [ ]Probate/Grdnshp | Hearing Time: 10:30 a.m.    (LR 98.04, 98.16, 98.20) |

| FAMILY LAW MOTIONS [LFLR 6] - Seattle in W291 |
| --- |
| The original of this notice must be filed at the Clerk's Office **not less than fourteen calendar days** prior to the requested hearing date, except for Summary Judgment Motions (to be filed with Clerk 28 days in advance). *Must confirm at 296-9340 (LFLR 6)*. Deliver Commissioner's copies to same room number 3 lines above. *SEE PAGE 2 FOR IMPORTANT NOTICE!* |

[ ] Domestic Motion (9:30)    [ ] Sealed File Motion (1:30)    [ ] Parenting Plan Modification (threshold 1:30)

| RALJ READINESS CALENDAR – Seattle |
| --- |
| The original of this notice must be filed at the Clerk's Office **not less than five court days** prior to the requested hearing date. You must bring this document and appear as scheduled.  See posted signs for room number and Judge the day of your hearing.    [ ] Fridays only (1:30 p.m.) |

**You may list an address that is not your residential address where you agree to accept legal documents.**
Sign: _____ Print/Type Name: _Melissa A. Huelsman_____
WSBA # _30935_____ (if attorney)  Attorney for: _Plaintiff_____
Address: _705 Second Avenue, Suite 501_____City, State, Zip _Seattle, WA 98104___
Telephone: _206-447-0103_____Date: __03/06/08_____
Party requesting hearing must file motion & affidavits separately along with this notice. List names, addresses and
telephone numbers of all parties requiring notice, (including Guardian Ad Litem) on page 2.  Serve a copy of this notice of
hearing, with motion documents, on all parties.  **DO NOT USE THIS FORM TO SET HEARINGS BEFORE CHIEF
CIVIL JUDGE OR THE ASSIGNED JUDGE FOR THE CASE.**

NOTE FOR MOTION DOCKET - SEATTLE COURTHOUSE ONLY                 Page 1
Sea 111306
www.metrokc.gov/kcscc/forms.htm
Ex. 2 pg-126-

| LIST NAMES AND SERVICE ADDRESSES FOR ALL NECESSARY PARTIES REQUIRING NOTICE |
|---|

Name__First Amereican Title Insurance Company
Service Address:_2101 4ᵗʰ Avenue, Ste 800
City, State, Zip  Seattle, WA 98104_____
WSBA#_____Atty For:_____
Telephone #:_____

Name_Foreclosurelink, Inc._____
Service Address:_5006 Sunrise Blvd., Suite 200
City, State, Zip  Fair Oaks, CA 95628_____
WSBA#_____Atty For:_____
Telephone #:_____

Name_____
Service Address:_____
City, State, Zip_____
WSBA#_____Atty For:_____
Telephone #:_____

Name_____
Service Address:_____
City, State, Zip_____
WSBA#_____Atty For:_____
Telephone #:_____

Name_____
Service Address:_____
City, State, Zip_____
WSBA#_____Atty For:_____
Telephone #:_____

Name_____
Service Address:_____
City, State, Zip_____
WSBA#_____Atty For:_____
Telephone #:_____

# IMPORTANT NOTICE REGARDING FAMILY LAW CASES

**IF YOU ARE THE PERSON SCHEDULING THIS MOTION**, you must confirm this hearing by calling the Family Law Motions Coordinators at 296-9340 between 2:30 p.m. and 4:15 p.m. (3) court days before the hearing and between 8:30 a.m. and 12:00 p.m. (noon) two (2) court days prior to the hearing.

**IF YOU OBJECT TO THIS MOTION**, under King County Superior Court Rule LFLR 5, your response and accompanying paperwork **must be in writing** and must be delivered, not later than by 12:00 p.m. (noon) of four (4) weekdays (not including court holidays) prior to the hearing to:

1) the Superior Court Clerk in Room E609 (the originals go to the Clerk);

2) all parties' attorneys (or directly to any party who does not have an attorney); and,

3)  the Family Law Motions Coordinators in Room W291.

Any statements of a party or witness must be signed, dated and sworn to under penalty of perjury, and must contain the state and city where signed.

The moving party's reply is due by noon two court days prior to the hearing.  Check-in time is **9:00 am** for morning hearings and **1:15 p.m.** for afternoon hearings.

THIS IS ONLY A PARTIAL SUMMARY OF THE LOCAL RULES.  ALL PARTIES ARE ADVISED TO CONSULT WITH AN ATTORNEY.

The **KING COUNTY COURTHOUSE** is in Seattle, Washington at 516 Third Avenue.

RECEIVED

2008 MAR -6  PM 3: 51

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA

FILED

2008 MAR -6  PM 4: 11

SUPERIOR COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RICHARD O. BUSE,                              )
                                             )    Case No. 08-2-08093-5 SEA
                      Plaintiff,             )
                                             )    MOTION FOR TEMPORARY
vs.                                          )    RESTRAINING ORDER AND
                                             )    PRELIMINARY INJUNCTION
FIRST AMERICAN TITLE INSURANCE               )
COMPANY; FORECLOSURELINK, INC.;              )
GREENPOINT MORTGAGE FUNDING,                 )
INC.; MORTGAGE ELECTRONIC                    )
REGISTRATION SYSTEMS, INC.;                  )
RESCOMM HOLDINGS NO. 2, LLC; UM              )
ACQUISITIONS, LLC; TOM BLOCK; and            )
Doe Defendants 1 through 20,                 )
                                             )
                      Defendants.            )
                                             )
_____)

## I. RELIEF REQUESTED

COME NOW Plaintiff RICHARD O. BUSE and moves this Court for a preliminary

injunction or, in the alternative, order temporarily restraining Defendants First American and

ForeclosureLink from completing the Trustee's Sale scheduled to take place on March 7, 2008

regarding real property located at 9424 Carnation-Duvall Road NE, Carnation, Washington

98014; legal description: PARCEL A, LOT 1, LOTS 5 & 6 STILLWATER VOL. 19, PLAT

11; Tax ID No. 042507-9022-05 in the records of King County, Washington.

*ORIGINAL*

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
Ex. 2 INJUNCTION- 1

## II. FACTS

Mr. Buse has been a victim of the mortgage lending mess created by Wall Street,

mortgage lenders and servicers, Defendant MERS and various and assorted other vultures who

are engaged in a pattern and business practices intended to deceive and mislead homeowners

regarding application of their payments and the amounts owing under notes and deeds of trust,

and upon the courts and county recorders offices regarding their ownership interest in the notes

and deeds of trust under which they are collecting fees and/or initiating foreclosures.

Mr. Buse has owned his home for many years. He applied for and obtained a home

equity line of credit loan from Defendant GreenPoint on June 16, 2004. In connection with the

making of that loan, Mr. Buse signed a Deed of Trust for Defendant GreenPoint, which was

recorded in the records of King County, Washington on July 29, 2004. A copy of the Deed of

Trust is attached to the Amended Complaint on file herein as Exhibit "!". *See*, Declaration of

Richard Buse filed concurrently herewith ("Buse Declaration"), ¶2. That Deed of Trust

("DOT") contained a false representation on its face when it represented that Defendant MERS

was a beneficiary under the DOT. Paragraph (E) states that "MERS is a separate corporation

that is acting solely as a Nominee for Lender and Lender's successors and assigns. MERS is

*the beneficiary under this Security Instrument.*" As will be demonstrated below, MERS is

NOT the beneficiary under the DOT, it never had ownership or possession of the Promissory

Note which is the obligation which is secured by the DOT, and MERS has never been entitled

to receive one cent of remuneration from Mr. Buse's loan proceeds. The statement that MERS

is the "Nominee" is nonsensical language which means nothing in a real estate transaction and

most certainly, MERS has never been nor is it now the beneficiary under the DOT. The

language is a sham.

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2 pg 122 MOTION FOR TRO AND/OR PRELIMINARY INJUNCTION- 2

1        After obtaining the loan in 2004, Mr. Buse made payments on the loan to Defendant

2 GreenPoint, which held itself out as the owner and/or servicer of the mortgage loan through

3 2005. On or about August 12, 2005, Mr. Buse received a notice that Defendant United

4 Mortgage was the new owner or servicer or assignee of the mortgage loan and instructing Mr.

5 Buse to thereafter make his payments to Defendant Rescomm as the servicer at an address in

6

7 Charlotte, North Carolina. However, the letter also stated that inquiries regarding the loan were

8 to be made to Defendant United Mortgage. Buse Dec., ¶3. A copy of the letter received by Mr.

9 Buse is attached to the Amended Complaint as Exhibit "2".

10        Ostensibly on September 30, 2005, a Torlina Strong, purportedly an Assistant Secretary

11 with Defendant MERS executed an Assignment of Mr. Buse's mortgage loan from Defendant

12 MERS (which was never the beneficiary under the DOT) to Defendant Rescomm. Ms.

13 Strong's signature is not dated, but the notary stamp is dated September 30, 2005 and the

14 notary asserts that Ms. Strong is "personally known" to her to be an Assistant Secretary of

15

16 Defendant MERS. A copy of the Assignment of Home Equity Line of Credit Deed of Trust is

17 attached to the Amended Complaint as Exhibit "3". On that same day, September 30, 2005, the

18 same notary notarized the signature of Ms. Strong, this time as the Assistant Manager of

19 Defendant Rescomm, purporting to assign Mr. Buse's DOT to Defendant UM. Again, the

20 notary represents that she has personal knowledge that Ms. Strong is an assistant manager of

21

22 Defendant Rescomm. A copy of this Assignment of Home Equity Line of Credit Deed of Trust

23 is attached to the Amended Complaint as Exhibit "4".

24        Then, ostensibly on May 24, 2006, Ms. Strong again signed another Assignment

25 document, but this time she held herself out as an Assistant Manager for Defendant UM

26 Acquisitions. The notary again asserts that she personally knows Ms. Strong as an Assistant

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2   MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 3    pg 139

1   Manager for Defendant UM Acquisitions, when it purports to transfer ownership of the security

2   interest in the DOT to Defendant UM Capital. A copy of this Assignment is attached to the

3   Amended Complaint as Exhibit "5". On the same day, May 24, 2006, Ms. Strong signed

4   another Assignment on behalf of Defendant UM Capital as an Assistant Manager transferring

5   ownership of the loan to Defendant Block, which was witnessed by the same notary. A copy of

6   the fourth Assignment is attached to the Amended Complaint as Exhibit "6". So to recap – Ms.

7   

8   Strong contends in these documents that she is an officer of four separate corporations or

9   limited liability companies – all of whom may transfer ownership interests in Mr. Buse's loan

10  among themselves upon nothing more than Ms. Strong's signature and when it is apparently

11  convenient for them.

12  

13      Mr. Buse did not receive formal written notice of the purported change in ownership

14  and/or servicing of the mortgage loan in 2006 from any of the defendants herein, including

15  Defendant Block, prior to the alleged transfer, as required by law. RESPA, 12 U.S.C. § 2601,

16  *et seq.* Instead, Mr. Buse was contacted by Defendant Block by telephone advising that he was

17  the new owner of the loan and that payments were now to be made to him. Buse Dec., ¶4.

