UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON - SEATTLE

| | |
|---|---|
| RICHARD O. BUSE,<br><br>    Plaintiff,<br><br>vs.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY; FORCLOSURELINK, INC.; GREENPOINT MORTGAGE FUNDING INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; RESCOMM HOLDINGS NO. 2, LLC; UM ACQUISITIONS, LLC; TOM BLOCK; and Doe Defendants 1 through 20,,<br><br>    Defendants. | Case No. C-08-0510-MJP<br><br>DEFENDANTS' FIRST AMERICAN TITLE INSURANCE COMPANY AND FORECLOSURELINK, INC.S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, FOR SUMMARY ADJUDICATION<br><br>NOTE ON MOTION CALENDAR<br>April 24, 2009 |

Defendants First American Title Insurance Company ("First American") and Foreclosurelink, Inc. ("Foreclosurelink"), submit the following Motion for Summary Judgment, or Alternatively, for Summary Adjudication of Cause of Action. This Motion is based upon the following memorandum of points and authorities, the Affidavit of First American, the Affidavit of Foreclosurelink, the Affidavit of Peter J. Salmon, the Request for Judicial Notice, and such other and further evidence that the Court will consider.

I.  **SUMMARY OF THE ARGUMENT**

First American and Foreclosurelink are entitled to summary judgment or summary adjudication on the causes of action asserted against them. Although the Plaintiff asserts separate causes of action against them for Infliction of Emotional Distress, Slander of Title, Breach of
DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 1
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

Fiduciary Duty, Violation of the Consumer Protection Act, and for Injunctive Relief, his claim rests entirely upon the assertion that First American and Foreclosurelink violate Title 61 of the Revised Code of Washington (RCW) through the scope of the agency between First American as the foreclosure trustee and Foreclosurelink as its agent. This assertion is premised upon a citation to a Washington statute that is not even in effect and overlooks the provisions of Title 61 of the RCW explicitly and implicitly allowing the use of agents, as well as case law addressing the issue.

Specifically, First American and Foreclosurelink have submitted affidavits which set forth the licensing status of First American, its conduct as a nonjudicial foreclosure trustee, the form of nonjudicial foreclosure notices, the duties performed by Foreclosurelink, and the limited nature of the agency as limited to specific foreclosure in which the assistance of Foreclosurelink is sought by First American. In addition, RCW 61.24.010(4) specifically permits the use of agents to conduct auctions, provides for the trustee to utilize services of others to publish and mail notices, and does not in any way prohibit the use of an agent by a trustee. The facts and arguments set forth in section IV. <u>infra</u> demonstrate that Plaintiff's theory is fundamentally flawed.

The Plaintiff's failed theory permeates throughout his causes of action, none of which he can establish as a matter of law against either First American or Foreclosurelink. The first cause of action for Infliction of Emotional Distress fails because the Plaintiff cannot establish any of the elements of the tort as required by Washington law, particularly because a plaintiff must establish that the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Grimsby v. Samson</u>, 85 Wash.2d 52, 59-60 (1975). The second cause of action for Slander of Title fails because the Plaintiff admitted he defaulted in payments under the Deed of Trust under which First American was the trustee, and cannot establish malice in the recording and delivery of nonjudicial foreclosure notices.

The third cause of action for Breach of Fiduciary Duty fails to create a disputed issue of material fact because the Plaintiff cannot show that First American or Foreclosurelink failed to deliver nonjudicial foreclosure notices as required by Washington law or that they engaged in any conduct that caused the Plaintiff to believe that nonjudicial foreclosure would not proceed. The

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 2
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

fourth cause of action for Violation of the Consumer Protection Act fails as a matter of law because the Plaintiff cannot establish either first or fourth element of the claim. Specifically, Plaintiff cannot show that under RCW 19.86.020, First American or Foreclosurelink engaged in an unfair or deceptive act or practice, or that it proximately caused injury to the plaintiff in his or her business or property. Johnson v. Cash Store, 116 Wash.App. 833, 846 (Wash.App.2003).