18  Defendant Block also advised Mr. Buse that he was delinquent in his mortgage payments and

19  that he (Defendant Block) would be starting a foreclosure action and raising the interest rate

20  unless Mr. Buse signed a loan ~~mediation~~ modification agreement. Buse Dec., ¶5. Mr. Buse maintains that

21  

22  if the loan was in default at the time it was transferred and/or sold to Defendant Block, then it

23  was a violation of federal law, especially since Mr. Buse did not receive notice of the alleged

24  transfer in writing. *Id.*

25      Because of the alleged default on the loan, Defendant Block insisted that Mr. Buse

26  execute a loan modification agreement and presented it to him for signature almost

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2  p.129  MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 4

1   immediately after advising him by telephone that he owned the loan. This Modification

2   Agreement is dated **May 30, 2006**, just six days after the DOT was allegedly assigned to

3   Defendant Block in the first place and Mr. Buse believes within a day or two of his first being

4   advised that Defendant Block allegedly owned the loan by telephone. Believing that he had no

5   choice but to sign the loan modification agreement, Mr. Buse did so. Buse Dec., ¶6. A copy of

6   the Loan Modification Agreement is attached to the Amended Complaint as Exhibit "7".

7   Thereafter, Mr. Buse made the new and increased payments to Defendant Block, but was not

8   receiving proper credit for those payments. Mr. Buse did become delinquent on the loan in late

9   2006 due to financial problems related to the death of his mother. Buse Dec., ¶6.

10  

11          Defendant Block executed an Appointment of Successor Trustee document on January

12  4, 2007 appointing Defendant First American as the successor trustee, but the document's

13  return address was to Defendant ForeclosureLink. A copy of that Appointment of Successor

14  Trustee is attached to the Amended Complaint as Exhibit "8". It was not recorded until

15  January 9, 2007, which was the date that it became effective under Washington law.

16  Nevertheless, Defendant First American, by and through its alleged agent, Defendant

17  ForeclosureLink, served Mr. Buse with a Notice of Default document, at a time when neither of

18  those defendants had been properly appointed as the trustee.

19  

20          The Notice of Trustee's Sale initiated by Defendant ForeclosureLink as the ostensible

21  agent of Defendant First American was recorded on February 9, 2007 in the records of King

22  County, Washington. The only address listed for contact with the foreclosing trustee on that

23  document is an address in Fair Oaks, California. There is no Washington address on the

24  document for contacting the alleged trustee, Defendant First American. A copy of the Notice

25  of Trustee's Sale is attached to the Amended Complaint by reference as Exhibit "9". Mr. Buse

26  

27  

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   paid the alleged deficiencies due and owing to Defendant Block in April 2007 and Defendant

2   ForeclosureLink recorded a Notice of Discontinuance of Trustee's Sale in the records of King

3   County, Washington on April 26, 2007. A copy of the Notice of Discontinuance is attached to

4   the Amended Complaint as Exhibit "10".

5       Thereafter, Mr. Buse made payments to Defendant Block, but was not properly credited

6   for those payments. Defendant Block then contended again that Mr. Buse was delinquent. A

7

8   Notice of Default and later a Notice of Trustee's Sale were delivered to Mr. Buse in November

9   and December 2007. The Notice of Trustee's Sale signed by Defendant ForeclosureLink

10  ostensibly as an agent for Defendant First American was recorded in the records of King

11  County, Washington on December 4, 2007. A copy of the Notice of Trustee's Sale is attached

12  to the Amended Complaint as Exhibit "11". Again, nowhere on this document is there a

13  Washington address for contacting the trustee. Mr. Buse is behind in some of his payments to

14  Defendant Block, but he is uncertain about the correct amount and/or the reasons for the

15

16  alleged delinquencies since he maintains that Defendant Block is not properly crediting

17  payments. Buse Dec., ¶7. Further, Mr. Buse maintains that there have been numerous

18  improprieties in the servicing, sale and transfer and appointment of trustees in the handling of

19  his loan, and that the alleged trustee, Defendants First American and/or ForeclosureLink are not

20  properly appointed as foreclosing trustees nor acting in conformity with Washington law. For

21

22  these reasons, the defendants are liable for their actions, and the foreclosure sale should be

23  enjoined so that these issues may be addressed.

24      Regarding the issue of Defendant MERS' alleged status as a "beneficiary" under the

25  GreenPoint DOT, its own records demonstrate the falsity of the information on the document.

26  Documents taken from Defendant MERS' own website demonstrate that it is NOT the

27
                                              LAW OFFICES OF
                                              MELISSA A. HUELSMAN
                                              705 SECOND AVENUE, SUITE 501
                                              SEATTLE, WASHINGTON 98104
Ex. 2 pg. MOTION FOR TRO AND/OR PRELIMINARY    TELEPHONE: (206) 447-0103
          INJUNCTION- 6                        FACSIMILE: (206) 447-0115

1    beneficiary under any Deeds of Trust or mortgages.  Rather, Defendant MERS was created to

2    "streamline the mortgage process by using electronic commerce to eliminate paper.  Our

3    mission is to register every mortgage loan in the United States on the MERS System."  It also

4    notes that "MERS remains the nominal mortgagee no matter how many times servicing is

5    traded."  A copy of the documentation taken off of Defendant MERS' website is attached to the

6    Amended Complaint as Exhibit "12".  The other documentation attached from Defendant

7    MERS' website demonstrates that it is nothing more than a computer system designed by the

8    mortgage industry to protect them from having to pay recording fees so that the entity that

9    owns any mortgage loan is available.  Defendant MERS' entire business operation is premised

10   on the wholesale and everchanging sale or transfer of "servicing rights".  The documentation

11   demonstrates that Defendant MERS does not own the loans, rather they are acting as a

12   "nominee" for whomever might or might not say that it owns the loan at any given time.

13   Further, since Defendant MERS never obtains possession of the Promissory Note which

14   secures the Deed of Trust, it cannot ever have the right to enforce the terms of the Deed of

15   Trust, since that right is reserved to the owner and holder of the secured instrument, the

16   Promissory Note.  The information from Defendant MERS also demonstrates that falsity of the

17   purported assignments of the DOT from Defendant GreenPoint to Defendant Rescomm, from

18   Defendant Rescomm to Defendant UM, and from Defendant UM to Defendant Block.  The

19   same person signed the first three assignments, ostensibly as an officer of all three corporations.

20   The records of Defendants MERS' explains a portion of the source of the misrepresentations –

21   it purports to appoint unidentified and unspecified persons as "officers" of Defendant MERS

22   for the purpose of executing documents to effect transfers.  Mr. Buse maintains that this is a

23   sham act and that a corporation cannot create corporate officers in blank, without specificity

24

25

26

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY INJUNCTION- 7

1    and without identification.  Under this premise, Defendant MERS is contending that anyone

2    who works for some mortgage lender, servicing company, foreclosing trustee, title company,

3    etc. can become an officer of Defendant MERS without providing it with notification, without

4    getting its approval or even identifying the person to assign mortgages to new owners (even if

5    that new MERS officer is also an officer of the alleged new owner of the loan) or take whatever

6    actions the other companies desire!  Mr. Buse maintains that this is nothing more than a sham

7    transaction and approval and that therefore the first assignment from Defendant GreenPoint to

8    Defendant Rescomm (all signed off by the alleged employee of Defendant MERS) is invalid,

9    and that all subsequent Assignments and Appointment of Successor Trustees are also therefore

10   invalid.

11

12       2.12    Unfortunately the alleged trustee in this foreclosure, Defendants First American

13   and ForeclosureLink are likewise engaged in attempting to perpetrate a fraud upon Mr. Buse

14   and upon the citizens of King County, Washington by purporting to assume the role of

15   foreclosing trustee, in violation of Washington loan.  The actual foreclosing trustee is

16   Defendant ForeclosureLink, as evidenced by the fact that its employees are the only signers on

17   any of the foreclosure documents, and its contact information is the only information on any of

18   the foreclosure documents.  Defendant ForeclosureLink has attempted to evade the

19   requirements for acting as a trustee in the State of Washington by using Defendant First

20   American as a "front", since it is apparently a title insurance company licensed in the State of

21   Washington and therefore it would be able to act as a trustee.  RCW 61.24.010, a portion of the

22   Deed of Trust Act, specifies quite clearly who may act as a foreclosing trustee.  It states, in

23   pertinent part:

24

25       (1) The trustee of a deed of trust under this chapter shall be:

26

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 8

(a)    Any domestic corporation authorized to insure title to real property under the laws of this state, or its agents; or

(b)    Any title insurance company authorized to ensure title to real property under the laws of this state, or its agents; or . . .

RCW 61.24.010.

Defendant First American might qualify as a trustee under these provisions, but Defendant ForeclosureLink (which is not even licensed to engage in business in this state) is not so authorized.  RCW 61.24.010(a)(b) allows the "agent" of a title insurance company to act on its behalf, but "agents" for title insurance companies are defined under that licensing statute.  RCW 48.17, *et seq.*  Under RCW 48.17.010(15) a "title insurance agent" is defined as "a business entity licensed under the laws of this state and appointed by an authorized title insurance company to sell, solicit or negotiate insurance on behalf of the title insurance company."  Further, RCW 48.29.160 verifies that, "To be licensed as [an] agent of a title insurer, the applicant must own or lease and maintain a complete set of tract indexes of the county or counties in which such agent will do business."  There is no indication whatsoever that Defendant ForeclosureLink has such an index in King County, or even that it has any business address located in the State of Washington.  It is clear that Defendant ForeclosureLink -- the actual foreclosing trustee – is not authorized to act as a trustee in the State of Washington and its "agent" status with Defendant First American does not meet the criteria defined in the statute and is nothing more than a sham.  For all of these reasons, this foreclosure must be enjoined since the purported foreclosing trustee does not have the requisite authority under Washington law to act as the trustee.  Mr. Buse maintains that given the improprieties in this foreclosure proceeding, he should not be required to make any payment to secure the issuance of the Order, but in the event that the Court requires some payment, Mr. Buse has the ability to

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    deposit funds representing a legitimate portion of the amounts outstanding to the Court

2    Registry. However, he objects to the disbursal of those funds to any entity until there has been

3    a determination as to what entity owns his Promissory Note and Deed of Trust, and which

4    entity is entitled to payment of those proceeds.

5
6                              **III. ISSUE PRESENTED**

7        Under RCW 7.40.020 and RCW 61.24, *et seq.*, is Mr. Buse entitled to a preliminary

8    injunction or temporary restraining order when: (1) the Deed of Trust was never properly

9    assigned by the rightful owner, Defendant GreenPoint, to another entity; (2) Defendants First

10   American and ForeclosureLink were never propertly appointed as successor trustee by the

11   actual owner of the Promissory Note and Deed of Trust; and (3) Defendant ForeclosureLink is

12   not authorized to act as a foreclosing trustee in the State of Washington and the representations

13   by Defendant First American that Defendant ForeclosureLink is acting as its agent (since it

14   ostensibly would be authorized to be a trustee under Washington law) are entirely false and

15   inconsistent with the statutes, as noted above.

16
17                          **IV. EVIDENCE RELIED UPON**

18       This motion is based on the moving papers, Declaration of Richard O. Buse filed in

19   support of this Motion, as well as the pleadings and documents on file herein.

20
21                                **V. ARGUMENT**

22       Under RCW 7.40.020,

23               "When it appears by the complaint that the plaintiff is entitled to
                 the relief demanded and the relief...consists in restraining the
24               commission or continuance of some act, the commission or
                 continuance of which during the litigation would produce great
25               injury to the plaintiff...an injunction may be granted to restrain
                 such act or proceedings until the further order of the court, which
26               may afterwards be dissolved or modified upon motion."