Finally, Plaintiff's separate cause of action for an injunction to stop the foreclosure that Defendant Block was pursuing through First American is moot, as Plaintiff has reached a settlement with Mr. Block by which he admitted the default and agreed to terms of repayment. In conjunction with that settlement, First American caused the recording of a Notice of Discontinuance of Trustee's Sale. As a result, there exists no pending foreclosure process for the Plaintiff to enjoin, making the relief sought by this cause of action moot.

## II.   UNDISPUTED MATERIAL FACTS

First American is licensed by the State of Washington as a title insurance company, WAOIC number 461. First American has been admitted as a title insurance company in the State of Washington since January 2, 1969. (Affidavit of First American, ¶ 6). First American maintains an office located at 2101 4th Avenue, Suite 800, Seattle, WA 98121, at which personal service can be made upon it, and has maintained that office address at all times relevant to this litigation. (First Am. Aff., ¶ 7).

First American serves as a nonjudicial foreclosure trustee under certain deeds of trust encumbering real property located in the State of Washington. First American is familiar with the requirements of Washington law with regard to the conduct of nonjudicial foreclosures, and has verified that the form of its nonjudicial foreclosure notices complies with Washington law. Specifically, First American has verified that the form of its Notice of Default, Notice of Foreclosure, and Notice of Trustee's Sale comply with the Revised Code of Washington sections 61.24.030 and 61.24.040. (First Am. Aff., ¶ 8).

In connection with acting as a nonjudicial foreclosure trustee, First American also will prepare a trustee's sale guarantee that identifies the current property owner, existing encumbrances, address of persons or entities entitled to notice of the nonjudicial foreclosure sale, and identifies

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 3
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

matters that may constitute exceptions to the foreclosing beneficiary obtaining title to real property free and clear of claims or encumbrances upon completion of a nonjudicial foreclosure sale. The trustee's sale guarantee does not equate to an owner or lender's policy of title insurance, but provides certain guarantees in connection with the processing of a nonjudicial foreclosure. (First Am. Aff., ¶ 9).

First American has contracted with Foreclosurelink, Inc., to act as an agent of First American for purposes of: preparing the appointment of successor trustee to cause First American to become the trustee; preparing nonjudicial foreclosure notices; causing notices to be mailed to parties required to receive notice; coordinating the posting and publishing of the Notice of Trustee's Sale; and, arranging for an auctioneer to conduct the actual nonjudicial foreclosure sale. The form of the Appointment of Successor Trustee, Notice of Default, Notice of Foreclosure, Notice to Guarantor, and Notice of Trustee's Sale actually generated for any nonjudicial foreclosure sale comes from a format approved of by First American in order to comply with Washington law. The identity of and addresses for persons or entities to be served with nonjudicial foreclosure notices contained within the Notice of Default, Notice of Foreclosure, and Notice of Trustee's Sale comes from the trustee's sale guarantee generated by First American, as well as from information provided by the beneficiary or servicer of the loan for the foreclosing beneficiary. (First Am. Aff., ¶ 10; Affidavit of Foreclosurelink, ¶ 7.)

Foreclosurelink only serves as an agent for First American when specifically agreed upon for specific nonjudicial foreclosures of real property. Foreclosurelink does not have authority from First American to serve as the agent for First American for purposes of a nonjudicial foreclosure without the prior written consent of First American, and is authorized to sign documents only as the agent of First American. Unless specifically agreed upon in writing for a limited purpose, Foreclosurelink does not have a power of attorney to execute documents on behalf of First American in connection with any nonjudicial foreclosure sale. (First Am. Aff., ¶ 11, Foreclosurelink Aff., ¶ 8).

Foreclosurelink was the agent for First American Title Insurance Company ("First American"), the substituted trustee under the below-referenced Deed of Trust, for purposes of assisting in the delivery of non-judicial foreclosure notices concerning the non-judicial foreclosure

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 4
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

of a Home Equity Line of Credit Deed of Trust and Security Agreement ("Deed of Trust") dated June 9, 2004, encumbering the real property commonly known as 31210 Carnation Duvall Road Northeast, Carnation, Washington 98014, aka 9424 Carnation Duvall Road Northeast, Carnation, Washington 98014 ("Subject Property"). (First Am. Aff., ¶ 12, Foreclosurelink Aff., ¶ 9). This Deed of Trust is junior in priority to a first priority deed of trust under which defendant Mortgage Electronic Registration Systems, Inc., is the beneficiary of record.