27
LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2  p MOTION FOR TRO AND/OR PRELIMINARY
       INJUNCTION- 10

RCW 7.40.020. The Washington Supreme Court first addressed issuance of a preliminary injunction in *State ex rel. Miller v. Lichtenberg*, 4 Wn. 407, 411 (1892), and later clarified its position in *Blanchard v. Golden Age Brewing Co.*, 188 Wn. 396, 415 (1936). The *Blanchard* Court held that, "[T]he object and purpose [of a preliminary injunction] is to preserve and keep things in *statu quo* until otherwise ordered and to restrain an act which, if done, would be contrary to equity and good conscience." The Court provided further clarification in *Isthmian Steamship Co. v. National Marine Engineers' Beneficial Assoc.*, 41 Wn.2d 106, 117 (1952), holding that the moving party must show a "clear legal or equitable right and a well grounded fear of immediate invasion of that right." This standard was reaffirmed in *Tyler Pipe Industries, Inc. v. Dept. of Revenue*, 96 Wn.2d 785 (1982) and *Washington Federation of State Emp. v. State*, 99 Wn.2d 878 (1983). Thus, in order to obtain an injunction, a plaintiff must show that: (1) he has a clear legal or equitable right; (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him. *Kucera v. State, Dept. of Transportation*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000). Such criteria is evaluated by balancing the relative interests of the parties, and if appropriate, the interests of the public. *Id.* Ultimately, the decision to grant a preliminary injunction is within the sound discretion of the trial court, with such discretion to be exercised according to the circumstances of each particular case. *Washington Fed'n of State Employees v. State*, 99 Wn.2d 878, 887 (1983) (citations omitted).

Here, Mr. Buse is entitled to a preliminary injunction or an order temporarily restraining the completion of the illegal foreclosure commenced by Defendants First American and ForeclosureLink on behalf of the purported owner of the loan, Defendant Block. Mr. Buse is

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 11

1    likely to prevail upon the merits, as outlined more fully below, thereby establishing that these

2    Defendants did not have the proper authority to commence and complete a foreclosure sale as

3    regards this property nor are they authorized to conduct a sale in the State of Washington. If

4    the trustee's sale is not halted, Mr. Buse's rights may be terminated and he would be preventd

5    from litigating his valid claims regarding the propriety of the foreclosure process. It would

6    also extinguish Mr. Buse's right to reacquire the property as there are no redemption rights in a

7    non-judicial foreclosure.

8

9    I.    **Plaintiff is likely to prevail on the merits of this case and thus has established a
         clear legal right to the property.**

10

11          In order to determine whether a party has a clear legal or equitable right, the Court must

12   analyze the moving party's likelihood of prevailing on the merits. *Washington Fed'n of State*

13   *Employees*, 99 Wn.2d at 888 (*citing Tyler Pipe Indus. v. Department of Revenue*, 96 Wn.2d

14   785, 793 (1982)). For the reasons discussed below, the Plaintiff is likely to prevail on each of

15   her claims in this action, and thus has established a clear legal right.

16

17          A.    **Plaintiff is likely to prevail on his Consumer Protection Act claim.**

18          A plaintiff who alleges a violation of the Washington Consumer Protection Act must

19   prove five elements: "(1) an unfair or deceptive act or practice; (2) occurring in trade or

20   commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property;

21   (5) causation." *Hangman Ridge Training Stables v. Safeco Title Ins. Co*, 105 Wn.2d 778, 780,

22   (1986).

23          The Defendants committed unfair and deceptive acts and practices, as described in great

24   detail in the Facts portion of this motion and the Amended Complaint. They acted improperly

25   to purport to transfer ownership and/or servicing rights in the loan from inception and the

26

27                                                        LAW OFFICES OF
                                                      **MELISSA A. HUELSMAN**
                                                      705 SECOND AVENUE, SUITE 501
                                                      SEATTLE, WASHINGTON 98104
                                                      TELEPHONE: (206) 447-0103
                                                      FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 12

1   signing of multiple Assignments by the same person on behalf of four different companies

2   demonstrates the untruthfulness of her representations and those of the companies upon whose

3   behalf she acted. Further, the purported appointment of Defendant ForeclosureLink as the

4   trustee is in direct violation of the requirements of the Washington Deed of Trust Act and

5   statutes regulating the business of title insurance companies, as described more particularly

6   above. These Defendants trusted that Mr. Buse would not notice the improprieties in the

7   

8   alleged Assignment process and that he would not know that Defendant ForeclosureLink has

9   no authority to act as a trustee in the State of Washington. Mr. Buse alleges that their purpose

10  was to intentionally avoid the requirements of Washington law in order to complete an illegal

11  and wrongful foreclosure in order to incur fees and expenses which would inure to their benefit.

12  **B.    Plaintiff is likely to prevail on his infliction of emotional distress claim.**

13  "The tort of outrage[1] requires the proof of three elements:  (1) extreme and outrageous

14  conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to

15  

16  plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003) (citation

17  omitted). "Any claim for intentional infliction of emotional distress must be predicated on

18  behavior so outrageous in character, and so extreme in degree, as to go beyond all possible

19  bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

20  community." *Id.* at 196 (citations omitted).

21  The Defendants in this case knowingly exploited a financially and emotionally distressed man

22  

23  in the manner described more particularly above, including Defendant Block's forced efforts to

24  require Mr. Buse to modify his loan terms within days of a sham transfer of the loan to

25  

26  ---

[1] "'Outrage' and 'intentional infliction of emotional distress' are synonyms for the same tort." <u>Kloepfel v. Bokor</u>, 149 Wn.2d 192, 194 n.1, 66 P.3d 630 (2003) (citation omitted)

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2  p. MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 13

1   Defendant Block, and without any of the written notices required under RESPA, 12 U.S.C. §

2   2605.

3       **C.      Plaintiff is Likely to Prevail Upon His Slander of Title Claims.**

4       The Defendants have improperly attempted to sell Mr. Buse' home through a

5   foreclosure sale and they have recorded and/or caused to be recorded documents with the King

6   County Recorder's Office which contain false statements and representations, as outlined more

7

8   particularly above. Therefore, these Defendants have slandered title to Mr. Buse's real

9   property, making it likely that he will prevail upon this claim.

10      **D.      Plaintiff is likely to prevail upon his wrongful foreclosure and breach of
        fiduciary duty and/or quasi-fiduciary duty claims.**

11

12      The Defendants herein were required to comply with the terms of the Deed of Trust

13   contract entered into between themselves and/or the persons or entities on whose behalf they

14   were acting. The Defendants were also required not to breach their fiduciary and/or quasi-

15   fiduciary duties to Mr. Buse by wrongfully and illegally attempting to conduct an improper

16   foreclosure sale. The Defendants did violate the Deed of Trust Act ("DTA"), codified at RCW

17

18   61.24, *et al.,* by not complying with that statute in the conduct of the foreclosure sale, as more

19   particularly described above. Also as noted above, the Defendants have caused false and

20   misleading Assignment and other documents to be recorded in the records of King County,

21   Washington with the express purpose of misleading Mr. Buse and others regarding ownership

22   of the mortgage loan. Mr. Buse has established that he is likely to prevail on his claims

23   asserting that the trustee's sale was invalid because the Assignments and the Appointment of

24

25   Successor Trustee were improperly executed, and that the alleged trustee does not have

26   authority to act under Washington law. Washington courts have held that where a trustee has

27

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

breached its fiduciary duty to the grantor, the subsequent trustee's sale is void. *See Cox v. Helenius*, 103 Wn.2d 383, 388-89 (1985). Here, Mr. Buse is trying to avoid having to "unwind" a sale and attempt to prevent a miscarriage of justice.

 **E.** **Plaintiff is likely to prevail upon his claim for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605.**

 As noted above, Mr. Buse did not receive truthful notices from Defendants GreenPoint, MERS and/or United Mortgage regarding the first transfer of ownership and/or servicing rights in August of 2005, which constitutes a violation of RESPA, 12 U.S.C. § 2605. Further, when Defendant UM Capital and/or whichever entity actually owned Mr. Buse's mortgage loan in May 2006 purported to transfer that ownership and/or servicing rights to Defendant Block, Mr. Buse did not receive any notice of the transfer at all, except for a telephone call from Defendant Block wherein he extracted from Mr. Buse a modification of the mortgage loan. The statute provides that "Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1). Except for certain exceptions that do not apply here, RESPA requires that the servicer which is transferring the servicing to another entity provide the "notice required under paragraph (1) shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made)." 12 U.S.C. § 2605(b)(2)(B). The notice is supposed to include the effect date of the transfer; name, address and telephone number of the transferee servicer; toll-free or collect call telephone number to make inquiries; date that the previous servicing company will stop accepting payment; any information concerning the effect that the transfer will have on any insurance in place; and that the transfer does not change the loan terms. 12 U.S.C. §

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    2605(b)(3).  Similarly, the new servicer is required to provide notice not more than 15 days

2    after the transfer of the servicing and is required to provide the borrower with the same

3    information noted above.  12 U.S.C. § 2605(c)(1-3).

4         Violations of these provisions of RESPA allow for the borrower to recover his actual

5    damages, additional damages where there is evidence of a pattern and practice of

6    noncompliance in an amount not to exceed $1,000.00, and attorneys fees and costs incurred in

7

8    litigating the claims.  12 U.S.C. § 2605(f)(1)(A)(B) and 2605(f)(C).  Based upon the above, it is

9    clear that Mr. Buse is likely to prevail upon his claims for violations of RESPA.

10                                 **VI.  CONCLUSION**

11        Based on the foregoing, Plaintiff Richard O. Buse hereby requests that this Court enter

12   a preliminary injunction or order temporarily restraining Defendants First American and/or

13   ForeclosureLink from completing the foreclosure of the property located at 9424 Carnation

14   Duvall Road NE, Carnation, Washington 98014.

15

16

17   DATED this 5th day of March 2008.

18
                                      LAW OFFICES OF MELISSA A.
19                                    HUELSMAN, P.S.

20

21   By
                                      Melissa A. Huelsman, WSBA #30935
22                                    Attorney for Plaintiff Richard O. Buse

23

24

25

26

27
LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2   MOTION FOR TRO AND/OR PRELIMINARY
         INJUNCTION- 16

RECEIVED
In King County Superior Court Clerk's Office
MAR - 6 2008
Cashier Section
Superior Court Clerk

RECEIVED
2008 MAR -6  PM 3:51
KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA

FILED
2008 MAR -6  PM 4:11
SUPERIOR COUNTY
SEATTLE. WA
COURT CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RICHARD O. BUSE,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY; FORECLOSURELINK, INC.; GREENPOINT MORTGAGE FUNDING, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; RESCOMM HOLDINGS NO. 2, LLC; UM ACQUISITIONS, LLC; TOM BLOCK; and Doe Defendants 1 through 20,<br><br>Defendants. | Case No. 08-2-08093-5 SEA<br><br>DECLARATION OF RICHARD O. BUSE IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION |

I,      Richard O. Buse, declare as follows:

1.      I am the plaintiff herein and I have personal knowledge of the facts contained herein.  If called upon to testify to the truth thereof, I could and would do.