Foreclosurelink contacted First American concerning a potential nonjudicial foreclosure of the Subject Property when Foreclosurelink was contacted by Norm Pomeranz, an agent acting on behalf of Tom Block. Mr. Block was the beneficiary by assignment of the Deed of Trust. First American agreed to serve as the successor trustee under the Deed of Trust for purposes of commencing a nonjudicial foreclosure. Accordingly, Mr. Block executed an Appointment of Successor Trustee on January 4, 2007, appointing First American as the successor trustee. The form of the Appointment of Successor Trustee was previously approved by First American, including the request to return it after recording to Foreclosurelink. A true and correct copy of the Appointment of Successor Trustee is attached to the supporting affidavits as Exhibit A. (First Am. Aff., ¶ 12, Foreclosurelink Aff., ¶ 9).

Foreclosurelink subsequently prepared a Notice of Default also dated January 4. 2007, and sent the Notice of Default to Plaintiff and the other parties entitled to notice by first class mail and certified mail, pursuant to the provisions of the Revised Code of Washington 61.24.030(7). The form of the Notice of Default was previously approved by First American, as well as Foreclosurelink mailing the notices. The information for the mailing of the Notice of Default came from the trustee's sale guarantee prepared by First American. The Notice of Default was also posted in a conspicuous place on the Subject Property. (First Am. Aff., ¶ 13, Foreclosurelink Aff., ¶ 10).

On February 8, 2007, Foreclosurelink prepared a Notice of Foreclosure and a separate Notice of Trustee's Sale, sending both notices to Plaintiff and the other parties entitled to receive notice by first class mail and certified mail. The Notice of Foreclosure specified the office address of First American in Seattle as the office to serve any process. The Notice of Trustee's Sale was recorded in the Official Records of King County on February 9, 2007. Both the Notice of Foreclosure and

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 5
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

Notice of Trustee's Sale were in a form previously approved by First American, and the information for the mailing of the notices came from the trustee's sale guarantee prepared by First American. The Notice of Trustee's Sale was also published in the Daily Journal of Commerce and posted on the Subject Property. (First Am. Aff., ¶ 14, Foreclosurelink Aff., ¶ 11).

On April 24, 2007, at the request of Mr. Block, a Notice of Discontinuance of the Trustee's Sale was prepared by Foreclosurelink and recorded on April 26, 2007. The form of the Notice of Discontinuance was previously approved by First American. (First Am. Aff., ¶ 15, Foreclosurelink Aff., ¶ 12).

On October 24, 2007, Norm Pomeranz, the agent for Mr. Block, request the initiation of a new nonjudicial foreclosure process due to a default by the Plaintiff. Foreclosurelink subsequently prepared a Notice of Default dated October 30. 2007, and sent the Notice of Default to Plaintiff and the other parties entitled to notice by first class mail and certified mail, pursuant to the provisions of the Revised Code of Washington 61.24.030(7). The form of the Notice of Default was previously approved by First American, as well as Foreclosurelink mailing the notices. The information for the mailing of the Notice of Default came from the trustee's sale guarantee prepared by First American. The Notice of Default was also posted in a conspicuous place on the Subject Property. A true and correct copy of the Notice of Default is attached to the supporting affidavits as Exhibit B. (First Am. Aff., ¶ 16, Foreclosurelink Aff., ¶ 13).

On November 30, 2007, Foreclosurelink prepared a Notice of Foreclosure and a separate Notice of Trustee's Sale, sending both notices to Plaintiff and the other parties entitled to receive notice by first class mail and certified mail. The Notice of Foreclosure specified the office address of First American in Seattle as the office to serve any process. The Notice of Trustee's Sale was recorded in the Official Records of King County on December 4, 2007. Both the Notice of Foreclosure and Notice of Trustee's Sale were in a form previously approved by First American, and the information for the mailing of the notices came from the trustee's sale guarantee prepared by First American. The Notice of Trustee's Sale was also published in the Daily Journal of Commerce and posted on the Subject Property. True and correct copies of the Notice of Foreclosure and Notice of Trustee's Sale are attached to the supporting affidavits as Exhibits C and D, respectively. (First

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 6
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

Am. Aff., ¶ 17, Foreclosurelink Aff., ¶ 14).   First American did not proceed with a sale due to the present litigation and communication with Mr. Block. (First Am. Aff., ¶ 18, Foreclosurelink Aff., ¶ 15).