2.      I have owned my home for many years.  I applied for and obtained a home equity line of credit loan from Defendant GreenPoint on June 16, 2004.  In connection with the making of that loan, I signed a Deed of Trust for Defendant GreenPoint, which was recorded in the records of King County, Washington on July 29, 2004.  A copy of the Deed of Trust is

**ORIGINAL**

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1    attached to the Amended Complaint on file herein as Exhibit "!".

2        3.      After obtaining the loan in 2004, I made payments on the loan to Defendant

3    GreenPoint, which held itself out as the owner and/or servicer of the mortgage loan through

4
     2005. On or about August 12, 2005, I received a notice that Defendant United Mortgage was
5
     the new owner or servicer or assignee of the mortgage loan and instructing me to thereafter
6
7    make my payments to Defendant Rescomm as the servicer at an address in Charlotte, North

8    Carolina. However, the letter also stated that inquiries regarding the loan were to be made to

9    Defendant United Mortgage. So, I mailed my payments after August 2005 to the address in

10   North Carolina.

11       4.      I did not receive formal written notice of the purported change in ownership

12   and/or servicing of the mortgage loan in 2006 from any of the defendants herein, including

13
     Defendant Block, prior to the alleged transfer. Instead, I was contacted by Defendant Block by
14
15   telephone advising that he was the new owner of the loan and that payments were now to be

16   made to him.

17       5.      Defendant Block also advised me that I was delinquent in my mortgage

18   payments and that he (Defendant Block) would be starting a foreclosure action and raising the

19   interest rate unless I signed a loan medication agreement.
20
21       6.      Because of the alleged default on the loan, Defendant Block insisted that I

22   execute a loan modification agreement and presented it to me for signature almost immediately

23   after advising me by telephone that he owned the loan. This Modification Agreement is dated

24   May 30, 2006, just six days after the DOT was allegedly assigned to Defendant Block in the

25   first place and I believe that I received the notice regarding the modification agreement within a

26   day or two of my first being advised that Defendant Block allegedly owned the loan by

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2    DECLARATION OF RICHARD O. BUSE IN SUPPORT OF
         MOTION FOR TRO AND/OR PRELIM. INJ. - 2

1   telephone. Believing that I had no choice but to sign the loan modification agreement or I

2   would lose my house, I did so. Thereafter, I made the new and increased payments to

3   Defendant Block, but was not receiving proper credit for those payments. I did become

4   delinquent on the loan in late 2006 due to financial problems related to the death of my mother.

5

6       7.      In early 2007 I did receive a Notice of Default document and began to try to

7   prevent that foreclosure. Therefore, I paid the alleged deficiencies due and owing to Defendant

8   Block in April 2007, even though I believe that some of charges were greatly inflated.

9   However, I did not want to lose my home. Thereafter, I made payments to Defendant Block,

10  but was not properly credited for those payments. Defendant Block then contended again that I

11  was delinquent and started the instant foreclosure sale. I am behind on some of my payments

12  to Defendant Block, but I am uncertain about the correct amount and/or the reasons for the

13  alleged delinquencies because Defendant Block is not properly crediting payments and he

14  forced me to sign the modification agreement, which I think is inaccurate.

15

16      This Declaration made under penalty of perjury under the laws of the State of

17  Washington this 5th day of March, 2008 at Carnation, Washington.

18

19                                          Richard O. Buse

20

21

22

23

24

25

26

27

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

DECLARATION OF RICHARD O. BUSE IN SUPPORT OF
MOTION FOR TRO AND/OR PRELIM. INJ. - 3

Ex. 2   pg. 131

KING CO SUPERIOR CT
BARBARA MINER
Director & Superior CT Clerk
Seattle WA

08-2-08093-5

Time 08:53
Docket-Code $TRB
$2,000.00

Acct. Date 03/07/2008
Tran-Code 3100

Rcpt. Date 03/07/2008
Receipt/Item # 2008-07-037797/01
Cashier: TDL

Paid By: BUSE, RICHARD O.
Transaction Amount:

**FILED**

08  MAR -7  AM 8: 55

KING COUNTY.
SUPERIOR COURT CLERK
SEATTLE. WA.

## IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
### COUNTY OF KING

Richard O. Buse

Vs

First American Title
Insurance Company, et al

NO: 08-2-08093-5
SEA

CASH BOND
($BR)

Amount: 2000.00

The validation above indicates the receipt of a cash bond for the above referenced case.

### PERSON POSTING BOND PLEASE READ:

The bond may be exonerated and returned only upon Court order. You or an attorney must prepare the order and present it to the Court. If you are the bond payer, your name must be indicated on the order as the recipient of the bond money. The Court may order court costs or fees to be paid from bond proceeds. A $10.00 Trust Account Service fee will be deducted from the bond amount upon return.

**PERSON POSTING BOND MONEY**: (*Please print*)

Name: Richard O Buse

Address: 9424 Carnation Duvall Rd NE

City / State / Zipcode: Carnation, WA 98014

Signature: _____

L:\forms\cashiers\fill in forms rev/cash bonds
Rev 12/06

FILED

2008 MAR 10  AM 10: 52

SUPERIOR COURT CLERK
SEATTLE, WA.

## SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

RICHARD O. BUSE,

                Plaintiff,

      v.

FIRST AMERICAN TITLE INSURANCE
COMPANY, et al,

                Defendants.

NO. 08-2-08093-5 SEA

AFFIDAVIT OF SERVICE

State of Washington    )
County of King S/S     )

      The undersigned, being first duly sworn, on oath deposes and says:

      That the undersigned is now and at all times mentioned herein was a citizen of the United States and resident of the State of Washington, over the age of eighteen years, not a party to or interested in the above entitled action, and competent to be a witness therein.

      That on **March 6, 2008**, at **9:21 AM**, at the address of **2101 4th Avenue, Suite 800,** Seattle, Washington, affiant duly served **Summons, Amended Complaint, Order Setting Civil Case Schedule, Note for Motion Docket, Motion for Temporary Restraining Order and Declaration of Richard O. Buse** in the above entitled action upon **First American Tile Insurance Company** by then and there personally delivering true and correct copies thereof into the hands of and leaving same with **Theresa Beatty** (35, white, female, 5'6",heavy build) Assistant Vice President.

|  |  | Each | Total |
|---|---|---|---|
| Service | 1 | $15.00 | $15.00 |
| Rush Mileage/Trips | 1 | $16.00 | $16.00 |
| Affidavit | 1 | $15.00 | $15.00 |
| Miscellaneous |  | $0.00 | $0.00 |
| Miscellaneous |  | $0.00 | $0.00 |
|  |  |  | **$46.00** |

G. Garber-Pearson    King County #9402780
Subscribed and sworn to me this
7th day of March, 2008.

Peter A. Valente- Notary Public in and for the
State of Washington, residing at Seattle.
Commission expires June 7, 2008

SEATTLE LEGAL MESSENGER SERVICES, LLC
711 6TH AVENUE NORTH #100
SEATTLE, WA 98109
(206) 443-0885

AFFIDAVIT OF SERVICE - 1

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RICHARD O. BUSE,

           Plaintiff,

vs.

FIRST AMERICAN TITLE INSURANCE
COMPANY; FORECLOSURELINK, INC.;
GREENPOINT MORTGAGE FUNDING,
INC.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
RESCOMM HOLDINGS NO. 2, LLC; UM
ACQUISITIONS, LLC; TOM BLOCK; and
Doe Defendants 1 through 20,

           Defendants.

Case No.  08-2-08093-5 SEA

SUMMONS

THE STATE OF WASHINGTON,  ·   TO:   FIRST AMERICAN TITLE INSURANCE
COMPANY; FORECLOSURELINK, INC.; GREENPOINT MORTGAGE FUNDING, INC.;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; RESCOMM HOLDINGS
NO. 2, LLC; UM ACQUISITIONS, LLC; TOM BLOCK; and Doe Defendants 1 through 20,

      TO THE DEFENDANTS: A lawsuit has been started against you in the above-entitled

court by Plaintiff RICHARD O. BUSE.  Plaintiff's claim is stated in the written Complaint, a

copy of which is served upon you with this Summons.

      In order to defend against this lawsuit, you must respond to the Complaint by stating

your defense in writing, and by serving a copy upon the person signing this summons within 20

days after the service of this summons, excluding the day of service, or a default judgment may

be entered against you without notice.  A default judgment is one where plaintiff is entitled to

SUMMONS - 1

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2  pg-149-

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RICHARD O. BUSE,                                              )
                                                             )   Case No. 08-2-08093-5 SEA
                        Plaintiff,                           )
                                                             )   **AMENDED** COMPLAINT FOR
vs.                                                          )   TEMPORARY RESTRAINING ORDER
                                                             )   AND PERMANENT INJUNCTION;
FIRST AMERICAN TITLE INSURANCE                               )   WRONGFUL FORECLOSURE;
COMPANY; FORECLOSURELINK, INC.;                              )   BREACH OF CONTRACT,
GREENPOINT MORTGAGE FUNDING,                                 )   INTENTIONAL INFLICTION OF
INC.; MORTGAGE ELECTRONIC                                    )   EMOTIONAL DISTRESS; SLANDER
REGISTRATION SYSTEMS, INC.;                                  )   OF TITLE; BREACH OF FIDUCIARY
RESCOMM HOLDINGS NO. 2, LLC; UM                              )   DUTY; BREACH OF QUASI-
ACQUISITIONS, LLC; TOM BLOCK; and                            )   FIDUCIARY DUTY; VIOLATION OF
Doe Defendants 1 through 20,                                 )   THE CONSUMER PROTECTION ACT,
                                                             )   RCW 19.86, *et seq.*; VIOLATIONS OF
                        Defendants.                          )   RESPA, 12 U.S.C. § 2603, *et seq.*
                                                             )

        Comes now Plaintiff, Richard O. Buse, by and through his attorney of record, and for
his Complaint against the Defendants hereby complains and alleges as follows:

## I. **PARTIES**

        1.1     Richard O. Buse ("Mr. Buse") is a resident of King County, Washington.

        1.2     Defendant FIRST AMERICAN TITLE INSURANCE COMPANY ("First

American") is an unknown type of business operating in the State of Washington presumably

as a title insurance company, but which is not registered with the Washington Secretary of State

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 1

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2 p. 150

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
# IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RICHARD BUSE | NO. 08-2-08093-5    SEA |
| | Order Setting Civil Case Schedule (*ORSCS) |
| Plaintiff(s) | |
| vs | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, ET AL | ASSIGNED JUDGE  Washington       42 |
| | FILE DATE:                    03/05/2008 |
| Defendant(s) | TRIAL DATE:              08/17/2009 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule** (*Schedule*) on the Defendant(s) along with the *Summons and Complaint/Petition*. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the *Summons and Complaint/Petition* or (2) service of the Defendant's first response to the *Complaint/Petition*, whether that response is a *Notice of Appearance*, a response, or a Civil Rule 12 (CR 12) motion. The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

Melissa A. Huelsman _____    _Melessa A. Huelsman_____

Print Name                                         Sign Name

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

Richard Buse
         Plaintiff

v.

First American Title Insurance Company, et al.
         Defendants

NO. 08-2-08093-5 SEA
NOTE FOR MOTION DOCKET
SEATTLE COURTHOUSE ONLY
(Clerk's Action Required )
(NTMTDK)

TO:    THE CLERK OF THE COURT and to all other parties listed on Page 2:
        PLEASE TAKE NOTICE that an issue of law in this case will be heard on the date below and the Clerk is
        directed to note this issue on the calendar checked below.