The use of agents to assist in the preparation and delivery of nonjudicial foreclosure notices is common for nonjudicial foreclosures processed within the State of Washington. The handling of the nonjudicial foreclosure notices as agent for First American in this matter is consistent with both First American and Foreclosurelink's procedures generally. (First Am. Aff., ¶ 19, Foreclosurelink Aff., ¶ 16).

The Plaintiff originally filed the present litigation in the Superior Court for the County of King. The operative complaint was the First Amended Complaint ("FAC") when the case was removed to Federal Court. The Plaintiff subsequently entered into a settlement with Defendant Tom Block, the beneficiary under the Deed of Trust who appointed First American as the successor trustee. The Plaintiff and Mr. Block reach an agreement on payment of the loan that had been in default. (*See* Discovery Responses by Plaintiff, attached as Exhibit A to the Affidavit of Peter Salmon.) A Notice of Discontinuance of Sale was recorded by First American based upon this settlement on July 3, 2008, as instrument number 20080703001010 in the official records of King County, Washingion. (A true and correct copy of the Notice is attached as Exhibit A to the Request for Judicial Notice.)

## III.  LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party is entitled to summary judgment if, after satisfying its initial burden, the non-moving party fails to present specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), cert. denied, 484 U.S. 1066 (1988). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to defeat a motion for summary judgment. Triton Energy Corp. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the litigation are irrelevant to the

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 7
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

consideration of a motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Viewed another way, summary judgment is appropriate where the nonmoving party fails to present admissible evidence as to each and every essential element of their claim. <u>Celotex</u>, 477 U.S. at 324; <u>see</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 884 (1990) (failure to "make a sufficient showing of an essential element" of one's case requires dismissal). Mere disagreement or the bald assertion that a genuine issue of material fact exists will not preclude the use of summary judgment. <u>California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987), <u>cert. denied</u>, 484 U.S. 1006 (1988).

## IV. THE REVISED CODE OF WASHINGTON GOVERNING NONJUDICIAL FORECLOSURE TRUSTEES PERMITS THE USE OF AGENTS AND THE SCOPE OF THE AGENCY BETWEEN FIRST AMERICAN AND FORECLOSURELINK

The entirety of Plaintiff's claims against First American and Foreclosurelink are premised upon the contention that Foreclosurelink is actually acting as the nonjudicial foreclosure trustee under the Deed of Trust at issue even though it does not qualify to serve under RCW 61.24.010, and that even if First American sought the assistance of an agent to assist with foreclosure notices, the agent must qualify as a "title insurance agent" within the meaning of RCW 48.17.010(5). As set forth herein, these arguments are fundamentally flaws and mis-state Washington law.

### A. <u>The Applicable Washington Nonjudicial Foreclosure Statutory Authority Permits the Use of an Agent by the Trustee</u>

No portion of the Revised Code of Washington governing nonjudicial foreclosures bars the use of agents to assist with the delivery of notices. Indeed, the statutory scheme governing the Notice of Sale expressly contemplates the use of an agent for the conduct of the sale and implicitly authorizes the use of agents for other notices.

Specifically, RCW 61.24.040(4) provides that "the trustee or its authorized agent shall sell the property at public auction." Therefore, the individual or entity that serves as the trustee does not have to personally conduct the sale. The Washington Supreme Court has specifically found that an agent engaged to conduct the actual sale can create liability for the nonjudicial foreclosure trustee even where that auctioneer was argued not to have apparent authority to open bidding at an

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 8
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