Calendar Date: 03/06/08_____    Day of Week:___Thursday_____

Nature of Motion:   Motion for Preliminary Injunction

**EX PARTE MOTIONS [LR 0.13] - Seattle in W325**

The original of this notice must be filed at the Clerk's Office **not less than six court days** prior to requested hearing date.
Motions are scheduled 9:00-11:30 a.m. & 1:30-3:45 p.m. (except as indicated):

[ ]Eviction Hearing Time: 9:00 a.m.        [X]Other Ex Parte Motion. Hearing Time: __1:30

The original of this notice must be filed at the Clerk's Office *not less than fourteen calendar days* prior to requested
hearing date - *Deliver Working Papers (on accountings, contested or complex cases) to W325. Ex Parte hearings do not require
confirmation.*

| [ ]Adoption Final Hrg. | Hearing Time: 9:00: | 1:30: | (LR 93.04) |
| [ ]Family Law Final Decree | [ ]Atty to Appear Hearing Time:_____ | | [ ]No Attorney Hearing Time: 1:30 p.m. |
| [ ]Probate/Grdnship | Hearing Time: 10:30 a.m. | (LR 98.04, 98.16, 98.20) | |

**FAMILY LAW MOTIONS [LFLR 6] - Seattle in W291**

The original of this notice must be filed at the Clerk's Office *not less than fourteen calendar days* prior to the requested
hearing date, except for Summary Judgment Motions (to be filed with Clerk 28 days in advance). *Must confirm at 296-9340
(LFLR 6).* Deliver Commissioner's copies to same room number 3 lines above. *SEE PAGE 2 FOR IMPORTANT NOTICE!*

[ ] Domestic Motion (9:30)    [ ] Sealed File Motion (1:30)    [ ] Parenting Plan Modification (threshold 1:30)

**RALJ READINESS CALENDAR – Seattle**

The original of this notice must be filed at the Clerk's Office **not less than five court days** prior to the requested hearing date.
You must bring this document and appear as scheduled.  See posted signs for room number and Judge the day of your
hearing.    [ ] Fridays only (1:30 p.m.)

You may list an address that is not your residential address where you agree to accept legal documents.

Sign:_____Print/Type Name: _Melissa A. Huelsman_____

WSBA # _30935_____ (if attorney)  Attorney for: _Plaintiff_____

Address: _705 Second Avenue, Suite 501_____City, State, Zip _Seattle, WA 98104

Telephone: _206-447-0103_____Date: __03/06/08_____

Party requesting hearing must file motion & affidavits separately along with this notice. List names, addresses and
telephone numbers of all parties requiring notice, (including Guardian Ad Litem) on page 2. Serve a copy of this notice of
hearing, with motion documents, on all parties.  **DO NOT USE THIS FORM TO SET HEARINGS BEFORE CHIEF
CIVIL JUDGE OR THE ASSIGNED JUDGE FOR THE CASE.**

NOTE FOR MOTION DOCKET - SEATTLE COURTHOUSE ONLY        Page 1
Sea 111306
Ex. @ www.metrokc.gov/kcscc/forms.htm

1
2
3
4
5
6
7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

8
9

RICHARD O. BUSE,

10                          Plaintiff,

11      vs.

12      FIRST AMERICAN TITLE INSURANCE
13      COMPANY; FORECLOSURELINK, INC.;
        GREENPOINT MORTGAGE FUNDING,
14      INC.; MORTGAGE ELECTRONIC
        REGISTRATION SYSTEMS, INC.;
15      RESCOMM HOLDINGS NO. 2, LLC; UM
        ACQUISITIONS, LLC; TOM BLOCK; and
16      Doe Defendants 1 through 20,

17                          Defendants.

18

Case No. 08-2-08093-5 SEA

MOTION FOR TEMPORARY
RESTRAINING ORDER AND
PERMANENT INJUNCTION

19

## I. RELIEF REQUESTED

20
21      COME NOW Plaintiff RICHARD O. BUSE and moves this Court for a preliminary

22      injunction or, in the alternative, order temporarily restraining Defendants First American and

23      ForeclosureLink from completing the Trustee's Sale scheduled to take place on March 7, 2008

24      regarding real property located at 9424 Carnation-Duvall Road NE, Carnation, Washington

25      98014; legal description: PARCEL A, LOT 1, LOTS 5 & 6 STILLWATER VOL. 19, PLAT

26      11; Tax ID No. 042507-9022-05 in the records of King County, Washington.

27

LAW OFFICES OF
**MELISSA A. HUELSMAN**
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2  pg. 051 MOTION FOR TRO AND/OR PRELIMINARY
         INJUNCTION- 1

1
2
3
4
5
6
7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

8
9

RICHARD O. BUSE,

10                        Plaintiff,

11    vs.

12
FIRST AMERICAN TITLE INSURANCE
13    COMPANY; FORECLOSURELINK, INC.;
GREENPOINT MORTGAGE FUNDING,
14    INC.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
15    RESCOMM HOLDINGS NO. 2, LLC; UM
ACQUISITIONS, LLC; TOM BLOCK; and
16    Doe Defendants 1 through 20,

17                        Defendants.

18

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 08-2-08093-5 SEA

DECLARATION OF RICHARD O.
BUSE IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER
AND PERMANENT INJUNCTION

19         I,       Richard O. Buse, declare as follows:

20         1.       I am the plaintiff herein and I have personal knowledge of the facts contained

21    herein.  If called upon to testify to the truth thereof, I could and would do.

22         2.       I have owned my home for many years.  I applied for and obtained a home

23    equity line of credit loan from Defendant GreenPoint on June 16, 2004.  In connection with the

24    making of that loan, I signed a Deed of Trust for Defendant GreenPoint, which was recorded in

25

26    the records of King County, Washington on July 29, 2004.  A copy of the Deed of Trust is

27

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

Ex. 2   pg 134

DECLARATION OF RICHARD O. BUSE IN SUPPORT OF
MOTION FOR TRO AND/OR PRELIM. INJ. - 1

RECEIVED

2008 MAR 12  AM 9: 02

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA

FILED

2008 MAR 12  AM 9: 29

SUPERIOR COURT CLERK
SEATTLE. WA.

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
### FOR THE COUNTY OF KING

RICHARD O. BUSE,

Plaintiff,

vs.

FIRST AMERICAN TITLE INSURANCE COMPANY;
FORECLOSURELINK, INC.; GREENPOINT
MORTGAGE FUNDING, INC.; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.;
RESCOMM HOLDINGS NO. 2, LLC; UM
ACQUISITIONS, LLC; TOM BLOCK; and Doe
Defendants 1 through 20,

Defendants.

NO. 08-2-08093-5 SEA
**NOTICE FOR HEARING**
**SEATTLE COURTHOUSE ONLY**
(Clerk's Action Required ) (NTHG)

TO:     THE CLERK OF THE COURT and to all other parties listed on Page 2:
     PLEASE TAKE NOTICE that an issue of law in this case will be heard on the date below and the Clerk is directed to note this issue on the calendar checked below.

Calendar Date:__March 14th 2008_____        Day of Week:_Friday_____

Nature of Motion:   Motion for Preliminary Injunction

---

**CASES ASSIGNED TO INDIVIDUAL JUDGES – Seattle**
If oral argument on the motion is allowed (LR 7(b)(2)), contact staff of assigned judge to schedule date and time before filing this notice. Working Papers: The *judge's name*, date and time of hearing *must* be noted in the upper right corner of the Judge's copy. *Deliver Judge's copies to Judges' Mailroom at C203.*

[ ] Without oral argument (Mon - Fri)            [X] With oral argument Hearing
Date/Time:__03/14/08  11 a.m._____
Judge's Name:  Washington_____            Trial Date:   08/17/09

**CHIEF CRIMINAL DEPARTMENT - Seattle in E1201**
[ ] Bond Forfeiture  3:15 pm, 2nd Thur of each month
[ ] Certificates of Rehabilitation- Weapon Possession (**Convictions from Limited Jurisdiction Courts**)
3:30 First Tues of each month

---

---

**CHIEF CIVIL DEPARTMENT – Seattle – (Please report to W1060 for assignment)**
*Deliver working copies to Judges' Mailroom, Room C203. In upper right corner of papers write "Chief Civil Department" or judge's name and date of hearing*

| | |
|---|---|
| [ ]Extraordinary Writs (Show Cause Hearing) (LR 98.40)  1:30 p.m. Tues/Wed -report to Room W1060 | |
| [ ]Supplemental Proceedings | **Non-Assigned Cases:** |
|    (1:30 pm Tues/Wed)(LR 69) | [ ] Non-Dispositive Motions M-F (without oral argument). |
| [ ]DOL Stays 1:30 pm Tues/Wed | [ ] Dispositive Motions and Revisions (1:30 pm Tues/Wed) |
| [ ]Motions to Consolidate with multiple judges assigned | [ ] Certificates of Rehabilitation (**Employment**) 1:30 pm |
|   (without oral argument) (LR 40(a)(4)) | Tues/Wed (LR 40(2)(B)) |

You may list an address that is not your residential address where you agree to accept legal documents.
Sign:_____ Print/Type Name: __Melissa A. Huelsman_____
WSBA # _30935_____ (if attorney)  Attorney for: __Plaintiff_____
Address: _705 Second Avenue, Suite 501_____City, State, Zip _Seattle, WA 98104_
Telephone: _206-447-0103_____Date: _03/06/08_____

# DO NOT USE THIS FORM FOR FAMILY LAW, EX PARTE OR RALJ MOTIONS.

---

| LIST NAMES AND SERVICE ADDRESSES FOR ALL NECESSARY PARTIES REQUIRING NOTICE |
|---|

Name__Greenpoint Mortgage Funding
Service Address:__6500 Harbor Heights PKWY,
Ste 400
City, State, Zip_Mukilteo, WA 98275_____
WSBA#_____Atty For:_____
Telephone #: _____
Name_Tom Block _____
Service Address:_7316 Ogelsby Ave_____
City, State, Zip_Los Angeles, CA 90045-1357
WSBA#_____Atty For:_____
Telephone #: _____

Name__First American Title insurance Company
Service Address:_2101 Fourth Avenue, Ste 800
City, State, Zip Seattle, WA 98121_____
WSBA#_____Atty For:_____
Telephone #: _____

Name_United Mortgage & Loan Investment, LLC,
RESCOMM HOLDINGS NO. 2, LLC; UM
ACQUISITIONS, LLC
Service Address: 6701 Carmel Road, Ste 110
City, State, Zip_Charolette, NC 28226_____
WSBA#_____Atty For:_____
Telephone #: _____

Name_MERS_____
Service Address:_ 1595 Spring Hill Rd, Suite 310
City, State, Zip_Vienna, VA 22182
WSBA#_____Atty For:_____

Name_Foreclosurelink, Inc._____
Service Address: 4401 Hazel Avenue, Suite 225
City, State, Zip_Fair Oaks, CA 95628_____
WSBA#_____Atty For:_____

---

**NOTICE FOR HEARING - Seattle Courthouse Only**           Page 2
ICSEA031407
www.metrokc.gov/kcscc/forms.htm

Ex. 2 pg-156-

## IMPORTANT NOTICE REGARDING CASES

Party requesting hearing must file motion & affidavits separately along with this notice. List the names, addresses and telephone numbers of all parties requiring notice (including GAL) on this page. Serve a copy of this notice, with motion documents, on all parties.