1  insufficient amount. See <u>Udall v. T.D. Services</u>, 159 Wash.2d 903, 912 (Wash.2007). The <u>Udall</u>
2  Court analyzed the scope of the agency relationship between the trustee and the auctioneer it utilized
3  under general principles of agency law as applied by Washington courts.
4        The other portions of RCW 61.24.040 also contemplate the use of agents for notices by
5  utilizing the word "cause" to describe the obligations imposed on the trustee. For example,
6  subdivision (3) provides that the trustee shall "cause" the notice of sale to be published; subdivisions
7  (1)(b) through (f) provide that the trustee shall "cause" the notice of sale to be mailed to the required
8  persons. If the Washington legislature intended that the trustee personally deliver each of those
9  notices, it could have simply barred the use of agents to assist with delivery of required notices or
10  would not have utilized the terminology "cause" to be mailed, and instead would have required the
11  trustee to mail or publish the notices personally. It did not choose to do this; rather, the practice of
12  utilizing agents for nonjudicial foreclosures in Washington is common for First American as a
13  trustee and Foreclosurelink as an agent. Courts in other jurisdictions have also recognized this
14  practice as common and accepted. See <u>Russell v. Lundberg</u>, 120 P.3d 541, 544 (Utah.App.2005).
15        First American, as a Washington licensed title insurance company authorized to serve as a
16  trustee under RCW 61.24.010(1), has approved the form of the Notice of Default, Notice of
17  Foreclosure, and Notice of Trustee's Sale utilized in this foreclosure and in others. (First Am. Aff.,
18  ¶ 8). It has also internally verified that these notices meet the requirements of the Revised Code of
19  Washington. It specifies an actual office address in the State of Washington in the Notice of
20  Foreclosure that any borrower or party in interest can contact in connection with a nonjudicial
21  foreclosure. (First Am. Aff., ¶¶ 7, 14, 17). Foreclosurelink performs its duties in accordance with
22  the agreement between First American and Foreclosurelink, and the affidavits of First American and
23  Foreclosurelink show that all of the activity with regard to the present foreclosure demonstrates
24  compliance with that agreement. As a result, the Plaintiff simply cannot demonstrate any conduct
25  or action by either First American or Foreclosurelink that violates RCW 61.24.005 *et seq.*
26  /./../
27  /./../
28  /./../

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 9
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

B. **Plaintiff's Contention that an Agent for a Nonjudicial Foreclosure Trustee must be Licensed as a Title Insurance Agent Misapprehends Washington Nonjudicial Foreclosure Law and Relies on a Statute Not in Effect**

The contention that Foreclosurelink must qualify as a "title insurance agent" in order to serve as an agent for First American for purposes of nonjudicial foreclosure notices is a flawed premise for multiple reasons. First, RCW 48.17.010 subdivision (15) cited by Plaintiff at paragraph 2.12 of the FAC does not even come into effect until July 1, 2009, and therefore cannot provide a legal basis for Plaintiff's assertion. Even if that definition applied to the case at bar, it fails to establish any violation of the nonjudicial foreclosure statutory scheme by either First American or Foreclosurelink.

Under the current version of RCW 48.17.010, an "Agent" means "any person appointed by an insurer to solicit applications for insurance on its behalf. If authorized so to do, an agent may effectuate insurance contracts. An agent may collect premiums on insurances so applied for or effectuated." However, Title 48 of the Revised Code of Washington has a section entitled "Scope of code" providing that "All insurance and insurance transactions in this state, or affecting subjects located wholly or in part or to be performed within this state, and all persons having to do therewith are governed by this code." No portion of this Tile of the Revised Code of Washington even purports to regulate the conduct of nonjudicial foreclosure sales.

Indeed, the Washington Supreme Court has noted that the nonjudicial foreclosure statutory scheme was created to provide a more efficient remedy for creditors coupled with the waiver of the right to pursue a deficiency associated with a judicial foreclosure action. The three goals of the Washington deed of trust act are: (1) that the nonjudicial foreclosure process should be efficient and inexpensive; (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure; and (3) that the process should promote stability of land titles. Cox v. Helenius, 103 Wash.2d 383, 387 (1985). This comprehensive statutory scheme governs the entirety of the nonjudicial foreclosure process. The Plaintiff's attempt to utilize another statutory scheme to define who can serve as an agent also violates the settled principle of Washington law that the more specific statute governs over the more general. See Waste Management of Seattle, Inc. v. Utilities & Transp Comm'n, 123 Wash.2d 621, 630 (Wash.1994).