The original must be filed at the Clerk's Office not less than six court days prior to requested hearing date, except for Summary Judgment Motions (to be filed with Clerk 28 days in advance).

THIS IS ONLY A PARTIAL SUMMARY OF THE LOCAL RULES AND ALL PARTIES ARE ADVISED TO CONSULT WITH AN ATTORNEY.

The SEATTLE COURTHOUSE is in Seattle, Washington at 516 Third Avenue. The Clerk's Office is on the sixth floor, room E609. The Judges' Mailroom is Room C203.

FILED

2008 MAR 12   AM 10: 23

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA.

# SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

RICHARD O. BUSE

                    Plaintiff,

            v.

FIRST AMERICAN TITLE INSURANCE
COMPANY, et al,

                    Defendants.

NO. 08-2-08093-5 SEA

AFFIDAVIT OF SERVICE

State of Washington      )
County of King S/S       )

The undersigned, being first duly sworn, on oath deposes and says:

That the undersigned is now and at all times mentioned herein was a citizen of the United States and resident of the State of Washington, over the age of eighteen years, not a party to or interested in the above entitled action, and competent to be a witness therein.

That on **March 10, 2008**, at **12:10 PM**, at the address of **6500 Harbour Heights Parkway, Suite 400**, Mukilteo, Washington, affiant duly served **Summons, Amended Complaint, Order Setting Case Schedule, Declaration of Buse, (Proposed) Order, Motion** and **Notice for Hearing** in the above entitled action upon **Greenpoint Mortgage Funding, Inc.,** by then and there personally delivering true and correct copies thereof into the hands of and leaving same with **Linda Reed** (35, white, female, 5' 8", medium build) Customer Service Representative at Corporation Service Company, Registered Agent.

|  |  | Each | Total |
|---|---|---|---|
| Service | 1 | $15.00 | $15.00 |
| Mileage/Trips | 1 | $55.00 | $55.00 |
| Affidavit | 1 | $15.00 | $15.00 |
| Miscellaneous |  | $0.00 | $0.00 |
| Miscellaneous |  | $0.00 | $0.00 |
|  |  |  | **$85.00** |

J. DeWitt   King County #9402780
Subscribed and sworn to me this
12th day of March, 2008,

Peter A. Valente- Notary Public in and for the
State of Washington, residing at Seattle.
Commission expires June 7, 2008

SEATTLE LEGAL MESSENGER SERVICES, LLC
711 6TH AVENUE NORTH #100
SEATTLE, WA 98109
(206) 443-0885

AFFIDAVIT OF SERVICE - 1

Ex. 2 pg-158-

1
2
3
4
5
6
7          SUPERIOR COURT OF THE STATE OF WASHINGTON
           IN AND FOR THE COUNTY OF KING
8
   RICHARD O. BUSE,                      )
9                                        )    Case No.  08-2-08093-5 SEA
                        Plaintiff,       )
10                                       )    SUMMONS
   vs.                                   )
11                                       )
   FIRST AMERICAN TITLE INSURANCE        )
12 COMPANY; FORECLOSURELINK, INC.;       )
   GREENPOINT MORTGAGE FUNDING,          )
13 INC.; MORTGAGE ELECTRONIC             )
   REGISTRATION SYSTEMS, INC.;           )
14 RESCOMM HOLDINGS NO. 2, LLC; UM       )
   ACQUISITIONS, LLC; TOM BLOCK; and     )
15 Doe Defendants 1 through 20,          )
                                         )
16                      Defendants.      )
                                         )
17 ─────────────────────────────────────

18 THE STATE OF WASHINGTON,    TO:  FIRST AMERICAN TITLE INSURANCE
   COMPANY; FORECLOSURELINK, INC.; GREENPOINT MORTGAGE FUNDING, INC.;
19 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; RESCOMM HOLDINGS
   NO. 2, LLC; UM ACQUISITIONS, LLC; TOM BLOCK; and Doe Defendants 1 through 20,

20        TO THE DEFENDANTS: A lawsuit has been started against you in the above-entitled

21 court by Plaintiff RICHARD O. BUSE.  Plaintiff's claim is stated in the written Complaint, a

22 copy of which is served upon you with this Summons.

23        In order to defend against this lawsuit, you must respond to the Complaint by stating

24 your defense in writing, and by serving a copy upon the person signing this summons within 20

25 days after the service of this summons, excluding the day of service, or a default judgment may

26 be entered against you without notice.  A default judgment is one where plaintiff is entitled to

27
                                          LAW OFFICES OF
                                   MELISSA A. HUELSMAN, P.S.
   SUMMONS - 1                      705 SECOND AVENUE, SUITE 501
                                     SEATTLE, WASHINGTON 98104
                                     TELEPHONE: (206) 447-0103
Ex. 2 pg-159-                         FACSIMILE: (206) 447-0115

In King County Superior Court State of Wash.

MAR - 6 2008

Cashier Section
Superior Court Clerk

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RICHARD O. BUSE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>FIRST AMERICAN TITLE INSURANCE<br>COMPANY; FORECLOSURELINK, INC.;<br>GREENPOINT MORTGAGE FUNDING,<br>INC.; MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>RESCOMM HOLDINGS NO. 2, LLC; UM<br>ACQUISITIONS, LLC; TOM BLOCK; and<br>Doe Defendants 1 through 20,<br><br>　　　　　Defendants. | Case No. 08-2-08093-5 SEA<br><br>**AMENDED** COMPLAINT FOR<br>TEMPORARY RESTRAINING ORDER<br>AND PERMANENT INJUNCTION;<br>WRONGFUL FORECLOSURE;<br>BREACH OF CONTRACT,<br>INTENTIONAL INFLICTION OF<br>EMOTIONAL DISTRESS; SLANDER<br>OF TITLE; BREACH OF FIDUCIARY<br>DUTY; BREACH OF QUASI-<br>FIDUCIARY DUTY;  VIOLATION OF<br>THE CONSUMER PROTECTION ACT,<br>RCW 19.86, *et seq.*; VIOLATIONS OF<br>RESPA, 12 U.S.C. § 2603, *et seq.* |

Comes now Plaintiff, Richard O. Buse, by and through his attorney of record, and for his Complaint against the Defendants hereby complains and alleges as follows:

## I. PARTIES

1.1　　Richard O. Buse ("Mr. Buse") is a resident of King County, Washington.

1.2　　Defendant FIRST AMERICAN TITLE INSURANCE COMPANY ("First American") is an unknown type of business operating in the State of Washington presumably as a title insurance company, but which is not registered with the Washington Secretary of State

AMENDED COMPLAINT FOR VIOLATIONS OF
THE CONSUMER PROTECTION ACT, etc. - 1

Ex. 2 page 00

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
# IN AND FOR THE COUNTY OF KING

| | | |
|---|---|---|
| RICHARD BUSE | NO. 08-2-08093-5 | SEA |
| | Order Setting Civil Case Schedule (*ORSCS) | |
| | **Plaintiff(s)** | |
| vs | | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, ET AL | ASSIGNED JUDGE Washington | 42 |
| | FILE DATE: | 03/05/2008 |
| | **Defendant(s)** | TRIAL DATE: | **08/17/2009** |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule (Schedule)** on the Defendant(s) along with the **Summons and Complaint/Petition.** Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the *Summons and Complaint/Petition* or (2) service of the Defendant's first response to the *Complaint/Petition*, whether that response is a *Notice of Appearance*, a response, or a Civil Rule 12 (CR 12) motion. The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

Melissa A. Huelsman                    *(signature)*
_____                      _____
Print Name                             Sign Name

Order Setting Civil Case Schedule (*ORSCS)                    REV. 8/07    1

Ex. 2 pg-161-



RECEIVED

MAR - 6 2008

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RICHARD O. BUSE,

            Plaintiff,

vs.

FIRST AMERICAN TITLE INSURANCE
COMPANY; FORECLOSURELINK, INC.;
GREENPOINT MORTGAGE FUNDING,
INC.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
RESCOMM HOLDINGS NO. 2, LLC; UM
ACQUISITIONS, LLC; TOM BLOCK; and
Doe Defendants 1 through 20,

            Defendants.

Case No. 08-2-08093-5 SEA

DECLARATION OF RICHARD O.
BUSE IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER
AND PERMANENT INJUNCTION

I,    Richard O. Buse, declare as follows:

1.    I am the plaintiff herein and I have personal knowledge of the facts contained

herein. If called upon to testify to the truth thereof, I could and would do.

2.    I have owned my home for many years. I applied for and obtained a home

equity line of credit loan from Defendant GreenPoint on June 16, 2004. In connection with the

making of that loan, I signed a Deed of Trust for Defendant GreenPoint, which was recorded in

the records of King County, Washington on July 29, 2004. A copy of the Deed of Trust is

DECLARATION OF RICHARD O. BUSE IN SUPPORT OF

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE  SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE. (206, 447-0103

*Ex Parte*

EXPO1

SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RICHARD O. BUSE,

Plaintiff,

vs.

FIRST AMERICAN TITLE INSURANCE
COMPANY; FORECLOSURELINK, INC.;
GREENPOINT MORTGAGE FUNDING, INC.;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; RESCOMM HOLDINGS NO.
2, LLC; UM ACQUISITIONS, LLC; TOM
BLOCK; and Doe Defendants 1 through 20,

Defendants.

Case No. 08-2-08093-5 SEA

ORDER ON MOTION FOR
TEMPORARY RESTRAINING ORDER

THIS MATTER having come before the undersigned Judge by way of the Plaintiff's

Motion for Temporary Restraining Order, and after consideration of the Plaintiff's Motion,

Declaration of Richard Buse, and all of the pleadings on file herein, including the Amended

Complaint, and after hearing thereon, the Court finds that the Plaintiff has met the criteria as

articulated under Washington law to obtain a temporary restraining order, and for cause shown,

the Court hereby makes the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In order to obtain an injunction or restraining order, a plaintiff must show that: (1) he

TEMPORARY RESTRAINING ORDER RESTRAINING THE
COMPLETION OF TRUSTEE'S SALE - 1

Ex. 2 pg 64

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| RICHARD O. BUSE,<br><br>        Plaintiff,<br><br>vs.<br><br>FIRST AMERICAN TITLE INSURANCE<br>COMPANY; FORECLOSURELINK, INC.;<br>GREENPOINT MORTGAGE FUNDING,<br>INC.; MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>RESCOMM HOLDINGS NO. 2, LLC; UM<br>ACQUISITIONS, LLC; TOM BLOCK; and<br>Doe Defendants 1 through 20,<br><br>        Defendants. | Case No. 08-2-08093-5 SEA<br><br>MOTION FOR TEMPORARY<br>RESTRAINING ORDER AND<br>PRELIMINARY INJUNCTION |

## I. RELIEF REQUESTED

COME NOW Plaintiff RICHARD O. BUSE and moves this Court for a preliminary

injunction or, in the alternative, order temporarily restraining Defendants First American and

ForeclosureLink from completing the Trustee's Sale scheduled to take place on March 7, 2008

regarding real property located at 9424 Carnation-Duvall Road NE, Carnation, Washington

98014; legal description: PARCEL A, LOT 1, LOTS 5 & 6 STILLWATER VOL. 19, PLAT

11; Tax ID No. 042507-9022-05 in the records of King County, Washington.