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 10
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

RCW 61.24.010(1) identifies what types of persons or entities who can qualify as a trustee for a nonjudicial foreclosure; a title insurance agency is one type of qualified person or entity. However, no portion of the remainder of this statutory section requires that an agent for the trustee qualify as a title insurance agent. The fallacy of the Plaintiff's reasoning becomes apparent when one considers RCW 61.24.010(4), which provides that the trustee or its authorized agent shall cause the sale to proceed. That subdivision does not require the agent for the trustee to have the same characteristics of the trustee in order to qualify as an agent. Otherwise, a trustee who qualified under RCW 61.24.010(1)(a) could only use an auctioneer that was also a "domestic corporation incorporated under Title 23B, 30, 31, 32, or 33 RCW of which at least one officer is a Washington resident"; or a trustee who qualifies because he or she is an attorney under RCW 61.24.010(1)(c) could only have an attorney conduct the actual auction. This proposition simply lacks statutory support or a common sense basis.

Consequently, the theory that First American and Foreclosurelink violated Washington law through their agency arrangement and actual conduct in this matter has no legal or factual support. Accordingly, the Plaintiff cannot prevail on any cause of action against either of these defendants, warranting an order granting summary judgment, or alternatively, summary adjudication on the specific causes of action discussed herein.

## V.   ARGUMENT – SUMMARY JUDGMENT IS WARRANTED ON EACH CLAIM

First American and Foreclosurelink are entitled to summary judgment, or alternatively summary adjudication, on each cause of action asserted by Plaintiff against them: Infliction of Emotional Distress; Slander of Title; Breach of Fiduciary Duty/Quasi-Fiduciary Duty; Violation of the Consumer Protection Act; and, Injunction. Neither First American nor Foreclosurelink are parties to the Plaintiff's cause of action for alleged violation of the Real Estate Settlement Procedures Act, and therefore do not address that cause of action.

  A.   <u>Infliction of Emotional Distress</u>:

First American and Foreclosurelink are entitled to summary judgment on this cause of action because Plaintiff cannot establish any of the elements of the claim. In his First Amended Complaint, the Plaintiff characterizes this cause of action as based upon Outrage or Intentional Infliction of
DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 11
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

Emotional Distress. However, the Washington Supreme Court has held that outrage and intentional infliction of emotional distress are synonyms for the same tort. Kloepfel v. Bokor, 149 Wash.2d 192, 194 (Wash.2003).

The tort of outrage requires the proof of: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. Kloepfel at 194. These elements were adopted by the Washington Supreme Court in Grimsby v. Samson, 85 Wash.2d 52, 59-60 (Wash.1975). Grimsby held any claim for intentional infliction of emotional distress must be predicated on behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 59. That must be conduct "which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim "Outrageous!" Id. Consequently, the tort of outrage "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id.

Plaintiff admits at paragraph 2.7 of the FAC that he defaulted in payments under the loan with Block. He further acknowledged his default under the loan in his Settlement Agreement with Mr. Block. Plaintiff's only allegations as to First American and Foreclosurelink are that First American is not properly appointed as a trustee and that its arrangement with Foreclosurelink exceeds the permissible delegation of tasks by a trustee to an agent.

Further, notwithstanding the manner in which Plaintiff tries to characterize the alleged impropriety of the agency relationship between Foreclosurelink and First American, it does not constitutes extreme and outrageous conduct or intentional or reckless infliction of emotional distress. Instead, the most the Plaintiff can challenge is the scope of the permissible delegation of duties under RCW 61.24.005 *et seq* by a properly appointed trustee to an agent. Whether or not Plaintiff agrees with what Washington law permits, he cannot establish a claim for Infliction of Emotional Distress, and First American and Foreclosurelink are entitled to summary judgment on this claim.