*ORIGINAL*

LAW OFFICES OF
MELISSA A. HUELSMAN
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

MOTION FOR TRO AND/OR PRELIMINARY
INJUNCTION- 1

Ex. 2  pg. 164

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

RICHARD O. BUSE,

Plaintiff,

vs.

FIRST AMERICAN TITLE INSURANCE COMPANY;
FORECLOSURELINK, INC.; GREENPOINT
MORTGAGE FUNDING, INC.; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.;
RESCOMM HOLDINGS NO. 2, LLC; UM
ACQUISITIONS, LLC; TOM BLOCK; and Doe
Defendants 1 through 20,

Defendants.

NO. 08-2-08093-5 SEA
**NOTICE FOR HEARING**
**SEATTLE COURTHOUSE ONLY**
(Clerk's Action Required ) (NTHG)

---

**TO:** **THE CLERK OF THE COURT** and to all other parties listed on Page 2:
**PLEASE TAKE NOTICE** that an issue of law in this case will be heard on the date below and the Clerk is directed to note this issue on the calendar checked below.

**Calendar Date:**__March 14th 2008_____ Day of Week:_Friday_____

**Nature of Motion:** __Motion for Preliminary Injunction__

---

**CASES ASSIGNED TO INDIVIDUAL JUDGES – Seattle**
If oral argument on the motion is allowed (LR 7(b)(2)), contact staff of assigned judge to schedule date and time before filing this notice. Working Papers: The *judge's name*, date and time of hearing *must* be noted in the upper right corner of the Judge's copy. *Deliver Judge's copies to Judges' Mailroom at C203.*

[ ] Without oral argument (Mon - Fri)          [ X ] With oral argument Hearing
Date/Time:__03/14/08  11 a.m._____
Judge's Name: _Washington_____          Trial Date:  _08/17/09_____

**CHIEF CRIMINAL DEPARTMENT - Seattle in E1201**
[ ] Bond Forfeiture  3:15 pm, 2nd Thur of each month
[ ] Certificates of Rehabilitation- Weapon Possession (**Convictions from Limited Jurisdiction Courts**)
3:30 First Tues of each month

---

Ex. 2 p. 149

FILED

2008 MAR 12  AM 10: 23

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA.

## SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

RICHARD O. BUSE

               Plaintiff,

    v.

FIRST AMERICAN TITLE INSURANCE
COMPANY, et al,

               Defendants.

NO. 08-2-08093-5 SEA

AFFIDAVIT OF SERVICE

State of Washington    )
County of King S/S    )

The undersigned, being first duly sworn, on oath deposes and says:

That the undersigned is now and at all times mentioned herein was a citizen of the United States and resident of the State of Washington, over the age of eighteen years, not a party to or interested in the above entitled action, and competent to be a witness therein.

That on **March 10, 2008**, at **3:45 PM**, at the address of **2101 Fourth Avenue, Suite 800**, Seattle, Washington, affiant duly served **Notice for Hearing** and **Order on Motion for Temporary Restraining Order** in the above entitled action upon **First American Title Insurance Company** by then and there personally delivering true and correct copies thereof into the hands of and leaving same with **Marcia Jenkins** (48, white, female, medium build) Assistant Vice President.

|  |  | Each | Total |
|---|---|---|---|
| Service | 1 | $15.00 | $15.00 |
| Mileage/Trips | 1 | $12.00 | $12.00 |
| Affidavit | 1 | $15.00 | $15.00 |
| Miscellaneous |  | $0.00 | $0.00 |
| Miscellaneous |  | $0.00 | $0.00 |
|  |  |  | $42.00 |

M. Pilder   King County #9402780
Subscribed and sworn to me this
11th day of March 2008.

Peter A. Valente- Notary Public in and for the
State of Washington, residing at Seattle.
Commission expires June 7, 2008

SEATTLE LEGAL MESSENGER SERVICES, LLC
711 6TH AVENUE NORTH #100
SEATTLE, WA 98109
(206) 443-0885

AFFIDAVIT OF SERVICE - 1

Ex. 2 pg-166-

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**FOR THE COUNTY OF KING**

RICHARD O. BUSE,

                    Plaintiff,

vs.

FIRST AMERICAN TITLE INSURANCE COMPANY;
FORECLOSURELINK, INC.; GREENPOINT
MORTGAGE FUNDING, INC.; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.;
RESCOMM HOLDINGS NO. 2, LLC; UM
ACQUISITIONS, LLC; TOM BLOCK; and Doe
Defendants 1 through 20,

                    Defendants.

**NO.** 08-2-08093-5 SEA
**NOTICE FOR HEARING**
**SEATTLE COURTHOUSE ONLY**
(Clerk's Action Required ) (NTHG)

**TO:**    **THE CLERK OF THE COURT** and to all other parties listed on Page 2:
          **PLEASE TAKE NOTICE** that an issue of law in this case will be heard on the date below and the
          Clerk is directed to note this issue on the calendar checked below.

**Calendar Date:**__March 14th 2008_____    Day of Week:_Friday_____

**Nature of Motion:** __Motion for Preliminary Injunction__

**CASES ASSIGNED TO INDIVIDUAL JUDGES – Seattle**
If oral argument on the motion is allowed (LR 7(b)(2)), contact staff of assigned judge to schedule date and time
before filing this notice. Working Papers: The *judge's name*, date and time of hearing *must* be noted in the upper
right corner of the Judge's copy. *Deliver Judge's copies to Judges' Mailroom at C203.*

[ ] Without oral argument (Mon - Fri)        [X] With oral argument Hearing
Date/Time:__03/14/08  11 a.m._____
Judge's Name: _Washington_____    Trial Date:__08/17/09_____

**CHIEF CRIMINAL DEPARTMENT - Seattle in E1201**
[ ] Bond Forfeiture  3:15 pm, 2nd Thur of each month
[ ] Certificates of Rehabilitation- Weapon Possession **(Convictions from Limited Jurisdiction Courts)**
3:30 First Tues of each month

*Ex Parte*

1

2

3

4

5

6

7        SUPERIOR COURT FOR THE STATE OF WASHINGTON
        IN AND FOR THE COUNTY OF KING

8

RICHARD O. BUSE,

9                  Plaintiff,                      Case No.  08-2-08093-5 SEA

10   vs.                                          ORDER ON MOTION FOR
                                                 TEMPORARY RESTRAINING ORDER
11

FIRST AMERICAN TITLE INSURANCE

12   COMPANY; FORECLOSURELINK, INC.;
    GREENPOINT MORTGAGE FUNDING, INC.;

13   MORTGAGE ELECTRONIC REGISTRATION
    SYSTEMS, INC.; RESCOMM HOLDINGS NO.

14   2, LLC; UM ACQUISITIONS, LLC; TOM
    BLOCK; and Doe Defendants 1 through 20,

15                  Defendants.

16

17

        THIS MATTER having come before the undersigned Judge by way of the Plaintiff's

18
    Motion for Temporary Restraining Order, and after consideration of the Plaintiff's Motion,
19
    Declaration of Richard Buse, and all of the pleadings on file herein, including the Amended
20
    Complaint, and after hearing thereon, the Court finds that the Plaintiff has met the criteria as
21
    articulated under Washington law to obtain a temporary restraining order, and for cause shown,
22
    the Court hereby makes the following Findings of Fact and Conclusions of Law:
23

24                **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

25        In order to obtain an injunction or restraining order, a plaintiff must show that: (1) he

26

27

TEMPORARY RESTRAINING ORDER RESTRAINING THE
COMPLETION OF TRUSTEE'S SALE - 1
Ex. 2 p. 103

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 501
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

FILED

2008 MAR 19  PM 12: 55

SUPERIOR COURT CLERK
SEATTLE, WA.

**SUPERIOR COURT OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

RICHARD O. BUSE     )
            )
        Plaintiffs, ) No. 08-2-08093-5 SEA
            )
    v.       )
            ) **NOTICE OF APPEARANCE**
FIRST AMERICAN TITLE INSURANCE )
COMPANY, FORECLOSURELINK INC., )
GREENPOINT MORTGAGE FUNDING, )
INC., MORTGAGE ELECTRONIC  )
REGISTRATION SYSTEMS, INC.,  )
RESCOMM HOLDINGS NO. 2, LLC, UM )
ACQUISITIONS, LLC, TOM BLOCK, and Doe)
Defendants 1 through 20,    )
            )
        Defendants. )
            )

TO:   Melissa A. Huelsman, Attorneys for Plaintiffs;

AND TO: The Clerk of the Court

   PLEASE TAKE NOTICE that Routh Crabtree Olsen, P.S., without waiving defenses of

lack of subject matter or personal jurisdiction, improper venue, insufficiency of service of

process, or any other valid defense, hereby appears for Tom Block and Greenpoint Mortgage

Funding, Inc., named defendants in the above-entitled action, by and through Steven K. Linkon,

///

///

NOTICE OF APPEARANCE 1 OF 2

**ROUTH CRABTREE OLSEN, P.S.**
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

1   of Routh Crabtree Olsen, P.S. and requests that all further papers and pleadings, except original

2   process, be served upon them at the address shown below.

3

4        DATED:  this _17_ day of March, 2008

5                               ROUTH CRABTREE OLSEN, P.S.

6

7                               By: _____

8                                   Steven Linkon, WBA #34896
                                   Attorney for Defendants, Tom Block and

9                                   Greenpoint Mortgage Funding, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington  98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

FILED

2008 MAR 19 PM 12: 55

SUPERIOR COURT CLERK
SEATTLE, WA.

## SUPERIOR COURT OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

RICHARD O. BUSE,

                          Plaintiff,

           v.

FIRST AMERICAN TITLE INSURANCE
COMPANY; FORECLOSURELINK, INC.;
GREENPOINT MORTGAGE FUNDING,
INC., MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
RESCOMM HOLDINGS NO. 2, LLC; UM
ACQUISITIONS, LLC; TOM BLOCK, and Doe
Defendants 1 through 20,

                         Defendants.

No. 08-2-08093-5 SEA

**DECLARATION OF SERVICE**

### Declaration of Service

The undersigned makes the following declaration:

1.    I am now, and at all times herein mentioned was a resident of the State of Washington, over the age of eighteen years and not a party to this action, and I am competent to be a witness herein.

2.    That on March 17, 2008, I caused a copy of the NOTICE OF APPEARANCE to be served to the following in the manner noted below:

DECLARATION OF SERVICE 1 OF 2

**ROUTH CRABTREE OLSEN, P.S.**
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

| | |
|---|---|
| Melissa A. Huelsman, Attorney<br>705 Second Avenue, Suite 501<br>Seattle, WA 98104<br><br>Attorney for Plaintiff | [X] US Mail, Postage Prepaid<br>[ ] Hand Delivery<br>[ ] Overnight Mail<br>[ ] Facsimile |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed this 17th day of March, 2008.

*Melissa Albert*

Melissa Albert, Paralegal

DECLARATION OF SERVICE 2 OF 2

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

Ex. 2 pg-172-

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUTY OF KING
Case No.: 08-2-08093-5 SEA

FILED

2008 MAR 20 PM 1: 43

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

Richard O. Buse,

           Plaintiff,

v.