B. <u>Slander of Title:</u>

The necessary elements of a slander of title action are that the words must: (1) be false; (2) be maliciously published; (3) be spoken with reference to some pending sale or purchase of the

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ  
Page 12  
C08-0510

Pite Duncan, LLP  
P.O. Box 17935  
San Diego, CA 92177-0935  
(858) 750-7600

property; (4) result in a pecuniary loss or injury to the plaintiff; and (5) be such as to defeat the plaintiff's title. Brown v. Safeway Stores, Inc., 94 Wash.2d 359, 375 (Wash.1980). Plaintiff cannot establish the first, second, fourth, or fifth elements of the cause of action.

First, the Plaintiff has admitted the existence of a default in payments, and cannot now repudiate that admission to assert damage through the recording of nonjudicial foreclosure notices. Second, Plaintiff cannot establish malicious publication. "Malice is not present where the allegedly slanderous statements were made in good faith and were prompted by a reasonable belief in their veracity." Brown at 375. In Brown, an action was initiated against Safeway for an alleged breach of a written lease. Safeway claimed the action constituted slander of title precluding a proposed sublease to a third party. Id. at 363. The court held "[t]he initiation of litigation to determine the rights of the respective parties to a lease cannot, without more, be characterized as malicious conduct." Id. at 375. Likewise, the initiation of foreclosure proceedings cannot be deemed malicious in the context of a bona fide dispute over mortgage payments. See Hulse v. Owen Fed. Bank, FSB, 195 F.Supp.2d 1188, 1208 (D.Or.2002). Plaintiff's claims against First American and Foreclosurelink simply relate to the permissible scope of the agency, which the Court can resolve based upon the arguments in section IV. supra. None of the conduct by First American or Foreclosurelink can be characterized as lacking in good faith.

As to the fourth and fifth elements of the cause of action, Plaintiff has not alleged that he lost title to the property at issue. Indeed, he reached a settlement with Mr. Block regarding the Deed of Trust on which First American is the substituted trustee. Therefore, his title has not been defeated, and he has admitted a default in payments that precludes him from claiming some pecuniary injury resulting from the initiation of nonjudicial foreclosure. As a result, the Court must grant summary judgment in favor of First American and Foreclosurelink.

C.   Breach of Fiduciary Duty:

The Washington Supreme has noted that "a trustee of a deed of trust is a fiduciary for both the mortgagee and the mortgagor and must act impartially between them." Cox v. Helenius, 103 Wash.2d 383, 389 (Wash.1985). However, the Cox Court emphasized that "Washington courts do not require a trustee to make sure that a grantor is protecting his or her own interest." Id. at 389.

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 13
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

Nevertheless, Plaintiff attempts to place this very duty on the Defendant. In *Cox*, the breach of fiduciary duty claim arose out of an actual conflict of interest of the trustee and the mortgagors. Id. at 385. In that case, the trustee was also the attorney for the beneficiary under a deed of trust. Plaintiffs sued the beneficiary for damages and reconveyance of the deed based on the beneficiary's failure to repair piping after the installation of a swimming pool. Id. The trustee at all relevant times was aware of the Plaintiffs' action and that the Plaintiffs believed their action halted the beneficiary's foreclosure sale when, in fact, it did not. Id. Despite settlement discussions with the plaintiffs' attorney almost two months before the foreclosure sale, the trustee held the sale collecting $11,783 on property worth between $200,000 and $300,000. Id.

Unlike the trustee in the *Cox* case, Defendant here never engaged in a course of conduct that could reasonably be construed as instilling a sense of reliance in the Plaintiff. Instead, the undisputed facts show that First American, with the assistance of Foreclosurelink, delivered all of the nonjudicial foreclosure notices required under Washington law and recorded discontinuances of each Notice of Trustee's Sale when requested by the beneficiary. Once again, the Plaintiff' only assertion as to these defendants relates to the permissible scope of the agency. First American and Foreclosurelink have already established their entitlement to prevail on this issue. As a result, these defendants are entitled to summary judgment on this cause of action.

D.  Violation of the Consumer Protection Act:

Pursuant to section 19.86.020, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." In order to establish a violation of section 19.86.020, a plaintiff must prove "(1) an unfair or deceptive act or practice, (2) occurring in the conduct of trade or commerce, (3) that impacts the public interest, and (4) proximately causes injury to the plaintiff in his or her business or property." Johnson v. Cash Store, 116 Wash.App. 833, 846 (Wash.App.2003). Here, the Plaintiffs cannot establish the first or fourth element of a CPA violation.