First American Title Insurance Company;
Foreclosurelink, Inc.; Greenpoint Mortgage
Funding, Inc.; Mortgage Electronic
Registration Systems, Inc.; Rescomm
Holdings No.2, LLC; UM Acquisitions,
LLC; Tom Block; and Doe Defendants 1
through 20,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

AFFIDAVIT OF SERVICE

Travis M. Gordon, being duly sworn, deposes and says:

    1.     I am over the age of twenty-one and am a citizen and resident of Mecklenburg County, North Carolina.

    2.     I am not a party to this action and I am not related to the Defendant by blood or marriage.

    3.     I am employed by the firm of Barefoot Private Investigations located at 1011 East Morehead Street, Suite 110, Charlotte, North Carolina 28204-2812.

    4.     On March 10, 2008, at approximately 4:50 p.m., I served upon Rescomm Holdings No. 2, LLC, a copy of a Summons, Amended Complaint, Order Setting Case Schedule, Notice for Hearing, Motion for Temporary Restraining Order and Permanent Injunction, Declaration of Richard O. Buse and Order on Motion for Temporary Restraining Order filed in the above-referenced matter. Rescomm Holdings No. 2, LLC was served by leaving the paperwork with Matt Wiedbrauk, Senior Recovery Manager, at his office located at 6701 Carmel Road, Suite 110, Charlotte, North Carolina 28226.

This the 11th day of March, 2008.

                              Travis M. Gordon

Sworn to and subscribed before me
This 11th day of March, 2008.

Notary Public
My Commission Expires: 05/12/2010.

*[Notary seal: AMBER P KING, NOTARY PUBLIC, My Comm. Exp. 5/12/2010, MECKLENBURG COUNTY]*

**ORIGINAL**

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUTY OF KING
Case No.: 08-2-08093-5 SEA

FILED

2008 MAR 20  PM 1:43

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

Richard O. Buse,                          )
                                          )
                Plaintiff,                )
                                          )
v.                                        )          AFFIDAVIT OF SERVICE
                                          )
First American Title Insurance Company;   )
Foreclosurelink, Inc.; Greenpoint Mortgage)
Funding, Inc.; Mortgage Electronic        )
Registration Systems, Inc.; Rescomm       )
Holdings No.2, LLC; UM Acquisitions,      )
LLC; Tom Block; and Doe Defendants 1      )
through 20,                               )
                                          )
                Defendants.               )
_____)

Travis M. Gordon, being duly sworn, deposes and says:

1.      I am over the age of twenty-one and am a citizen and resident of Mecklenburg County, North Carolina.

2.      I am not a party to this action and I am not related to the Defendant by blood or marriage.

3.      I am employed by the firm of Barefoot Private Investigations located at 1011 East Morehead Street, Suite 110, Charlotte, North Carolina 28204-2812.

4.      On March 10, 2008, at approximately 4:50 p.m., I served upon United Mortgage and Loan Investment, LLC, a copy of a Summons, Amended Complaint, Order Setting Case Schedule, Notice for Hearing, Motion for Temporary Restraining Order and Permanent Injunction, Declaration of Richard O. Buse and Order on Motion for Temporary Restraining Order filed in the above-referenced matter. United Mortgage and Loan Investment, LLC was served by leaving the paperwork with Matt Wiedbrauk, Senior Recovery Manager, at his office located at 6701 Carmel Road, Suite 110, Charlotte, North Carolina 28226.

This the 11th day of March, 2008.

_____
Travis M. Gordon

Sworn to and subscribed before me
This 11th day of March, 2008.

_____
Notary Public
My Commission Expires: 05/12/2010.

AMBER P. KING
NOTARY
My Comm. Exp.
5/12/2010
PUBLIC
MECKLENBURG COUNTY, N. C.

*ORIGINAL*

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUTY OF KING
Case No.: 08-2-08093-5 SEA

FILED

2008 MAR 20 PM 1:43

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

Richard O. Buse,            )
                          )
          Plaintiff,      )
                          )
v.                          )
                          )
First American Title Insurance Company;  )
Foreclosurelink, Inc.; Greenpoint Mortgage  )
Funding, Inc.; Mortgage Electronic     )
Registration Systems, Inc.; Rescomm     )
Holdings No.2, LLC; UM Acquisitions,     )
LLC; Tom Block; and Doe Defendants 1    )
through 20,                     )
                          )
          Defendants.    )

AFFIDAVIT OF SERVICE

Travis M. Gordon, being duly sworn, deposes and says:

    1.     I am over the age of twenty-one and am a citizen and resident of Mecklenburg County, North Carolina.

    2.     I am not a party to this action and I am not related to the Defendant by blood or marriage.

    3.     I am employed by the firm of Barefoot Private Investigations located at 1011 East Morehead Street, Suite 110, Charlotte, North Carolina 28204-2812.

    4.     On March 10, 2008, at approximately 4:50 p.m., I served upon UM Capital, LLC, a copy of a Summons, Amended Complaint, Order Setting Case Schedule, Notice for Hearing, Motion for Temporary Restraining Order and Permanent Injunction, Declaration of Richard O. Buse and Order on Motion for Temporary Restraining Order filed in the above-referenced matter. UM Capital, LLC was served by leaving the paperwork with Matt Wiedbrauk, Senior Recovery Manager, at his office located at 6701 Carmel Road, Suite 110, Charlotte, North Carolina 28226.

    This the 11th day of March, 2008.

                                       Travis M. Gordon

Sworn to and subscribed before me
This 11th day of March, 2008.

Notary Public
My Commission Expires: 05/12/2010.

AMBER P. KING
NOTARY
My Comm. Exp.
5/12/2010
PUBLIC
MECKLENBURG COUNTY

ORIGINAL

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUTY OF KING
Case No.: 08-2-08093-5 SEA

**FILED**

2008 MAR 20  PM 1:43

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

Richard O. Buse,                                    )
                                                    )
                    Plaintiff,                      )
                                                    )
v.                                                  )           AFFIDAVIT OF SERVICE
                                                    )
First American Title Insurance Company;             )
Foreclosurelink, Inc.; Greenpoint Mortgage          )
Funding, Inc.; Mortgage Electronic                  )
Registration Systems, Inc.; Rescomm                 )
Holdings No.2, LLC; UM Acquisitions,                )
LLC; Tom Block; and Doe Defendants 1                )
through 20,                                         )
                                                    )
                    Defendants.                     )
_____)

Travis M. Gordon, being duly sworn, deposes and says:

    1.       I am over the age of twenty-one and am a citizen and resident of Mecklenburg County, North Carolina.

    2.       I am not a party to this action and I am not related to the Defendant by blood or marriage.

    3.       I am employed by the firm of Barefoot Private Investigations located at 1011 East Morehead Street, Suite 110, Charlotte, North Carolina 28204-2812.

    4.       On March 10, 2008, at approximately 4:50 p.m., I served upon UM Acquisitions, LLC, a copy of a Summons, Amended Complaint, Order Setting Case Schedule, Notice for Hearing, Motion for Temporary Restraining Order and Permanent Injunction, Declaration of Richard O. Buse and Order on Motion for Temporary Restraining Order filed in the above-referenced matter. UM Acquisitions, LLC was served by leaving the paperwork with Matt Wiedbrauk, Senior Recovery Manager, at his office located at 6701 Carmel Road, Suite 110, Charlotte, North Carolina 28226.

    This the 11th day of March, 2008.

                                                    _____
                                                    Travis M. Gordon

Sworn to and subscribed before me
This 11th day of March, 2008.

_____
Notary Public
My Commission Expires: 05/12/2010.

AMBER P. KING
NOTARY
My Comm. Exp.
5/12/2010
PUBLIC
MECKLENBURG COUNTY, N. C.

**ORIGINAL**

Ex. 2 pg-176-

## Superior Court for the State of Washington
## In and For the County of King

### Case Number: 08-2-08093-5 SEA

FILED

2008 MAR 20  PM 1:43

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

### AFFIDAVIT – CERTIFICATE OF PROOF OF SERVICE

Comes this 14th day of March 2008, Samuel C. Johns, Jr., personally appearing before me, and having been duly sworn according to the law, deposes and states as follows:

1.  That he is not a party to or otherwise interested in the subject matter at controversy in the within cause;

2.  That he is over the age of 18 years;

3.  That on the 13th day of March 2008 at 11:50 a.m., the following documents were served personally by Samuel C. Johns, Jr. to Mr. Joseph J. Patry, Counsel for Mortgage Electronic Registration Systems (MERS), Inc. at 1595 Spring Hill Road, Suite 310, Vienna, Virginia 22182:

    (1)  Order for Motion for Temporary Restraining Order
    (2)  Declaration of Richard O. Buse in Support of Motion for Temporary Restraining Order and Permanent Injunction
    (3)  Motion for Temporary Restraining Order and Permanent Injunction
    (4)  Amended Complaint for Temporary Restraining Order and Permanent Injunction, Wrongful Foreclosure, Breach of Contract, Intentional Distress, Slander of Title, Breach of Fiduciary Duty, Breach of Quasi-Fiduciary Duty, Violation of the Consumer Protection Act RCW 1986 et seq., Violation of RESPA 12 USC & 2603 et. Seq.
    (5)  Order Setting Civil Case Schedule (ORSCS)
    (6)  Summons

Signed: _____     Date: 03/14/08
              Samuel C. Johns, Jr.

              10616 Norman Avenue
              Fairfax, VA  22030
              Phone:  (703) 350-5060

---

I, the undersigned Notary Public of the Commonwealth of Virginia, do hereby certify that **Samuel C. Johns, Jr.**, whose name is signed to this document, appeared before me this day in person and acknowledged the same in my presence.

Given under my hand this **14th** day of **March 2008**.

**City (County) of Fairfax**
**Commonwealth of Virginia**

_____
Mary M. Fineberg, Notary Public
*Registration ID #7013162*

My Commission expires **31 October 2010**.

ORIGINAL

Ex. 2 pg-177-

FILED

ORIGINAL
200? MAR 20 PM 1: 43

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE

March 7, 2008

To Whom It May Concern,

   Regarding Case No. 08-2-08093-5 SEA, Richard O. Buse, Plantiff vs. First American Title Insurance Company; Foreclosurelink, Inc.; Greenpoint Mortgage Funding, Inc.; Mortgage Electronic Registration Systems, Inc.; Rescomm Holdings No. 2, LLC; UM Aqquisitions, LLC; Tom Block; and Doe Defendants 1 through 20, Defendants.

   I, Denise Elich, served copies of the below listed documents to Marsha Townsend an agent of service for Foreclosurelink, Inc. on 03/06/2008 at 1:30pm. Service occurred at Foreclosurelink, Inc. located at 4401 Hazel Avenue Suite 225, Fair Oaks, CA 95628.

   Documents served for case #08-2-08093-5 SEA:

1. Amended Complaint For Temporary Restraining Order And Permanent Injunction including Exhibits 1 through 12
2. Summons
3. Order Setting Civil Case Schedule (*ORSCS)
4. Note For Motion
5. Motion For Temporary Restraining Order And Permanent Injunction
6. Declaration Of Richard O. Buse In Support Of Motion For Temporary Restraining Order And Permanent Injunction

Cordially,

Denise Elich

Denise Elich
A 24 Hour Mobile Notary & Process Service
2709 El Camino Ave, Sacramento, CA 95821
(916) 974-3511

State of California
County of Sacramento

Subscribed and sworn to (or affirmed) before me on this 7th day of March, 2008, by Denise Elich proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Signature of Notary Public

(seal)

ALEX M. O HARA
COMM. # 1760461
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES AUG. 5, 2011