/././

/././

/././

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 14
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

### 1. The Agency Relationship Between First American and Foreclosurelink is Appropriate

The Supreme Court of Washington has held that "[t]o show a party has engaged in an unfair or deceptive act or practice a plaintiff need not show that the act in question was intended to deceive, but that the alleged act has the capacity to deceive a substantial portion of the public." *Sing v. John L. Scott, Inc.* (1997) 948 P.2d 816, 819. Moreover, "[w]hether a particular act or practice gives rise to a CPA violation is a question of law." Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 86 Wash.App. 732, 743-44 (Wash.App.1997).

As set forth in section IV. supra, Washington law does not bar the use of an agent by a nonjudicial foreclosure trustee under a deed of trust for purposes of delivery of nonjudicial foreclosure notices. Further, the Appointment of Successor Trustee identifies First American as the trustee, with First American authorized to serve as a trustee as a licensed Washington title insurer. The Notice of Foreclosure mailed with the Notice of Trustee's Sale identifies the physical address of First American in Washington. All nonjudicial foreclosure notices were actually delivered in accordance with Title 61 of the Revised Code of Washington. As a result, Plaintiff cannot establish an unfair or deceptive practice by the actions of Foreclosurelink as the agent for First American.

### 2. Plaintiff Did Not Suffer Damage as a Result of the Agency Relationship Between First American and Foreclosurelink

The Plaintiff cannot establish that the allegedly deceptive practices by First American or Foreclosurelink cause him any damage. Damages are established only where the plaintiff can prove that she "relied upon a misrepresentation of fact...[that] induced the plaintiff to act or refrain from acting." Robinson v. Avis Rent-A-Car System, Inc., 106 Wash.App. 104, 112 (Wash.App.2001). Here, the Plaintiff did not dispute that he defaulted in payments on two different occasions, each of which gave rise to the commencement of nonjudicial foreclosure. Indeed, Plaintiff reached a settlement with Mr. Block after the second default under which he admitted a payment default and set terms to bring the loan current and continue payments. These admitted defaults preclude him from claiming some pecuniary injury resulting from the initiation of nonjudicial foreclosure by First American, and as he cannot establish any impropriety in the agency relationship based upon the

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 15
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600

arguments in section IV. supra, First American and Foreclosurelink are entitled to summary judgment on this claim.

E. Injunction:

The Plaintiff's FAC included a separate cause of action for an injunction to enjoin the nonjudicial foreclosure sale that Mr. Block was pursuing through First American. The injunction was granted without opposition by Block, First American, or Foreclosurelink. Plaintiff has now reached a settlement with Mr. Block by which he admitted the default and agreed to terms of repayment. In conjunction with that settlement, First American caused the recording of a Notice of Discontinuance of Trustee's Sale. As a result, there exists no pending foreclosure process for the Plaintiff to enjoin, making the relief sought by this cause of action moot. The Court should therefore either grant summary judgment for First American and Foreclosurelink on it, or deem it moot and dismiss as a matter of law from the FAC.

**VI. CONCLUSION**

Based upon the foregoing, First American and Foreclosurelink submit that they are entitled to an order for summary judgment as to the causes of action asserted against them by Plaintiff, or alternatively summary adjudication to the extent the Court finds summary judgment is not warranted. First American and Foreclosurelink request entry of an order granting summary judgment to them, for entry of a separate Judgment in their favor, and for such other and further relief as the Corut deems proper.

Respectfully submitted,

Dated: March 30, 2009

PITE DUNCAN, LLP

/s/ Peter J. Salmon
PETER J. SALMON, WSBA No. 31382
Attorneys for Defendants FIRST
AMERICAN TITLE INSURANCE
COMPANY AND FORECLOSURELINK,
INC.

1783545.wpd

DEFENDANTS' FORECLOSURELINK AND FATIC'S MSJ
Page 16
C08-0510

Pite Duncan, LLP
P.O. Box 17935
San Diego, CA 92177-0935
(858) 750-7600